# 15-cv-801 (RGA)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Pursuit Capital Management, LLC,

Debtor.

Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P., and Pursuit Capital Management Fund I, L.P.,

Appellants,

- against -

Jeoffrey L. Burtch, Chapter 7 Trustee,

Appellee.

On Appeal from the United States Bankruptcy Court for the District of Delaware, Chapter 7 Case No. 14-10610 (LSS)

## APPENDIX TO APPELLEE'S BRIEF (VOLUME 1 OF 2)

Mark E. Felger (No. 3919)
Barry M. Klayman (No. 3676)
COZEN O'CONNOR
1201 North Market Street, Suite 1001
Wilmington, Delaware
(302) 295-2087
mfelger@cozen.com
bklayman@cozen.com

*Attorneys for Appellee Jeoffrey L. Burtch, Chapter 7 Trustee*

# TABLE OF CONTENTS

| Document Title | Filing Date | ECF No. | Appendix Page |
|---|---|---|---|
| Voluntary Petition | 3/21/14 | 1 | 1 |
| Schedules of Assets and Liabilities | 4/7/14 | 9 | 26 |
| Statement of Financial Affairs | 4/7/14 | 10 | 29 |
| April 29, 2014 Hr'g Tr. (341 Hr'g Excerpts) | 6/18/14 | 20 | 42 |
| Motion of Claridge Parties to Compel Compliance with Court Orders and for Relief from the Automatic Stay (Motion and Ex. H) | 8/4/14 | 22 | 58 |
| Trustee's Motion for an Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests (Motion and Ex. B) | 3/2/15 | 66 | 86 |
| Preliminary Objection to Trustee's Motion for an Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests | 3/12/15 | 67 | 109 |
| April 2, 2015 Hr'g Tr. (Excerpt) | 4/28/15 | 112 | 122 |
| Order With Respect to Motion for an Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests | 4/21/15 | 111 | 126 |
| Memorandum of Law in Support of Further Discovery Needed in Connection With Objection to Motion to Settle (Without Exhibits) | 5/1/15 | 119 | 129 |
| Order Denying Request for Further Discovery | 5/5/15 | 121 | 137 |
| June 15, 2015 Hr'g Tr. (Excerpts) | 9/22/15 | 202 | 139 |

| Document Title | Filing Date | ECF No. | Appendix Page |
|---|---|---|---|
| Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests (Motion and Ex. A-B) | 6/18/15 | 133 | 148 |
| Order Approving Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests | 6/30/15 | 149 | 164 |
| July 7, 2015 Auction Tr. (Excerpts) | 8/10/15 | 182 | 165 |
| July 16, 2015 Hr'g Tr. (Excerpts) | 7/21/15 | 172 | 179 |
| Motion to Adjourn Sale Hearing | 8/6/15 | 175 | 184 |
| Aug. 7, 2015 Hr'g Tr. (Excerpts) | 9/22/15 | 201 | 189 |
| Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights, and Interests | 8/28/15 | 190 | 203 |
| Sept. 30, 2015 Incoming Wire Confirmation | N/A | N/A | 219 |
| Claims Register | N/A | N/A | 220 |
| *In re AMC Investors, LLC*, Case No. 08-12264 (Bankr. D. Del. May 31, 2011) (Excerpt) | 6/2/11 | 78 | 223 |
| *In re Revel AC, Inc.*, Case No. 14-22654 (Bankr. D. N.J. March 4, 2015) (Excerpt) | 3/18/15 | 1489 | 229 |

| UNITED STATES BANKRUPTCY COURT<br>District of Delaware | VOLUNTARY PETITION |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle):<br>**Pursuit Capital Management, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>xx-xxx8234 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>34 East Putnam Avenue, Suite 113<br>Greenwich, CT<br><div align="right">CODE 06830</div> | Street Address of Joint Debtor (No. and Street, City, and State):<br><div align="right">ZIP CODE</div> |
| County of Residence or of the Principal Place of Business:<br>Fairfield County | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><div align="right">ZIP CODE</div> | Mailing Address of Joint Debtor (if different from street address):<br><div align="right">ZIP CODE</div> |
| Location of Principal Assets of Business Debtor (if different from street address above):<br><div align="right">ZIP CODE</div> | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☒ Chapter 7     ☐ Chapter 15 Petition for<br>☐ Chapter 9        Recognition of a<br>☐ Chapter 11      Foreign Main<br>☐ Chapter 12      Proceeding<br>☐ Chapter 13   ☐ Chapter 15 Petition for<br>                      Recognition of a<br>                      Foreign Nonmain<br>                      Proceeding |

| Chapter 15 Debtors | Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check one box.) |
|---|---|---|
| Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☒ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>-----------------------------------------------<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | | |

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000- 5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Pursuit Capital Management, LLC |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐   Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)      (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☒   No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐   Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

☒   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Pursuit Capital Management, LLC |
|---|---|

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
 Signature of Debtor

X _____
 Signature of Joint Debtor

 _____
 Telephone Number (if not represented by attorney)

 _____
 Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
 (Signature of Foreign Representative)

 _____
 (Printed Name of Foreign Representative)

 _____
 Date

**Signature of Attorney***

X */s/ Gregg M. Galardi*
 Signature of Attorney for Debtor(s)
 Gregg M. Galardi
 Printed Name of Attorney for Debtor(s)
 DLA Piper LLP (US)
 Firm Name
 919 North Market Street, 15th Floor
 Wilmington, DE 19801-3046
 Address
 (302) 468-5700
 Telephone Number
 March 21, 2014
 Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

 _____
 Printed Name and title, if any, of Bankruptcy Petition Preparer

 _____
 Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

 _____
 Address

X _____
 Signature

 _____
 Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
 Signature of Authorized Individual
 *Anthony Schepis*
 Printed Name of Authorized Individual
 Authorized Signatory
 *Managing Member*
 Title of Authorized Individual
 March 21, 2014
 Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| PURSUIT CAPITAL MANAGEMENT, LLC, | Case No. 14-10610-PJW |
| Debtor.[1] | Hon. Peter J. Walsh |

## SCHEDULES OF ASSETS AND LIABILITIES
## AND
## STATEMENT OF FINANCIAL AFFAIRS
## FOR PURSUIT CAPITAL MANAGEMENT, LLC

Gregg M. Galardi (DE-002991)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Gregg.galardi@dlapiper.com

*Attorneys for the Debtor*

---

[1] The last four digits of the Debtor's federal tax identification number are 8234. The Debtor's mailing address and corporate headquarters is 34 East Putnam Avenue, Suite 113 Greenwich, CT 06830.

EAST\74673601.1

Pursuit Capital Management, LLC (the "Debtor"), hereby submits its Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules") pursuant to 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007. The notes, statements, and disclaimers made herein (the "Global Notes") are fully incorporated by reference in, and comprise an integral part of, the Schedules and should be referred to and reviewed in connection with any review of the Schedules.

<u>GENERAL NOTES REGARDING THE SCHEDULES</u>

1. <u>Description of the Case and "As Of" Information Date</u>. On March 21, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition"). For purposes of the Schedules, which are intended to relate to facts or events occurring before the filing of the Petition, the Debtor disclosed all facts or events through and including the Petition Date. To the extent that any facts or events were inadvertently omitted, the Debtor reserves the right to amend the Schedules to correct any such defects.

2. <u>Unaudited Financial Information</u>. While the Debtor has sought to ensure that the Schedules are accurate and complete based upon information that was available at the time of preparation, the subsequent receipt of information or any audit may result in material changes to financial data and other information contained in the Schedules. Except as otherwise certified, all of the data set forth herein is unaudited.

3. <u>Accuracy</u>. While the Debtor has sought to file complete and accurate Schedules, inadvertent errors and omissions may exist. Accordingly, the Debtor reserves the right to amend the Schedules as necessary or appropriate.

4. <u>Liabilities</u>. In preparing the Schedules, the Debtor sought to allocate liabilities between prepetition and postpetition periods based on ongoing information and research. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change and the Schedules may be amended accordingly.

5. <u>Claim Description</u>. Any failure to designate a claim on the Schedules as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtor that such claim is not "contingent," "unliquidated," or "disputed." The Debtor expressly reserves the right, on his own behalf or on behalf of the estate, to dispute, or to assert offsets or defenses, to any claim reflected on the Schedules as to existence, validity, amount, classification, priority, or security, or to amend the Schedules to designate any claim as "contingent," "unliquidated," or "disputed." The Debtor has attempted to reconcile each of the claims against its own records and to dispute those with which its records disagree, but in the event the Debtor subsequently determines that any claims listed on the Schedules as "undisputed" are inconsistent with its books and records, the Debtor reserves the right to amend the Schedules to reflect that such claims are disputed, or to object to such claims without amending the Schedules if it determines that amending the Schedules is unnecessary.

6. <u>Claim Amounts</u>. The amount of claims of individual creditors for, among other things, merchandise, goods, services, or taxes are scheduled in accordance with the amounts invoiced by the creditors as entered on the Debtor's books and records and may not reflect credits or allowances due from such creditors to the Debtor. The Debtor reserves all rights with respect to any such credits and allowances including without limitation the right to assert claims objections and/or setoffs with respect to same. The dollar amounts of claims listed may be exclusive of contingent and unliquidated amounts.

7. <u>Satisfied Claims</u>. The Debtor may have satisfied, and may in the future satisfy (to the extent permitted by law), certain debts that may have constituted claims as of the Petition Date. To the extent that the Debtor made payments on or after the Petition Date as permitted under applicable orders, the recipients may not be listed in the Schedules. The inclusion of any claim on the Schedules should not be construed as an admission that such claim was not satisfied on or after the Petition Date, and the inclusion or exclusion of certain claims that were satisfied on the Petition Date shall not constitute an admission that all such claims were included or excluded. Furthermore, payment by the Debtor of any prepetition claim does not constitute an admission or estoppel that such payment was authorized by the Court or the Bankruptcy Code, and the rights of the Debtor's estate to avoid and recover such payments is expressly preserved regardless of how such claim may appear on the Schedules.

8. <u>Specific Notes</u>. These Global Notes are in addition to any specific notes set forth in the Schedules.

9. <u>Submission of Counsel</u>. The execution below of counsel is for submission of these Global Notes only and does not constitute a statement under oath of the validity of the matters set forth in the Schedules.

Dated: April 7, 2014
      Wilmington, Delaware

**DLA PIPER LLP (US)**

*/s/ Gregg M. Galardi*
Gregg M. Galardi (DE-002991)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: gregg.galardi@dlapiper.com

EAST\74673601.1

2

B 6 Summary (Official Form 6 - Summary) (12/13)

# United States Bankruptcy Court
## District Of Delaware

In re   Pursuit Capital Management, LLC
_____
             Debtor

Case No.  14-10610-PJW  _____

Chapter 7

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $ | | |
| B - Personal Property | Yes | 3 | $ | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | $ | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 4 | | $ | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 2 | | $   $4,859,476 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | | | | $ |
| J - Current Expenditures of Individual Debtors(s) | No | | | | $ |
| TOTAL | | 16 | $   0.00 | $   $4,859,476 | |

EAST\72622001.3

B 6 Summary (Official Form 6 - Summary) (12/13)

# United States Bankruptcy Court
## District Of Delaware

In re  Pursuit Capital Management, LLC          
              Debtor

Case No.  14-10610-PJW          

Chapter 7

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA
### (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | | Amount |
|---|---|---|
| Domestic Support Obligations (from Schedule E) | | $ |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | | $ |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | | $ |
| Student Loan Obligations (from Schedule F) | | $ |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | | $ |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | | $ |
| | TOTAL | $ |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 12) | $ |
| Average Expenses (from Schedule J, Line 22) | $ |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20) | $ |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $ |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $ | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $ |
| 4. Total from Schedule F | $4,859,476 | $ |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $ |

EAST\72622001.3

B6A (Official Form 6A) (12/07)

In re Pursuit Capital Management, LLC_____          Case No. 14-10610-PJW
             **Debtor**                                                        **(If known)**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C – Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| None | | | | |
| | | Total ➤ | 0.00 | |
| | | | (Report also on Summary of Schedules.) | |

EAST\72622001.3

9

B6B (Official Form 6B) (12/07)

In re Pursuit Capital Management, LLC                          Case No.  14-10610-PJW
                **Debtor**                                                              **(If known)**

# SCHEDULE B - PERSONAL PROPERTY

       Except as directed below, list all personal property of the debtor of whatever kind.  If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None."  If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category.  If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

       **Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | ✓ | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | ✓ | | | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | ✓ | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | ✓ | | | |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | ✓ | | | |
| 6. Wearing apparel. | ✓ | | | |
| 7. Furs and jewelry. | ✓ | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | ✓ | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | ✓ | | | |
| 10. Annuities. Itemize and name each issuer. | ✓ | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | ✓ | | | |

EAST\72622001.3

B6B (Official Form 6B) (12/07) -- Cont.

In re Pursuit Capital Management, LLC              Case No. <u>14-10610-PJW</u>
            **Debtor**                                                       **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | ✓ | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | ✓ | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | ✓ | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | ✓ | | | |
| 16. Accounts receivable. | ✓ | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | ✓ | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | ✓ | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | ✓ | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | ✓ | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Potential indemnification claim against Pursuit Capital Management Fund I, L.P.; Claims asserted in Pursuit Investment Mgmt., LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.; Index No. 652457/2013 (Supreme Court of the State of New York) | | Unknown |

B6B (Official Form 6B) (12/07) -- Cont.

In re Pursuit Capital Management, LLC _____     Case No.  14-10610-PJW
              **Debtor**                                    **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | ✓ | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | ✓ | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41 A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | ✓ | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | ✓ | | | |
| 26. Boats, motors, and accessories. | ✓ | | | |
| 27. Aircraft and accessories. | ✓ | | | |
| 28. Office equipment, furnishings, and supplies. | ✓ | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | ✓ | | | |
| 30. Inventory. | ✓ | | | |
| 31. Animals. | ✓ | | | |
| 32. Crops - growing or harvested. Give particulars. | ✓ | | | |
| 33. Farming equipment and implements. | ✓ | | | |
| 34. Farm supplies, chemicals, and feed. | ✓ | | | |
| 35. Other personal property of any kind not already listed. Itemize. | ✓ | | | |

_____ continuation sheets attached     Total ➤     $                    0.00

(Include amounts from any continuation sheets attached. Report total also on
        Summary of Schedules.)

EAST\72622001.3

B6C (Official Form 6C) (04/13)

In re  Pursuit Capital Management, LLC                                    Case No.  14-10610-PJW
_____                                    _____
              **Debtor**                                                                    **(If known)**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                                         $155,675.*
☐ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| None | | | |

\* *Amount subject to adjustment on 4/1/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EAST\72622001.3

B6D (Official Form 6D) (12/07)

In re Pursuit Capital Management, LLC      Case No. 14-10610-PJW
          Debtor                                                   (If known)

# SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☒      Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER *(See Instructions Above)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |

_____ continuation sheets attached      Subtotal ▶ (Total of this page)      $          0.00    $          0.00

Total ▶ (Use only on last page)      $      $

(Report also on Summary of Schedules.)      (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

EAST\72622001.3

B6D (Official Form 6D) (12/07) – Cont.

In re Pursuit Capital Management, LLC _____     Case No. 14-10610-PJW
             **Debtor**                                                            **(If known)**

## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER *(See Instructions Above)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |

Sheet no. _____ of _____ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal ▶
(Total of this page)

Total ▶
(Use only on last page)

| | |
|---|---|
| $        0.00 | $        0.00 |
| $ | $ |

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6D (Official Form 6D) (12/07) – Cont.

In re Pursuit Capital Management, LLC      Case No. 14-10610-PJW
         Debtor                                        (If known)

## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER *(See Instructions Above)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |

Sheet no. _____ of _____ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal ▶
(Total of this page)    $     0.00    $     0.00

Total ▶
(Use only on last page)    $       $

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6E (Official Form 6E) (04/13)

In re  Pursuit Capital Management, LLC          Case No. 14-10610-PJW
                    Debtor                                                    (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts <u>not</u> entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☒  Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

*Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EAST\72622001.3

17

**B6E (Official Form 6E) (04/13)**

In re <u>Pursuit Capital Management, LLC</u>                    Case No. <u>14-10610-PJW</u>
                      **Debtor**                                              (if known)

☐ **Certain farmers and fishermen**

    Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

    Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**

    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____ continuation sheets attached

B6E (Official Form 6E) (04/13)

In re Pursuit Capital Management, LLC _____     Case No. 14-10610-PJW
                   **Debtor**                                               **(if known)**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Type of Priority for Claims Listed on This Sheet

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Sheet no. _____ of _____ continuation sheets attached to Schedule of Creditors Holding Priority Claims | | | | | Subtotals➤ (Totals of this page) | | $   0.00 | $   0.00 | 0.00 |
| | | | Total➤ (Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) | | | | $ | | |
| | | | Totals➤ (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | | | | | $ | $ |

EAST\72622001.3

B6E (Official Form 6E) (04/13)

In re Pursuit Capital Management, LLC _____     Case No. _14-10610-PJW_
　　　　　　　　Debtor　　　　　　　　　　　　　　　　　　　　　　　(if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Type of Priority for Claims Listed on This Sheet

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |

Sheet no. _____ of _____ continuation sheets attached to Schedule of Creditors Holding Priority Claims

Subtotals▶ (Totals of this page) $ 0.00 | $ 0.00 | 0.00

Total▶ (Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) $

Totals▶ (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) $ | $

EAST\72622001.3

20

In re  Pursuit Capital Management, LLC _____    Case No.  14-10610-PJW _____
                    Debtor                                                                    (If known)

## SCHEDULE F- CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>Claridge Associates, LLC<br>c/o Leonard Barsky<br>85 South Centre Avenue<br>Rockville Centre, NY 11570 | | | Supreme Court of the State of NY confirmed arbitration award on Feb. 6, 2014. | ✓ | | ✓ | $4,859,476, plus interest |
| ACCOUNT NO.<br>Jamiscott LLC<br>c/o Scott Schneider<br>15 West 53rd St., Apt. 24 B<br>New York, NY 10019 | | | Supreme Court of the State of NY confirmed arbitration award on Feb. 6, 2014. | ✓ | | ✓ | See above |
| ACCOUNT NO.<br>Leslie Schneider<br>204 Old Montauk Highway<br>Montauk, NY 11954 | | | Supreme Court of the State of NY confirmed arbitration award on Feb. 6, 2014. | ✓ | | ✓ | See above |
| ACCOUNT NO.<br>Lillian and Leonard Schneider<br>1089 S. Ocean Blvd.<br>Palm Beach, FL 33480 | | | Supreme Court of the State of NY confirmed arbitration award on Feb. 6, 2014. | ✓ | | ✓ | See above |

Subtotal ► $                    0.00

_____ continuation sheets attached

Total ► $           4,859,476
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

EAST\72622001.3

B6F (Official Form 6F) (12/07) - Cont.

In re Pursuit Capital Management, LLC                           Case No.  14-10610-PJW
                     Debtor                                              (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br> Alpha Beta Capital Partners, L.P. <br> 370 Lexington Ave., Suite 1706 <br> New York, NY 10017 | | | Action commenced in the Supreme Court of the State of New York; Index No. Index No. 152104/2013 | ✓ | ✓ | ✓ | Unknown |
| ACCOUNT NO. <br> Anthony Schepis <br> 34 East Putnam Avenue, Suite 113 <br> Greenwich, CT 06830 | | | Potential indemnification claim pursuant to the Pursuit Capital Management Fund I, L.P. Amended And Restated Limited Partnership Agreement | ✓ | ✓ | | Unknown |
| ACCOUNT NO. <br> Frank Canelas <br> 34 East Putnam Avenue, Suite 113 <br> Greenwich, CT 06830 | | | Potential indemnification claim pursuant to the Pursuit Capital Management Fund I, L.P. Amended And Restated Limited Partnership Agreement | ✓ | ✓ | | Unknown |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no. _____ of _____ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤  $                    0.00

Total ➤  $         4,859,476
(Use only on last page of the completed Schedule F.)                        plus interest
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

EAST\72622001.3

B6G (Official Form 6G) (12/07)

In re  Pursuit Capital Management, LLC            Case No.  14-10610-PJW
                Debtor                                           (if known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☒ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

EAST\72622001.3

B6H (Official Form 6H) (12/07)

In re  Pursuit Capital Management, LLC                          Case No.  14-10610-PJW
                    Debtor                                                        (if known)

## SCHEDULE H - CODEBTORS

    Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☒   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

B6 Declaration (Official Form 6 – Declaration) (12/07)

In re   Pursuit Capital Management, LLC,                          Case No.   14-10610-PJW
           Debtor                                                                (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

    I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date _____          Signature: _____
                                                 Debtor

Date _____          Signature: _____
                                              (Joint Debtor, if any)

                                    [If joint case, both spouses must sign.]

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

    I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____          _____
Printed or Typed Name and Title, if any,          Social Security No.
of Bankruptcy Petition Preparer          *(Required by 11 U.S.C. § 110.)*

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs this document.*

_____

_____

_____
Address

X _____          _____
  Signature of Bankruptcy Petition Preparer          Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

    I, the   Member   [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership ] of the limited liability company   [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of  17  sheets (*Total shown on summary page plus 1*), and that they are true and correct to the best of my knowledge, information, and belief.

Date   April 7, 2014

                                Signature: _____

                                     Anthony P. Schepis, Managing Member
                                     [Print or type name of individual signing on behalf of debtor.]

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : Case No. 14-10610-PJW |
| | : |
| Debtor.[1] | : Hon. Peter J. Walsh |
| | : |
| | : |
| | : |

**SCHEDULES OF ASSETS AND LIABILITIES
AND
STATEMENT OF FINANCIAL AFFAIRS
FOR PURSUIT CAPITAL MANAGEMENT, LLC**

Gregg M. Galardi (DE-002991)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Gregg.galardi@dlapiper.com

*Attorneys for the Debtor*

---

[1]    The last four digits of the Debtor's federal tax identification number are 8234.  The Debtor's mailing address and corporate headquarters is 34 East Putnam Avenue, Suite 113 Greenwich, CT 06830.

EAST\74673601.1

Pursuit Capital Management, LLC (the "Debtor"), hereby submits its Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules") pursuant to 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007. The notes, statements, and disclaimers made herein (the "Global Notes") are fully incorporated by reference in, and comprise an integral part of, the Schedules and should be referred to and reviewed in connection with any review of the Schedules.

## GENERAL NOTES REGARDING THE SCHEDULES

1. <u>Description of the Case and "As Of" Information Date</u>. On March 21, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition"). For purposes of the Schedules, which are intended to relate to facts or events occurring before the filing of the Petition, the Debtor disclosed all facts or events through and including the Petition Date. To the extent that any facts or events were inadvertently omitted, the Debtor reserves the right to amend the Schedules to correct any such defects.

2. <u>Unaudited Financial Information</u>. While the Debtor has sought to ensure that the Schedules are accurate and complete based upon information that was available at the time of preparation, the subsequent receipt of information or any audit may result in material changes to financial data and other information contained in the Schedules. Except as otherwise certified, all of the data set forth herein is unaudited.

3. <u>Accuracy</u>. While the Debtor has sought to file complete and accurate Schedules, inadvertent errors and omissions may exist. Accordingly, the Debtor reserves the right to amend the Schedules as necessary or appropriate.

4. <u>Liabilities</u>. In preparing the Schedules, the Debtor sought to allocate liabilities between prepetition and postpetition periods based on ongoing information and research. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change and the Schedules may be amended accordingly.

5. <u>Claim Description</u>. Any failure to designate a claim on the Schedules as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtor that such claim is not "contingent," "unliquidated," or "disputed." The Debtor expressly reserves the right, on his own behalf or on behalf of the estate, to dispute, or to assert offsets or defenses, to any claim reflected on the Schedules as to existence, validity, amount, classification, priority, or security, or to amend the Schedules to designate any claim as "contingent," "unliquidated," or "disputed." The Debtor has attempted to reconcile each of the claims against its own records and to dispute those with which its records disagree, but in the event the Debtor subsequently determines that any claims listed on the Schedules as "undisputed" are inconsistent with its books and records, the Debtor reserves the right to amend the Schedules to reflect that such claims are disputed, or to object to such claims without amending the Schedules if it determines that amending the Schedules is unnecessary.

6. <u>Claim Amounts</u>. The amount of claims of individual creditors for, among other things, merchandise, goods, services, or taxes are scheduled in accordance with the amounts invoiced by the creditors as entered on the Debtor's books and records and may not reflect credits or allowances due from such creditors to the Debtor. The Debtor reserves all rights with respect to any such credits and allowances including without limitation the right to assert claims objections and/or setoffs with respect to same. The dollar amounts of claims listed may be exclusive of contingent and unliquidated amounts.

7. <u>Satisfied Claims</u>. The Debtor may have satisfied, and may in the future satisfy (to the extent permitted by law), certain debts that may have constituted claims as of the Petition Date. To the extent that the Debtor made payments on or after the Petition Date as permitted under applicable orders, the recipients may not be listed in the Schedules. The inclusion of any claim on the Schedules should not be construed as an admission that such claim was not satisfied on or after the Petition Date, and the inclusion or exclusion of certain claims that were satisfied on the Petition Date shall not constitute an admission that all such claims were included or excluded. Furthermore, payment by the Debtor of any prepetition claim does not constitute an admission or estoppel that such payment was authorized by the Court or the Bankruptcy Code, and the rights of the Debtor's estate to avoid and recover such payments is expressly preserved regardless of how such claim may appear on the Schedules.

8. <u>Specific Notes</u>. These Global Notes are in addition to any specific notes set forth in the Schedules.

9. <u>Submission of Counsel</u>. The execution below of counsel is for submission of these Global Notes only and does not constitute a statement under oath of the validity of the matters set forth in the Schedules.

Dated: April 7, 2014          **DLA PIPER LLP (US)**
      Wilmington, Delaware

                              */s/ Gregg M. Galardi*
                              Gregg M. Galardi (DE-002991)
                              1201 N. Market Street, Suite 2100
                              Wilmington, DE 19801
                              Telephone: (302) 468-5700
                              Facsimile: (302) 394-2341
                              Email: gregg.galardi@dlapiper.com

B7 (Official Form 7) (04/13)

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF DELAWARE

In re:     Pursuit Capital Management, LLC          Case No. 14-10610-PJW
                   _____                  _____
                            Debtor                                              (if known)

### STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

**1.     Income from employment or operation of business**

None      State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of
☐          the debtor's business, including part-time activities either as an employee or in independent trade or business, from the
              beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the
              **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on
              the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of
              the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under
              chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are
              separated and a joint petition is not filed.)

AMOUNT                                                                    SOURCE
*See footnote.

---

* The Debtor received gross income in the amount of $645,571.22 from Pursuit Capital Management Fund I, L.P. for the calendar year 2011, which was subsequently transferred to its members in the ordinary course of business on 1/16/13.

EAST\57282685.4

B7 (Official Form 7) (04/13)                                                                                          2

**2.      Income other than from employment or operation of business**

None
☒          State the amount of income received by the debtor other than from employment, trade, profession, operation of the
           debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a
           joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13
           must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint
           petition is not filed.)

                    AMOUNT                                                              SOURCE

---

**3.      Payments to creditors**

*Complete a. or b., as appropriate, and c.*

None
☐          a. *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of
           goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of
           this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600.
           Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or
           as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling
           agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses
           whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☒          b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made
           within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that
           constitutes or is affected by such transfer is less than $6,225[†]. If the debtor is an individual, indicate with an asterisk
           (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative
           repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors
           filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or
           not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

---

[†] *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

EAST\57282685.4

B7 (Official Form 7) (04/13)                                                                                                                      3

None
☒      c. *All debtors:*  List all payments made within **one year** immediately preceding the commencement of this case
to or for the benefit of creditors who are or were insiders.  (Married debtors filing under chapter 12 or chapter 13 must
include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and
a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

4.      **Suits and administrative proceedings, executions, garnishments and attachments**

None
☐      a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately
preceding the filing of this bankruptcy case.  (Married debtors filing under chapter 12 or chapter 13 must include
information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated
and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Pursuit Capital Management, LLC v. Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider; Index No. 654301/2012 | Breach of Contract | Supreme Court of the State of New York, County of New York | Pending |
| Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider v. Pursuit Capital Management, LLC; Case No. 13 512 M 0111812 | Arbitration | American Arbitration Association | Pending |
| Alpha Beta Capital Partners, L.P. v. Pursuit Investment Management, LLC; Pursuit Capital Management, LLC; Pursuit Opportunity Fund I, L.P.; and Pursuit Capital Management Fund I, L.P.; Index No. 152104/2013 | Breach of Contract | Supreme Court of the State of New York, County of New York | Pending |
| Pursuit Investment Management, LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.; Index No. 652457/2013 | Breach of Contract | Supreme Court of the State of New York, County of New York | Pending |

None
☒      b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one
year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13
must include information concerning property of either or both spouses whether or not a joint petition is filed, unless
the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

5.      **Repossessions, foreclosures and returns**

EAST\57282685.4

31

B7 (Official Form 7) (04/13)                                                                                      4

| None ☒ | List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |

---

**6.    Assignments and receiverships**

| None ☒ | a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |

| None ☒ | b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE Of PROPERTY |

---

**7.    Gifts**

| None ☒ | List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |

---

**8.    Losses**

| None ☒ | List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case or **since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must |

EAST\57282685.4

32

include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

---

**9.        Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| DLA Piper LLP (US) 1251 Avenue of the Americas New York, New York 10020 | March 21, 2014; Pursuit Investment Management, LLC | $50,000 |

---

**10.        Other transfers**

None ☐

a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR ‡ See footnote. | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ☒

b.  List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

---

**11.        Closed financial accounts**

None

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case.  Include

---

‡ As noted in the footnote to Question #1, a performance fee was earned under the Pursuit Capital Management Fund I, L.P. Amended and Restated Limited Partnership Agreement and transferred to the Debtor's Members on 1/16/13 in the ordinary course of business.  Any reference to this performance fee herein shall not be construed as an admission that the transfer is outside the ordinary course of business or financial affairs of the Debtor.  Further, this figure represents the aggregate amount transferred to the Members.  At this time the Debtor does not have access to the records needed to determine the amount transferred to each Member.

B7 (Official Form 7) (04/13)                                                                                                    6

☐   checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts
    held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial
    institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or
    instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are
    separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| Wells Fargo 28 Havemeyer Pl. Greenwich, CT 06830 | Checking; 7856 $0.00 | Jan. 2014 |

---

**12.     Safe deposit boxes**

None
☒   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables
within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or
chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless
the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

---

**13.     Setoffs**

None
☒   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding
the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information
concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint
petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14.     Property held for another person**

None
☒   List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

B7 (Official Form 7) (04/13)                                                                                          7

**15.    Prior address of debtor**

None
☐    If debtor has moved within three years immediately preceding the commencement of this case, list all premises
     which the debtor occupied during that period and vacated prior to the commencement of this case.  If a joint petition is
     filed, report also any separate address of either spouse.

    ADDRESS                              NAME USED                          DATES OF OCCUPANCY
35 Mason Street,                              N/A                                Feb. 2011 - Nov. 2013
Greenwich CT 06830

**16.    Spouses and Former Spouses**

None
☒    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona,
     California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight**
     **years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of
     any former spouse who resides or resided with the debtor in the community property state.

    NAME

**17.    Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination,
releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or
other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes,
or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or
formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous
material, pollutant, or contaminant or similar term under an Environmental Law.

None
☒    a. List the name and address of every site for which the debtor has received notice in writing by a governmental
     unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the
     governmental unit, the date of the notice, and, if known, the Environmental Law:

    SITE NAME              NAME AND ADDRESS         DATE OF              ENVIRONMENTAL
    AND ADDRESS            OF GOVERNMENTAL          NOTICE               LAW
                           UNIT

None
☒    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release
     of Hazardous Material.  Indicate the governmental unit to which the notice was sent and the date of the notice.

    SITE NAME              NAME AND ADDRESS         DATE OF              ENVIRONMENTAL
    AND ADDRESS            OF GOVERNMENTAL          NOTICE               LAW
                           UNIT

EAST\57282685.4

B7 (Official Form 7) (04/13)                                                                                                              8

None  c.  List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with
☒     respect to which the debtor is or was a party.  Indicate the name and address of the governmental unit that is or was a party
      to the proceeding, and the docket number.

         NAME AND ADDRESS              DOCKET NUMBER                      STATUS OR DISPOSITION
         OF GOVERNMENTAL UNIT

---

         18.    Nature, location and name of business

None  a.  If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses,
☒     and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing
      executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or
      other activity either full- or part-time within six years immediately preceding the commencement of this case, or in
      which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding
      the commencement of this case.

      If the debtor is a partnership, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and
      beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the
      voting or equity securities, within six years immediately preceding the commencement of this case.

      If the debtor is a corporation, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and
      beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the
      voting or equity securities within six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as
☒     defined in 11 U.S.C. § 101.

         NAME                                              ADDRESS


      The following questions are to be completed by every debtor that is a corporation or partnership and by any individual
debtor who is or has been, within six years immediately preceding the commencement of this case, any of the following:  an
officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a
partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity,
either full- or part-time.
      (An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in
business, as defined above, within six years immediately preceding the commencement of this case.  A debtor who has not been
in business within those six years should go directly to the signature page.)

---

         19.    Books, records and financial statements


None  a. List all bookkeepers and accountants who within two years immediately preceding the filing of this
☐     bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

         NAME AND ADDRESS                                 DATES SERVICES RENDERED
Anthony P. Schepis                                        Feb. 2012 – Present
Pursuit Capital Management, LLC


EAST\57282685.4

B7 (Official Form 7) (04/13)                                                                                    9

34 East Putnam Avenue, Suite 113
Greenwich, CT

None
☐      b. List all firms or individuals who within **two years** immediately preceding the filing of this bankruptcy
       case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|--------------------------|
| EisnerAmper | 750 Third Ave.<br>New York, NY 10017<br>(212) 949-8700 | 2011, 2012 |

None
☐      c. List all firms or individuals who at the time of the commencement of this case were in possession of the
       books of account and records of the debtor.  If any of the books of account and records are not available, explain.

NAME                                                                      ADDRESS

Frank Canelas, Jr.                                                        Pursuit Partners LLC
Anthony P. Schepis                                                        34 East Putnam Avenue, Suite 113
                                                                          Greenwich, CT 06830

None
☒      d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a
       financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                                            DATE ISSUED

---

20.        **Inventories**

None
☒      a. List the dates of the last two inventories taken of your property, the name of the person who supervised the
       taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY                  INVENTORY SUPERVISOR        DOLLAR AMOUNT
                                                               OF INVENTORY
                                                               (Specify cost, market or other basis)

None
☒      b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

DATE OF INVENTORY                                    NAME AND ADDRESSES OF CUSTODIAN
                                                     OF INVENTORY RECORDS

---

21.        **Current Partners, Officers, Directors and Shareholders**

None
☒      a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS                  NATURE OF INTEREST          PERCENTAGE OF INTEREST

None
☐      b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns,
       controls, or holds 5 percent or more of the voting or equity securities of the corporation.

EAST\57282685.4

37

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Frank Canelas, Jr., Pursuit Partners LLC 34 East Putnam Avenue, Suite 113 Greenwich, CT 06830 | Member | 50% membership interest |
| Anthony P. Schepis Pursuit Partners LLC 34 East Putnam Avenue, Suite 113 Greenwich, CT 06830 | Member | 50% membership interest |

**22.    Former partners, officers, directors and shareholders**

None
☒

a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None
☒

b. If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23.    Withdrawals from a partnership or distributions by a corporation**

None
☒

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24.    Tax Consolidation Group.**

None
☒

If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within six years immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER-IDENTIFICATION NUMBER (EIN) |
|---|---|

**25.    Pension Funds.**

None

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as

B7 (Official Form 7) (04/13)                                                                          11

☒          an employer, has been responsible for contributing at any time within six years immediately preceding the commencement of the case.
            NAME OF PENSION FUND                          TAXPAYER-IDENTIFICATION NUMBER (EIN)


* * * * *

EAST\57282685.4

B7 (Official Form 7) (04/13)                                                                              11

\* \* \* \* \*

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any
attachments thereto and that they are true and correct.

Date _____          Signature of Debtor _____

Date _____          Signature of Joint Debtor (if any) _____

*[If completed on behalf of a partnership or corporation]*
I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are
true and correct to the best of my knowledge, information and belief.

Date __April 7, 2014__          Signature _____

Print Name and Title   Anthony P. Schepis, Managing
                                   Member

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

_____ continuation sheets attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

---

**DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared
this document for compensation and have provided the debtor with a copy of this document and the notices and information
required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11
U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of
the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by
that section.

_____          Social-Security No.  (Required by 11 U.S.C. § 110.)
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal,
responsible person, or partner who signs this document.*

_____
Address

_____          _____
Signature of Bankruptcy Petition Preparer          Date

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the

EAST\57282685.4

40

B7 (Official Form 7) (04/13)                                                                                                    12

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  18 U.S.C. § 156.*

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3                                      .   Chapter 7
     IN RE:                             .
 4                                      .   Case No. 14-10610 (PJW)
     PURSUIT CAPITAL MANAGEMENT, LLC    .
 5                                      .
                                        .   Wilmington, Delaware
 6                    Debtor.           .
                                        .   Tuesday, April 29, 2014
 7   . . . . . . . . . . . . . . . .

 8              TRANSCRIPT OF 341 MEETING OF CREDITORS
                   BEFORE JEOFFREY L. BURTCH
 9                      CHAPTER 7 TRUSTEE

10   APPEARANCES:

11   For the Debtor:            Gregg M. Galardi, Esq.
                                DLA PIPER, LLP
12                              1201 North Market Street
                                Wilmington, Delaware 19801
13

14   Also Appearing:           Alex Aiken, Esq.

15   Also Appearing:           Jeffrey Silverman, Esq.

16   Also Appearing:           Other Unidentified Attorneys
                                 and/or Parties
17

18

19

20   Audio Operator:           Electronically Recorded

21
     Transcription Company:     Reliable
22                              1007 N. Orange Street
                                Wilmington, Delaware 19801
23                              (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

42

1      (Proceedings commence)

2           MR. BURTCH:  Okay.  This is the time set for the 341

3  meeting of Pursuit Capital Management, LLC, Case No. 14-10610.

4           Counsel for the debtor, could you please enter your

5  appearance.

6           MR. GALARDI:  Gregg Galardi of DLA Piper.

7           MR. BURTCH:  Thank you.

8           And who do you have here today to testify on behalf of

9  debtor?

10          MR. GALARDI:  Mr. Anthony Schepis.

11          MR. BURTCH:  Okay.  Mr. Schepis, could you raise your

12 right hand, please.

13          MR. SCHEPIS:  Sure.

14 ANTHONY SCHEPIS, WITNESS FOR THE DEBTOR, SWORN.

15          MR. BURTCH:  Thank you very much.

16                          EXAMINATION

17 BY MR. BURTCH:

18 Q   Let me show you a copy of the face page of the petition,

19 and ask if you can identify your signature on that page.

20 A   Yes, that's mine.

21 Q   And the statements and schedules that were attached to the

22 petition and filed with the Court, are they true and correct?

23 A   Yes.

24 Q   Okay.  And did you have involvement in preparation of the

25 schedules?

1   A    I did.

2   Q    Tell me a little bit about what your responsibilities were

3   with this debtor.

4   A    Sure.   The company is -- was a GP for onshore feeder hedge

5   funds, and I was a managing member, as well as my partner Frank

6   Canelis.

7   Q    Okay.   And my understanding, there were just two members of

8   that LLC?

9   A    Yes.

10  Q    Okay.   And do you recall when the LLC was initially formed?

11  A    Not off the top of my head, no.

12  Q    Were you and Frank always the members, or had there been

13  any other members with that LLC?

14  A    No.   It was only myself and -- and Frank.

15  Q    Okay.   What did this debtor actually do; did it operate at

16  all?

17  A    No.   It really performed -- performed a few administrative

18  functions on behalf of the onshore feeder funds.   And other

19  than that, you know, the investment advisor did the actual

20  trading and asset selection.   So it would collect a fee based

21  on performance of the underlying funds.

22  Q    But it didn't have any -- didn't provide any direction for

23  the -- those funds; it was only a performance fee, based on

24  what other people had done?

25  A    No.   The funds were related, and the performance fee was if

1  the funds performed (indiscernible) in excess of their targets,

2  the general partner would be entitled to a performance fee.

3  But the actual selection and management of the related fund was

4  done by the investment advisor.

5  Q    Okay.

6  A    So the investment advisor and the general partner worked

7  somewhat in tandem.

8  Q    I note from looking at the scheduled -- and we can go over

9  them, I don't think you need to have a copy because they're

10 pretty straightforward --

11 A    Yes.

12 Q    -- the debtor did not own any real estate.  Is that

13 correct?

14 A    That's correct.

15 Q    And Schedule B, which is the personal property, the only

16 thing listed on Schedule B would have been a potential

17 indemnification claim against the Pursuit Capital Management

18 Fund, LP.  Is that correct?

19 A    Yes, it is.

20 Q    Can you explain briefly what that would entail?

21 A    Through the fund documents, the general partner is

22 indemnified for any -- any legal actions or any other -- you

23 know, any other potential liabilities.

24 Q    Is there insurance that would cover that?

25 A    No.

1  Q   Okay.  Are there any other assets, to your knowledge, that

2  would be owed by Pursuit Capital Management, LLC?

3  A   Outside of what we put down on the forms, no.

4  Q   Okay.  Now I note that there was a fifty-thousand-dollar

5  retainer put down for the filing of the debtor's petition and

6  schedules.  And who provided that retainer?

7  A   That was from -- legal fees were paid by the investment

8  advisor.

9  Q   And who is that?

10 A   Pursuit Investment Management

11 Q   And what type of entity is that?

12 A   Pursuit Investment Management is the other party that I

13 just mentioned, which would be the entity that provides the

14 investment strategy and execution on behalf of the funds, both

15 onshore and offshore.

16 Q   And is that a limited partnership, or ...

17 A   It's an LLC.

18 Q   And are you a member of that?

19 A   I am.

20 Q   And who else --

21 A   As -- as is Frank Canelis.

22 Q   The only two members are you and frank?

23 A   Correct.

24 Q   All right.  Okay.  Why did this debtor file for Chapter 7?

25 A   Well, there was an arbitration award that was confirmed,

1   and based on the confirmation of the arbitration award, there

2   were no assets in the entity to pay it, so we opted to file.

3   Q    No assets in the debtor to pay it, you mean, or what

4   entity?

5   A    Sorry.  The debtor.

6   Q    Okay.  Was the debtor obligated under that arbitration

7   award, as well?

8   A    I -- I'm not sure I understand the question, Jeoff.

9   Q    Was the debtor found by the arbitrator, did the debtor find

10  that the -- did the arbitrator find that the debtor was

11  responsible for the payment (indiscernible).

12  A    Yes, the --

13           MR. GALARDI:  I'm going to -- just --

14           MR. SCHEPIS:  Oh, sorry.

15           MR. GALARDI:  To some extent, it's a legal question.

16  I mean, are you asking him what that -- his understanding of

17  what that is?  Because I think there's an award, and it says

18  that the debt -- I think the GP was directed to make a payment

19  of some amount, I can't remember.  But that's -- are you asking

20  him anything more than the --

21           MR. BURTCH:  Well, he -- he testified that the reason

22  the debtor filed was because it didn't have any money to pay

23  the award.

24           MR. SCHEPIS:  Correct.

25           MR. BURTCH:  And my question was, did the award

1  require the debtor to pay.

2       MR. GALARDI:  Okay.  That's fine.  You can answer.

3  A   Yes, the -- if I'm understanding the question correctly,

4  yes, the award was against the debtor, and so my understanding

5  would be that that would require the debtor to pay.

6  Q   Okay.  There are also, my understanding -- little

7  understanding, and it's very little -- was that there was also

8  a fund of a million-plus dollars that was somewhere, that the

9  arbitrator had indicated, please don't do anything to that

10 fund.  Do you know what I'm talking about?

11 A   I do, yes.

12 Q   And where is that fund?

13 A   The fund is an onshore feeder fund.  The funds -- funds for

14 the fund are held at a custody bank.  And the arbitration award

15 was a direction to the debtor to pay out those funds.

16 Q   Okay.  Because the debtor is a general partner that would

17 control the payment of that -- those funds.

18 A   Yes.

19 Q   Okay.  Are those funds at the same place that they were

20 prior to the arbitration award?

21 A   Yes.

22 Q   They haven't been moved, right?

23 A   No, they haven't -- they haven't been moved.  As a matter

24 of fact, there's a temporary restraining order that was issued

25 by a New York Judge, somewhere -- I don't remember the exact

1   date, but there's a TRO on it, so those funds have been in the

2   same place from the very beginning, but can't be moved anyway.

3   Q   Is the debtor still the general partner of the limited

4   partnership?

5   A   No, it is not.

6   Q   Okay.  Tell me what event triggered the change of the

7   general partner.

8   A   Sure.  The event -- the main event was that we have a

9   fiduciary -- myself and my partner Frank, as GP, have a

10   fiduciary responsibility to the -- all of the investors who are

11   in the fund.  And we believe it's in the best -- in the best

12   interest of all of the investors in the fund to have created a

13   new general partner, and transferred the rights to the fund to

14   a new general partner.

15   Q   Okay.  And who is that new general partner?

16   A   I have to -- I have to double-check on the name, and I can

17   get that for you.  But we have several entities, and I -- I

18   need to double-check on which one it was.  But I can follow up

19   with you on that.

20   Q   Yeah, I would need to know who the new general partner is.

21          MR. GALARDI:  Jeoff, can you ask when that happened?

22          MR. BURTCH:  That was one of the questions I had.

23          MR. GALARDI:  And if there are documents, things like

24   that.

25          MR. BURTCH:  When the new general partner was formed,

1   you mean, or when the ...

2   BY MR. BURTCH:

3   Q   When was -- well, you don't remember who the new general

4   partner is, so that would be difficult for me to ask that.

5        When was the general partner changed?

6             MR. GALARDI:  Well, just there's no -- I think you

7   probably just don't know the technical name of the entity?

8             MR. SCHEPIS:  Yeah.  Yeah, we have multiple entities.

9   That's why I want to make sure I give you the right one.

10             MR. GALARDI:  Right.  So let's be clear.  It's a

11   general partner, the name is whatever the name is.

12             MR. BURTCH:  Gotcha.

13             MR. GALARDI:  Yes, there are documents, and he can

14   answer when it was done, because we handled it for the group.

15   And let's just -- we can save -- I think what you're really

16   getting to, was it done many years ago or like right before we

17   filed.  It was closer to when we filed, probably within a month

18   --

19             MR. SCHEPIS:  I think it was --

20             MR. GALARDI:  -- or so before we filed?

21             MR. SCHEPIS:  Yeah, it was definitely in 2014, so I

22   would say in the -- in the first quarter.

23             MR. BURTCH:  Okay.  So I looked at the partnership

24   agreement, and there were two provisions in there.  One said

25   that the general partner could transfer the general partnership

1   A    No.

2   Q    Okay.  All right.  Were there any performance fees

3   transferred from the other entity that we talked about, to the

4   general partner?

5   A    No.

6   Q    Okay.  Again, I think we asked this -- or I asked this, but

7   we'll clarify it.  According to the bankruptcy schedules, the

8   debtor has no assets, other than the potential indemnification

9   action.

10        MR. GALARDI:  Could you repeat the question?

11  Q    According to the bankruptcy schedules, the debtor has no

12  assets, other than the potential indemnification asset that it

13  listed on the schedules.

14        MR. GALARDI:  The indemnification asset.

15        MR. BURTCH:  There was -- an indemnification was on

16  Schedule B, it's a potential indemnification in the current

17  litigation.  Let me pull that out, so we (indiscernible).

18        MR. GALARDI:  Yeah, just so we make sure we're talking

19  about the same --

20        MR. BURTCH:  Yes.

21        MR. GALARDI:  Because there's also indemnification

22  claims against it, but you're talking on the asset side of the

23  balance sheet.

24        MR. BURTCH:  Asset side of the balance sheet.

25        MR. GALARDI:  Right.

1       MR. BURTCH:  And I want to (indiscernible)

2  specifically.

3       MR. GALARDI:  And that's the pending litigation that -

4  - what's his name ...

5     (Participants confer.)

6       MR. GALARDI:  Yes.  Correct.  Okay.  So why don't you

7  show it to him.

8  BY MR. BURTCH:

9  Q    That --

10 A    Yes.  Yes, Jeoff.

11 Q    -- is the only asset listed on the schedules.

12 A    Yes.

13 Q    I just want to -- I -- we asked it before, but I want to

14 clarify again that that is the only asset that you know of that

15 the debtor would potentially have.

16 A    Yes.

17 Q    Okay.  That's my business to find assets.

18 A    Yes.  Understood.

19 Q    Okay.

20    (Participants confer.)

21 Q    Again, according to the debtor's schedules, there debtor is

22 not a party to any executory contract.  Is it a party to any

23 contract that you know of; the debtor?

24 A    Not that I know of.

25 Q    Okay.

1   think it got used up in fees.

2   Q   Other than the checking account and the UMB custodial

3   account, did the debtor ever have any signatory authority with

4   respect to any other accounts?

5   A   I -- I don't recall that it did.

6       (Pause in proceedings.)

7           MR. AIKEN:   I have some questions.

8           MR. BURTCH:   Yeah.   Just identify yourself again.

9           MR. AIKEN:   Sure.   It's Alex Aiken for the Schneiders.

10                              EXAMINATION

11  BY MR. AIKEN:

12  Q   You've testified that you have no intention of touching the

13  money currently restrained in the UMB Account.   Does the new

14  general partner have any intention to touch the money in the

15  UMB account?

16          MR. GALARDI:   Again, "intend to touch."   We've

17  directed them not to withdraw any money from those funds in our

18  -- and as you testified before, he believes his fiduciary duty

19  is to make sure that those funds go to the parties who have

20  claims to those funds, which is why he commenced the case that

21  he did.

22          MR. AIKEN:   Okay.   So that that money will remain in

23  the UMB account.

24          MR. GALARDI:   Yes, and that's what we told Jeoff, too

25  --

1      MR. SCHEPIS:  It's Pursuit Capital Management Fund, I,

2  LP.

3      MR. GALARDI:  I think you're asking is it the one that

4  has the one-point-something million dollars.

5      MR. BURTCH:  Yes.

6      MR. AIKEN:  (Not identified)  Yes, it is.

7      MR. GALARDI:  Thank you.

8      (Laughter.)

9      MR. GALARDI:  I know where you want to go.

10      MR. AIKEN:  Yes.

11  BY MR. AIKEN:

12  Q   Can I ask why you formed that new general partner?

13      MR. GALARDI:  I think he's already asked and answered,

14  but go ahead; go ahead and answer again.

15  A   We had a fiduciary responsibility to the other investors in

16  the fund, to all of the investors.

17                    FURTHER EXAMINATION

18  BY MR. SILVERMAN:

19  Q   I don't quite understand your answer.  How does forming a

20  new general partner, how does that help your other investors,

21  if you have no -- if all of the funds are locked up?

22      MR. GALARDI:  I don't think he has to get you to

23  understand it.  I think the answer is pretty clear.

24                    FURTHER EXAMINATION

25  BY MR. AIKEN:

1   Q   What do you intend to do with the new general partner?

2           MR. GALARDI:   I don't think he has to answer that

3   question because it's the new general partner, and it's not the

4   subject of the 341, so I'll instruct him not to answer.

5           MR. SILVERMAN:   I mean, I don't -- are you interested

6   in the answers to these questions or ...

7           MR. BURTCH:   Well, he's technically correct.   I mean,

8   it -- you can take a 2004 examination --

9           MR. SILVERMAN:   Yeah.

10          MR. BURTCH:   -- of the debtor and get that -- into

11  that, which I think would probably  be more appropriate than

12  the 341.   The --

13          MR. GALARDI:   And you also have pending litigation,

14  which you'll probably try to bring the entity in.   So, once you

15  try to do the 2004, we'll probably put in discovery.   If you

16  want to say you're not going to sue the new partner, that's

17  fine, too.   Go ahead, do it whichever way you want to do it.

18          MR. SILVERMAN:   My point is -- and for the record,

19  Jesse Silverman -- is that, you know, this is an entity that

20  was -- that a potentially valuable asset was transferred to on

21  the eve of bankruptcy; i.e., the interest in the fund.   And so

22  I think it's important to know why that was done, was it done

23  properly --

24          MR. GALARDI:   Well --

25          MR. SILVERMAN:   -- you know, what were the mechanisms

1  of doing that.  I would think you -- you know, as the trustee,

2  you'd be interested in knowing that.  I know we are, certainly,

3  as creditors.

4          MR. GALARDI:  Well --

5          MR. SILVERMAN:  But I think it's certainly relevant to

6  a 341.

7          MR. GALARDI:  But again, if we want to make speeches

8  here, I'll make -- I'll make my little speech.

9          First of all, the assets in the fund were not the

10 assets of the general partner, so we'll start --

11         MR. SILVERMAN:  But they had an interest in the

12 general partner -- in the fund, right?

13         MR. GALARDI:  Excuse me.  They had no economic

14 interest in those proceeds, in those monies.  So you're wrong,

15 as a matter of law.

16         Next, your client was attempting to get and got an

17 order saying, pay those funds to me, a disproportional share.

18 So to understand what a fiduciary duty is, to protect the other

19 investors in those funds, it's quite simply the case that you

20 were going to get a disproportional share.  So, instead of

21 being subject to conflicting orders --

22         MR. SILVERMAN:  Are you talking about the

23 disproportional share --

24         MR. GALARDI:  Excuse me.

25         MR. SILVERMAN:  -- that the --

1         MR. GALARDI:  Can I finish my sentence?

2         MR. SILVERMAN:  -- that the Court ordered, that -- to

3  be paid to --

4         MR. BURTCH:  Let him finish --

5         MR. SILVERMAN:  -- the Schneiders?

6         MR. BURTCH:  Let him finish, and then you can respond.

7  Let him finish.

8         MR. GALARDI:  The Court ordered to pay a certain

9  amount of money, which would have used up those funds.  There

10  are other people that are entitled to those funds, as well,

11  whether you get a judgment for 1.4 or 10 million or otherwise.

12  So the fact of the matter is -- and you can contest the

13  fiduciary duty, you can test it, you can go ahead and Mike can

14  go -- I mean, Jeoff can go ahead and try to contest the legal,

15  you know, binding nature of the changes.

16         But in the judgment of the two people that ran the

17  general partner, it was better to change the general partner

18  than to have funds that were restricted by an injunction on

19  another court, and directed by one Court to be paid, which

20  would have disadvantaged the other people who were entitled to

21  those funds.  It's not that complicated.  That's the answer,

22  that's what he's testified to.

23         And as to the new entity, what they're going to do,

24  that's none of anybody's business at this meeting.  If you want

25  to take a 2004 and ask the examination questions, then file

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : | |
| | : | Case No. 14-10610 (PJW) |
| Debtor. | : | |
| | : | **Hearing Date: September 4, 2014 at 2:00 p.m.** |
| | : | **Objection Deadline: August 21, 2014 at 4:00 p.m.** |

**MOTION OF CLARIDGE ASSOCIATES, LLC, JAMISCOTT, LLC, LESLIE
SCHNEIDER, LILLIAN SCHNEIDER AND THE ESTATE OF LEONARD SCHNEIDER
TO COMPEL COMPLIANCE WITH COURT ORDERS AND
FOR RELIEF FROM THE AUTOMATIC STAY**

Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, Lillian Schneider, and the

Estate of Leonard Schneider (collectively, the "Claimants"), by and through undersigned

counsel, hereby request that this Court enter an Order (a) compelling compliance by Pursuit

Capital Management, LLC (the "Debtor") with an order of the Supreme Court of the State of

New York (the "State Court"), and (b) granting them relief from the automatic stay to permit

them to exercise any and all state-law remedies against the Debtor and various affiliates.  In

support of this Motion the Claimants aver as follows:

1.      This is a contested matter in which the Court has jurisdiction pursuant to 28

U.S.C. §§ 157 and 1334, and the standing order of reference in this district.  Venue is proper in

this district pursuant to 28 U.S.C. §1409(a).

2.      This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (G).

3.      The Claimants invested $7 million in the Pursuit Capital Management Fund I.,

L.P. (the "Pursuit Fund I" or the "Partnership") in 2007, and currently hold a 35% limited

partnership interest in the Pursuit Fund I.  The Pursuit Fund I has not been active since early

2009 and is in run-off.

116639545_6

4.     The Pursuit Fund I is part of the Pursuit hedge fund group comprised of various entities, including various feeder funds and master funds, a general partner (the Debtor here), a broker-dealer (the "Pursuit Broker Dealer"), and an investment advisor (the "Pursuit Investment Advisor"), all controlled and owned by Anthony Schepis ("Schepis") and Francis Canelas, Jr. ("Canelas") (Schepis and Canelas, along with Canelas' wife, the "Insiders").   The Pursuit Investment Advisor acted as an investment manager to the Pursuit Fund I, and the Pursuit Broker Dealer acted, from time to time, as a broker for the Pursuit Fund I.

5.     The Debtor, the Pursuit Investment advisor and the Pursuit Broker Dealer all share the same offices and the same staff, and Schepis and Canelas admit they operate the Pursuit hedge fund group as a "unitary enterprise".   Indeed, Schepis and Canelas readily admit that the various Pursuit entities were and are indistinguishable from Schepis and Canelas.

6.     In testimony given before the Connecticut Superior Court (in an unrelated case brought by the Pursuit Investment Advisor and Pursuit Broker Dealer against UBS, A.G. on behalf of investors in the funds), Schepis repeatedly confirmed that the Pursuit group was, for all intents and purposes, "Anthony Schepis and Frank Canelas":

> THE COURT:   And so [the Pursuit Investment Advisor]; however, is you and Mr. Canelas; is that correct?
>
> Schepis:  Yes.  We are the only two.
>
> THE COURT:  There are only the two.  And you two are also the broker-dealer as Pursuit Partners, LLC; is that correct?
>
> SCHEPIS:  That's correct.
>
> (Transcript at 147-148, relevant portions of which are attached hereto as <u>Exhibit A</u>)

2

\*    \*    \*

> There's not a contractual agreement between [the Pursuit Broker
> Dealer] and [the Pursuit Investment Advisor] investment advisor
> but they are related.  **They are really us**.

(Transcript at 149)

7.    Similar testimony regarding the Debtor was given in the same case by an expert

retained by the Pursuit entities:

> [T]he general partner is [Pursuit] Capital Management which is
> Mr. Canelas, Mr. Schepis.

(Transcript at 85-86).

8.    The Pursuit entities also submitted a brief in that case stating that Pursuit was "a

unitary set" of "tightly-related and enmeshed entities operating for a single purpose" and a

"hedge fund with unitary operations and control." (Memorandum of Law, relevant portions of

which are attached hereto as <u>Exhibit B</u>, at 15).  In reliance on these arguments and testimony, the

court in that case found that the Pursuit entities constitute "a totally integrated structure" and a

"unified or unitary hedge fund structure."  (Memorandum of Decision dated July 3, 2014 at 10, a

true and correct copy of which is attached hereto as <u>Exhibit C</u>).[1]

9.    Thus, the structure of the Pursuit entities was integrated, with Schepis and

Canelas owning and controlling the Debtor, the Pursuit Investment Advisor and the Pursuit

Broker Dealer.

10.    The Debtor was previously the sole general partner of the Pursuit Fund I.  (As

discussed below, in February of this year, Schepis and Canelas, without notice to the remaining

limited partners and in violation of the fund's Amended and Restated Limited Partnership

---

[1] While the decision does not directly concern the Debtor, it leaves no doubt that Schepis and Canelas argued that
their entire group and funds, including the Debtor, were part of this "totally integrated structure."

3

Agreement (the "Partnership Agreement"), a true and correct copy of which is attached hereto as Exhibit D, secretly replaced the Debtor with a new general partner, Northeast Capital Management LLC ("Northeast"). This was only revealed to the Claimants after the Debtor filed this bankruptcy.)

11.     In September 2012, the Claimants commenced arbitration against the Debtor in New York.  The arbitration was based on numerous actions taken by the Debtor that were a violation of its fiduciary obligations to the Claimants, and enriched the Insiders at the expense of the Claimants and their investments in the Pursuit Fund I.  These included fraudulent transfers to the Insiders, self-dealing, charging grossly excessive and improper fees, and the attempted concealment of this wrongdoing by refusing to prepare audited financial statements or produce lawfully requested books and records.

12.     During the arbitration, the Debtor repeatedly failed and refused to produce discovery, or made only partial, self-serving and incomplete disclosures.  The Debtor failed to comply with various orders and directives of the arbitrator to produce discovery as well as honor its own commitments to do so.  This pattern of conduct not only denied the Claimants information and documents to which they were entitled, but also necessitated multiple hearings and greatly prolonged and increased the expense of the arbitration.

13.     The Arbitration was held in two Phases.  On June 5, 2013, the arbitrator issued a 60 page Decision, Interim Order and Partial Final Award (the "Phase I Award"), finding almost entirely in favor of the Claimants.  The arbitrator found that the Debtor had breached numerous obligations, the Partnership Agreement and its fiduciary duties as the general partner of the Pursuit Fund I, and that the Debtor and Insiders had improperly enriched themselves through self-dealing, assessing improper fees, and other illicit maneuvers by which the Debtor and

4

Insiders lined their own pockets. The arbitrator also awarded Claimants sanctions in the form of attorneys' fees for the Debtor's obstructionist conduct, refusal to produce financial and other records, and for outright misrepresentations made by Debtor to the arbitrator.  A true and correct copy of the Phase I Award is attached hereto as Exhibit E.

14.     The Claimants were awarded a total of $1,481,245.36 in damages against the Debtor under the Phase I Award, including the attorneys' fees award of $192,633.50.  Claimants were also awarded non-monetary relief including the right to an accounting of both the Debtor and the Pursuit Fund I at the Debtor's expense.   The arbitrator noted that the Debtor's "noncompliance with this Tribunal's discovery orders so hampered the process that an independent accounting by a forensic accountant is the only process that has any prospect of ascertaining whether [the Debtor] has committed any additional breaches of duty to Claimants beyond those resolved herein."

15.     In addition to the damage award directly against it, the Debtor, in its capacity as general partner, was further directed to cause the Pursuit Fund I to pay an additional $1,186,346.86 to Claimants.  This amount represents monies of the Claimants that were being improperly withheld in reserve in the Pursuit Fund I by the Debtor for "expenses" that the Debtor refused to enumerate or quantify. The arbitrator found that of the approximately $1.36 million that was being held in reserve, only $175,000 was actually necessary, and ordered the release of the difference from the Pursuit Fund I to the Claimants, as well as payment by the Debtor of $120,308.52 in interest.

16.     Thereafter, Phase II of the arbitration was held.  On December 19, 2013, the arbitrator issued a Decision, Interim Order and Second Partial Final Award (the "Phase II Award", and together with the Phase I Award, the "Awards"), which awarded the Claimants an

5

additional $3,397,847.34 in damages, interest and sanctions against the Debtor for breach of fiduciary duty in conspiring to enable its affiliated Pursuit Broker-Dealer to charge grossly excessive markups rising to the level of "looting" to the Pursuit Fund I.  As the Pursuit Broker-Dealer is wholly owned by Schepis and Canelas, the excessive markups simply ended up in their own personal  pockets.  In addition, once again, the Debtor simply refused to produce documents which would have revealed the full extent of its misconduct.  A true and correct copy of the Phase II Award is attached hereto as <u>Exhibit F</u>.

17.     In addition to these findings of wrongdoing, and efforts to conceal the wrongdoing, the Debtor, under the control of Schepis and Canelas, also engaged in secret and fraudulent transfers to strip assets.

18.     Prior to confirmation of the Awards, the Claimants served a subpoena on Wells Fargo seeking the Debtor's complete bank account statements for January-June 2013. These statements revealed that on January 16, 2013, just before the commencement of the Phase I arbitration hearing, the Debtor secretly transferred $645,571.22 from the Pursuit Fund I to its own account and immediately transferred $645,590 to accounts controlled by Schepis, Canelas and by Canelas' wife, Ruth Canelas. [2]

19.     These amounts included an incentive fee that had been assessed by the Debtor against the Claimants in 2011, and that the Claimants were actively disputing in the arbitration. The Debtor represented to the Claimants and the arbitrator that the incentive fee was merely an accrual and had not actually been withdrawn from the Pursuit Fund I, but later was forced to admit that this representation was false, and in fact the funds had been transferred to the Debtor on the eve of the arbitration hearing.  In ruling in the Phase I Award that $328,995 of the amount

---

[2] During the arbitration the Debtor had carefully produced only a single page of its January 2013 account statement which did not reveal the fraudulent transfer from the Debtor to Schepis, Canelas and Canelas' wife.

transferred by the Debtor was wrongly taken as an incentive fee, the arbitrator noted that the Debtor "was less than candid in this arbitration" about the disposition of these funds.

20.     Upon learning of the secret transfer of $645,590 from the Fund to the Insiders, the Claimants sought and obtained a temporary restraining order from the State Court.  The TRO was entered on September 13, 2013, and enjoins the Debtor, *inter alia*, "from transferring in any manner, directly or indirectly, any monies or assets of any kind of [the Fund] to itself, any of its affiliates, subsidiaries, owners or principals, or family members of its owners or principals, or to any associated persons or entities."  A true and correct copy of the TRO is attached hereto as Exhibit G.

21.     After full briefing, the Awards were both confirmed in their entirety by the State Court on January 31, 2014 and February 4, 2014, respectively.

22.     On March 20, 2014, the State Court issued separate judgments against the Debtor in respect of the Awards (the "Judgments").  The Judgments specifically require the Debtor to, *inter alia*, cause the Fund to return $1,186,346 of the Claimants' funds to the Claimants, and to submit to an accounting.  True and correct copies of the Judgments are attached hereto as Exhibit H.

23.     However, by this time, the Debtor had secretly been "removed" as the general partner of the Fund by Schepis and Canelas.

24.     Unbeknownst to the Claimants, on February 14, 2014, after confirmation of the Awards, but before issuance and entry of the Judgments, Schepis and Canelas secretly formed Northeast to be a successor general partner for the Debtor.  Like the Debtor, Northeast is owned, managed and controlled by Schepis and Canelas, and appears to be identical to the Debtor in all respects other than its name.

7

25.    Contemporaneously with Northeast's formation, the Debtor unilaterally withdrew as general partner of the Fund, and Northeast was unilaterally "made" the successor general partner of the Debtor.  This was done without notice to or consent of the Claimants, in violation of the Partnership Agreement, which provides that "[e]xcept . . . with the Consent of the Majority [of the Limited Partners], a General Partner may not retire or withdraw voluntarily from the Partnership or Transfer all or any portion of their General Partnership interests."  Partnership Agreement § 8.01.

26.    Thus, when the State Court issued the Judgments against the Debtor on March 20, 2014, the Debtor had already been removed as the general partner of the Fund, albeit improperly. Neither the Claimants nor the State Court had any idea that this had occurred.

27.    When the Debtor commenced this bankruptcy case on March 21, 2014 it had already been both completely stripped of assets and wrongfully removed as general partner of the Fund.

28.    Claimants did not learn of the existence of Northeast until the 341 meeting in this case, which was held on April 29, 2014.

29.    On or about May 28, 2014, Claimants filed a motion in State Court seeking to add Northeast as a party to the Judgments based on its status as a successor to the Debtor, and to require Northeast to comply with the portion of the Judgments that order the Debtor to cause the Fund to release $1,186,346.86 to the Claimants.

30.    Northeast opposed this motion.  It argued, *inter alia*, that under the Partnership Agreement the Debtor remained liable for all obligations and responsibilities incurred prior to its withdrawal as general partner of the Fund:

> If a General Partner shall cease to be a general partner of the Partnership, such General Partner shall be and remain liable for all obligations and liabilities

8

incurred by it as a General Partner prior to the time such withdrawal shall have become [sic] effective.

Partnership Agreement § 8.03. Thus, Northeast argued that because Claimants had already obtained confirmation of the Awards against the Debtor prior to its withdrawal, they were limited to seeking relief from the Debtor, and should seek such relief "in the Delaware Bankruptcy Court."

31.     Claimants' motion to add Northeast as a party to the Judgments was denied by the State Court on June 25, 2014 because it was "not a party to the arbitration".

## **RELIEF REQUESTED**

32.     Unsurprisingly given the foregoing history, the Debtor has not done any of the things required of it by the Judgments.  It has steadfastly refused to cause the Pursuit Fund I to release the $1,186,346.86 improperly held in reserve or to submit to an accounting. Instead, Schepis and Canelas have actively and blatantly delayed and obstructed the Claimants' lawful collection efforts, by transferring significant assets from the Debtor to themselves and to Canelas' wife, Ruth Canelas, by purporting to replace the Debtor with Northeast as the Fund's general partner, by refusing to disclose the Debtor's books and records, and through this bankruptcy filing.

33.     The Claimants seek relief from this Court to stop these abuses.  They first ask this court to order the Debtor and/or the Trustee to immediately comply with the portion of the Phase I Award that requires the Debtor to cause the Pursuit Fund I to return $1,186,346.86 of the Claimants' money and to provide an accounting.

9

34.     In addition, they ask the Court to grant relief from stay so that Claimants may file the complaint attached hereto as <u>Exhibit I</u> (or a substantially similar complaint)[3] seeking the following state law relief:

(a) reversing fraudulent transfers from the Pursuit Fund I and the Debtor to the Insiders;

(b) holding accountable and liable for the Insiders' misconduct the self-described "unitary enterprise" run by Schepis and Canelas; and

(c) obtaining the production of books and records and such other post-judgment discovery as is necessary and appropriate to enforce the Judgments against the Insiders and their affiliated "unitary enterprise".

### Compliance with Phase I Award

35.     The Phase I Award unequivocally provides that $1,186,346.86 of the amounts currently in the Pursuit Fund I belong to the Claimants, and directs the Debtor to cause this amount to be paid to the Claimants.   Under the TRO, the Debtor is prohibited from doing anything else with these funds, and the funds do not constitute property of the estate.  *See, e.g., In re Priestley*, 93 B.R. 253, 261 (Bankr. D.N.M. 1988) ("[t]he . . . limited partnership and its assets are not property of the estate [of the general partner].  Therefore, the automatic stay does not prevent actions by the limited partners (or anyone else) against the limited partnership itself.") (citations omitted).

36.     The Phase I Award further orders the Debtor to provide an accounting of itself and of the Pursuit Fund I.

---

[3] Exhibits to the complaint are voluminous and have been omitted.

10

37.     As discussed above, the Claimants have already sought to obtain this relief from Northeast on the basis that Northeast is the successor to the Debtor and is controlled by the same individuals, Schepis and Canelas, as the Debtor.

38.     In opposing the Claimants' Motion, Northeast expressly took the position that the Debtor remains obligated for all of the relief awarded by the Judgments, and that the Claimants should seek to enforce this relief before this Court.

39.     Claimants are now doing as Northeast suggested.  The Judgments represent valid final orders of the State Court that cannot be relitigated in this forum.  *See, e.g.*, *In re Briarpatch Film Corp.*, 281 B.R. 820, 829 (Bankr. S.D.N.Y. 2002) ("Bankruptcy courts must respect the orders and judgments of State courts and cannot act as a court of review or appeal as to matters that have been decided by State courts with jurisdiction.").  The issues of the Debtor's obligation to cause the Pursuit Fund I to release the Claimants' money to them, and to provide an accounting, have been determined.  All that remains is for the Debtor to do what it was ordered to do by the State Court.

40.     Accordingly, the Claimants respectfully request that the Court direct the Debtor and/or the Trustee, as appropriate, to comply with the Phase I Award.

## Relief From Stay

41.     Claimants also seek relief from stay to pursue their state law remedies as judgment creditors of the Debtor by filing the attached (or substantially similar) complaint in State Court.  In order to obtain such relief the Debtor must be added as a party or as a nominal party.  The need to involve the Debtor in such capacity constitutes cause for relief from stay.

42.     In pertinent part, Section 362(d) of the Bankruptcy Code provides "[o]n request of a party-in-interest and after notice and a hearing, the court shall grant relief from the stay

11

provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d).

43.     Courts conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether  sufficient cause exists to lift the stay." *In re Downey Financial Corp.*, 428 B.R. 595, 608-09 (Bankr. D. Del. 2010).  Delaware bankruptcy courts weigh "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *Id.* at 609.

44.     All three of the foregoing factors weigh in favor of granting relief from the automatic stay.

45.     The bankruptcy estate will not be prejudiced by granting this relief, as the Debtor has already been stripped of any assets, and the Claimants are not seeking to enforce the Judgments against the estate but against the Insiders and other entities and individuals that are not in bankruptcy.

46.     The "balance of hardships" also favors the Claimants.  To date Schepis and Canelas have succeeded in preventing the Claimants from collecting the amounts owed to them through various machinations, the most recent of which is a bankruptcy filing on behalf of the Debtor, an entity with no assets and essentially two creditors.  If Claimants are not permitted to move forward with their lawsuit, they will continue to be stymied in their legitimate collection efforts.  On the other hand, there would be no hardship to the Debtor from lifting the stay, as it is a defunct entity with no operations or assets.

12

47.     Finally, Claimants believe they have a strong probability of prevailing on the merits of their suit.  As set forth at length in the complaint, the Insiders have made at least two egregious fraudulent transfers to themselves, and Claimants believe that more will be uncovered once they are permitted to review the Debtor's and the Fund's books and records. Further, Schepis and Canelas have admitted that the Pursuit hedge fund group operates as a "unitary enterprise" and that the various entities (among which Schepis and Canelas have moved money) are, in fact, indistinguishable from themselves.  Claimants believe they will have little difficulty proving the allegations in the complaint.

48.     Accordingly, they ask that the Court grant relief from stay to permit the Claimants to proceed with their lawsuit and efforts to collect the Judgments.


[Remainder of this Page Intentionally Left Blank]

13

116639545_6

WHEREFORE, the Claimants respectfully request that this Court enter an Order (i) directing the Debtor and/or the Trustee to comply with the portions of the Phase I Award specified herein, (ii) granting it relief from the automatic stay for the purposes set forth herein, and (iii) granting such other and further relief as is appropriate under the circumstances.

Dated: August 4, 2014                      Respectfully submitted,

By:    DILWORTH PAXSON LLP


/s/ Jesse N. Silverman
Lawrence McMichael
Christie Comerford
Jesse Silverman (DE #5446)
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7284
Facsimile: (215) 575-7200

-and-

One Customs House, Suite 500
704 King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-9800
Facsimile:  (302) 571-8875

*Attorneys for Claridge Associates, LLC,
Jamiscott, LLC, Leslie Schneider, Lillian
Schneider and the Estate of Leonard Schneider*

14

116639545_6

# EXHIBIT H

116639545_6

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

*Supplemental Order + Judgment*

PRESENT:     JOAN M. KENNEY                        PART _8_
                    J.S.C.        *Justice*

*Pursuit Capital Management*

-v-

*Claridge Associates, LLC et al.,*

INDEX NO. _654301/12_
MOTION DATE _6/28/13_
MOTION SEQ. NO. _003_

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _1-8_

Answering Affidavits — Exhibits _____ | No(s). _9_

Replying Affidavits _____ | No(s). _10-13_

Upon the foregoing papers, it is ordered that this motion is

Briefly, respondents wrote a letter to this Court dated February 11, 2014, explaining that the Entry of Judgment Clerk could not enter a judgment according to this Court's decisions and orders dated, January 31, 2014 (Motion Seq. 003; Phase I) and February 4, 2014 (Motion Seq. 007; Phase II), because the orders were not self executing (nor, this Court notes, did said orders provide for entry of judgment in accordance with the arbitrator's award). This was an oversight on this Court's part and respondents were directed to provide this Court with proposed judgments respecting the above referenced decisions and orders.

After the proposed orders were submitted, petitioners immediately contacted the Court, by letter dated February 13, 2014, to object to proposed order respecting the Phase I arbitration award. In particular, petitioners objected to the following language identified as paragraph 2 of the Proposed Order:

"(2) Petitioner [Pursuit Capital Management, LLC] shall cause the payment of the sum of $1,186,346.38 by the *Pursuit Capital Management Fund I, L.P.* (the "Partnership") to Respondents, and that Respondents shall have execution thereof; ... ." [Emphasis added].

The Partial Final Award rendered by the arbitrator regarding Phase I, states, in pertinent part, as follows:

"Respondent [Pursuit Capital Management, LLC] shall pay to Claimants the sum of $1,186,346.38 ..." (the award language).

Dated: _MARCH 20, 2014_                                          _____, J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

1. CHECK ONE: ................................................ ☑ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER          ☐ SUBMIT ORDER

☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

73 Pg 1 & 2

In the decision rendered by the arbitrator, respondent was identified as the "General Partner" or "Pursuit Capital Management, LLC." Pursuit Capital Management Fund I, LP was identified as the "Pursuit Fund" or the "Partnership."

The petitioner before this Court objected to the proposed order because the arbitrator's award language never mentioned the "Partnership." Respondents countered by arguing that the proposed language before this Court was completely consistent with the arbitrator's Decision, Interim Order, and Partial Final Award dated June 5, 2013.

After a conference call with the parties, it was agreed that clarification of the aforementioned award language would be sought directly from the arbitrator, upon leave of this Court.

The arbitrator issued a 6 page response stating that the proposed language presented to this Court was consistent with the June 5, 2013 Phase I arbitration award. That is the only portion of the nearly 6 page response by the arbitrator dated March 17, 2014, which this Court has considered in approving the proposed judgments. The "explanations" provided in the arbitrator's 6 page response does not change this Court's original orders, nor the June 5, 2013 Phase I arbitration decision. Accordingly, it is

ORDERED that the Clerk of the Court enter judgment in accordance with the attached Judgment.

3/20/14

**JOAN M. KENNEY**
J.S.C.

pg. 2 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
PURSUIT CAPITAL MANAGEMENT, LLC,

              Petitioner,

          -against-

CLARIDGE ASSOCIATES, LLC, JAMISCOTT
LLC, LESLIE SCHNEIDER and LILLIAN and
LEONARD SCHNEIDER,

              Respondents.
-----------------------------------------------------------X

Index No. 654301/2012

Part 8
Kenney, J.

        **█████████ JUDGMENT**

Upon reading: (i) Respondents' Notice of Motion to confirm the PHASE 1 arbitration award dated June 12, 2013 (the "Motion"), the Memorandum of Law in Support of the Motion dated June 12, 2013, the Affirmation of Jonathan Harris, Esq. dated June 12, 2013 together with the exhibits annexed thereto submitted in support of the Motion; and (ii) Petitioner's Memorandum of Law in Opposition to the Motion dated June 21, 2013; and (iii) the reply Affirmation of Jonathan Harris, Esq. dated June 27, 2013 together with the exhibits annexed thereto as well as Respondents' reply Memorandum of Law dated June 27, 2013; and

The aforesaid documents having been submitted to the Court for its deliberation and due deliberation having been had thereon; and

This Court having rendered its decision dated January 31, 2014 (the "Order") granting Respondents' Motion to confirm the June 5, 2013 Decision, Interim Order and Partial Final Award issued by Charles J. Moxley, Jr., as arbitrator presiding over an arbitration captioned *Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider, Lillian and Leonard Schneider v. Pursuit Capital Management LLC* (the "Phase I Award"); and

Pursuant to its Order, the Court having confirmed the Phase I Award in its entirety; and

The Phase I Award having granted Respondents monetary and equitable relief as more fully described on pages 56-58 of the Phase I Award, it is hereby:

ADJUDGED that the Motion is granted and the Phase I Award rendered in favor of Respondents is confirmed; and it is further

ADJUDGED that Respondents Claridge Associates, LLC and Jamiscott LLC, having an address at 15 West 53rd Street, New York, NY 10019, Leslie Schneider, having an address at 204 Old Montauk Highway, Montauk, NY 11954 and Lillian and Leonard Schneider, having an address at 1089 South Ocean Blvd., Palm Beach, FL 33480:

(1)  Do recover from Petitioner Pursuit Capital Management LLC ("Petitioner"), having an address at 35 Mason Street, Greenwich, CT 06830:

(a)    The sum of $540,160.3, with respect to the "Airplane Claim" as described in the Phase I Award, along with interest from June 15, 2011 through June 5, 2013, the date of the Phase I Award, calculated at the rate of 5.5% simple interest in the amount of $58,603.70, for a total amount of **$598,764.09** or such other amount as calculated by the Clerk of the Court, to wit _____, and that Respondents have execution thereof;

(b)    The sum of $327,628, with respect to the "90/10 Lehman Split" as described in the Phase I Award, along with interest from August 1, 2011 through June 5, 2013, the date of the Phase I Award, calculated at the rate of 5.5% simple interest in the amount of $33,225.07, for a total amount of **$360,853.07** or such other amount as calculated by the Clerk of the Court, to wit _____, and that Respondents have execution thereof;

(c)    The sum of **$328,995.00** with respect to the "Incentive Fee Claim" as described in the Phase I Award, and that Respondents have execution thereof; and

(d)    The sum of $192,633.20, with respect to the "Sanctions" claims as described in the Phase I Award, and that Respondents have execution thereof; and it is further

ADJUDGED that,

(2) Petitioner shall cause the payment of the sum of **$1,186,346.38** by the Pursuit Capital Management Fund I, L.P. (the "Partnership") to Respondents, and that Respondents shall have execution thereof; and

(3) Respondents do recover from Petitioner **$120,308.52** as interest on the sum of $1,186,346.38 from August 1, 2011 through June 5, 2013, the date of the Phase I Award, calculated at the rate of 5.5% simple interest, or such other amount as calculated by the Clerk of the Court, to wit

_____, and that Respondents have execution thereof; and it is further

ADJUDGED that,

(3) Respondents are entitled to conduct an accounting of Petitioner and the Partnership, to be paid for by Petitioner, as set forth in the Phase I Award; and

(4) Respondents continue to be limited partners of the Partnership and continue to have an interest in the UBS Litigation, as set forth in the Phase I Award.

Dated: New York, New York

_MARCH 20, 2014_

ENTER

_____
Hon. Joan M. Kenney, J.S.C.

3

FILED: NEW YORK COUNTY CLERK 02/06/2014

NYSCEF DOC. NO. 155

INDEX NO. 654301/2012

RECEIVED NYSCEF: 02/06/2014

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   JOAN M. KENNEY                          **PART** 8
                        **J.S.C.**      *Justice*

Index Number : 654301/2012                      INDEX NO. 654301/12
PURSUIT CAPITAL MANAGEMENT,                      MOTION DATE 6/28/13
vs
CLARIDGE ASSOCIATES, LLC                          MOTION SEQ. NO. 003
Sequence Number : 003
CONFIRM AWARD

The following papers, numbered 1 to _13_ , were read on this motion to/for *confirm Arbitration award*

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits *+ memo g Law* | No(s). 1-8 |
| Answering Affidavits — Exhibits *Memo g Law* | No(s). 9 |
| Replying Affidavits *+ memo g Law* | No(s). 10-13 |

**Upon the foregoing papers, it is ordered that this motion is**

It is hereby

ORDERED that Respondents' application to confirm arbitration award, is granted; and it is further

ORDERED and ADJUDGED that the June 5, 2013 Decision, Interim Order and Partial Final Award issued by Charles J. Moxley, Jr., as arbitrator presiding over an arbitration entitled, *Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider v Pursuit Capital Management, LLC*, is confirmed, in its entirety.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: *January 31, 2014*                          _____, J.S.C.

                                                  **JOAN M. KENNEY**

1. CHECK ONE: ..................................... ☑ CASE DISPOSED      ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER
3. CHECK IF APPROPRIATE: ............................................. ☐ SETTLE ORDER      ☐ SUBMIT ORDER
                                                  ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 654301/2012

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PURSUIT CAPITAL MANAGEMENT, LLC,

Petitioner,

-against-

CLARIDGE ASSOCIATES, LLC,
JAMISCOTT LLC, LESLIE SCHNEIDER, and
LILLIAN and LEONARD SCHNEIDER,

Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**ORDERS AND JUDGMENT**

---

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP
111 Broadway, Suite 1502
New York, New York 10006
(212) 397-3370
*Attorneys for Respondents*

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

*Supplemental Order + Judgment*

PRESENT: ___JOAN M. KENNEY___
J.S.C.    *Justice*

PART __8__

*Pursuit Capital Management*

-v-

*Claridge Associates, LLC et al.,*

INDEX NO. *654301/12*

MOTION DATE _____

MOTION SEQ. NO. *007*

The following papers, numbered 1 to _____ , were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits | No(s). *1–12* |
| Answering Affidavits — Exhibits | No(s). *13–26* |
| Replying Affidavits | No(s). *27–35* |

Upon the foregoing papers, it is ordered that this motion is

It is hereby
ORDERED that the Clerk of the Court enter judgment in accordance with the attached
Judgment dated March 20, 2014.

Dated: *MARCH 20, 2014*

_____, J.S.C.

**JOAN M. KENNEY**
J.S.C.

1. CHECK ONE: ..................................................... ☑ CASE DISPOSED        ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ............................................. ☐ SETTLE ORDER        ☐ SUBMIT ORDER
   ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

80

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
PURSUIT CAPITAL MANAGEMENT, LLC,

              Petitioner,

        -against-

CLARIDGE ASSOCIATES, LLC, JAMISCOTT
LLC, LESLIE SCHNEIDER and LILLIAN and
LEONARD SCHNEIDER,

              Respondents.
------------------------------------------------------------X

Index No. 654301/2012

Part 8
Kenney, J.

███████████ **JUDGMENT**

      Upon reading: (i) Respondents' Notice of Motion to confirm the PHASE II arbitration award dated December 29, 2013 (the "Motion"), the Memorandum of Law in Support of the Motion dated December 29, 2013, the Affirmation of Jonathan Harris, Esq. dated December 29, 2013 together with the exhibits annexed thereto submitted in support of the Motion; and (ii) Petitioner's Memorandum of Law in Opposition to the Motion and in Support of Petitioner's Cross-Motion to Vacate dated January 17, 2014, the Affirmation of Spencer Stiefel, Esq. in Opposition to the Motion and in Support of Motion to Vacate Second Partial Final Arbitration Award dated January 17, 2014 with the exhibits annexed thereto; and (iii) the reply Affirmation of Jonathan Harris, Esq. dated January 27, 2014 together with the exhibits annexed thereto as well as Respondents' reply Memorandum of Law dated January 27, 2014; and

      The aforesaid documents having been submitted to the Court for its deliberation and due deliberation having been had thereon; and

      This Court having rendered its decision dated February 4, 2014 (the "Order") granting Respondents' Motion to confirm the December 19, 2013 Decision, Interim Order and Second Partial Final Award issued by Charles J. Moxley, Jr. as arbitrator presiding over an arbitration

captioned *Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider, Lillian and Leonard Schneider v. Pursuit Capital Management LLC* (the "Phase II Award");

Pursuant to its Order, the Court having confirmed the Phase II Award in its entirety and having denied Petitioner's Cross-Motion to Vacate in its entirety; and

The Phase II Award having granted Respondents monetary relief as more fully described on pages 50-51 of the Phase II Award, it is hereby:

ADJUDGED that the Motion is granted and the Phase II Award rendered in favor of Respondents is confirmed; and it is further

ADJUDGED that Petitioner's Cross-Motion to Vacate the Phase II Award is denied in its entirety; and it is further

ADJUDGED that Respondents Claridge Associates, LLC and Jamiscott LLC, having an address at 15 West 53rd Street, New York, NY 10019, Leslie Schneider, having an address at 204 Old Montauk Highway, Montauk, NY 11954 and Lillian and Leonard Schneider, having an address at 1089 South Ocean Blvd., Palm Beach, FL 33480, do recover from Petitioner Pursuit Capital Management LLC, having an address at 35 Mason Street, Greenwich, CT 06830:

(a)    The sum of $403,086, along with interest from October 11, 2007 through December 19, 2013, the date of the Phase II Award, calculated at the rate of 7.8% simple interest in the amount of $194,587.84, for a total amount of **$597,673.84** or such other amount as calculated by the Clerk of the Court, to wit _____, and that Respondents have execution thereof;

(b)    The sum of $1,821,760.11, along with interest from June 30, 2007 through December 19, 2013, the date of the Phase II Award, calculated at the rate of 7.8% simple interest in the amount of $919,544.64, for a total amount of **$2,741,304.75** or such other

2

amount as calculated by the Clerk of the Court, to wit _____, and that

Respondents have execution thereof;

(c)      The sum of **$58,868.75**, and that Respondents have execution thereof.

Dated:  New York, New York

_MARCH 20, 2014_

ENTER

_____

Hon. Joan M. Kenney, J.S.C.

3

FILED: NEW YORK COUNTY CLERK 02/06/2014
NYSCEF DOC. NO. 153

INDEX NO. 654301/2012
RECEIVED NYSCEF: 02/06/2014

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:      JOAN M. KENNEY
                   J.S.C.

PART **8**

                           _Justice_

Index Number : 654301/2012
PURSUIT CAPITAL MANAGEMENT,

vs

CLARIDGE ASSOCIATES, LLC

Sequence Number : 007

CONFIRM AWARD

INDEX NO. _654301/12_

MOTION DATE _____

MOTION SEQ. NO. _007_

The following papers, numbered 1 to _35_, were read on this motion to/for _Confirm Award_

Notice of Motion/Order to Show Cause — Affidavits — Exhibits   _+ Memo of Law_    | No(s). _1 - 12_

Answering Affidavits — Exhibits   _X Motion + memo of Law_    | No(s). _13 - 26_

Replying Affidavits   _+ Memo of Law_    | No(s). _27 - 35_

Upon the foregoing papers, it is ordered that this motion is

     It is hereby
     ORDERED that respondents' application, is granted; and it is further
     ORDERED and ADJUDGED that the December 19, 2013 Decision, Interim Order and
Second Partial Final Award on respondents' Phase II claim for Damages based on Mark-Ups and
for Sanctions issued by Charles J. Moxley, Jr., as arbitrator presiding over an arbitration held in
New York, NY and captioned _Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and
Lillian and Leonard Schneider v Pursuit Capital Management, LLC_, is hereby confirmed, in its
entirety; and it is further
     ORDERED that petitioner's cross motion application, is denied, in its entirety.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _February 4, 2014_                     _____, J.S.C.
                                            JOAN M. KENNEY
                                                J.S.C.

1. CHECK ONE: .................................................. ☑ CASE DISPOSED         ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART    ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                            ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 654301/2012

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PURSUIT CAPITAL MANAGEMENT, LLC,

Petitioner,

-against-

CLARIDGE ASSOCIATES, LLC,
JAMISCOTT LLC, LESLIE SCHNEIDER, and
LILLIAN and LEONARD SCHNEIDER,

Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**ORDERS AND JUDGMENT**

---

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP
111 Broadway, Suite 1502
New York, New York 10006
(212) 397-3370
*Attorneys for Respondents*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          :

PURSUIT CAPITAL MANAGEMENT, LLC,                :   Chapter 7
                                                :
          Debtor.                               :   Case No. 14-10610 (LSS)
                                                :
                                                :   Hearing Date: March 26, 2015 at 2:00 p.m.
                                                :   Objection Deadline: March 19, 2015 at 4:00 p.m.

## TRUSTEE'S MOTION FOR AN ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS

Jeoffrey L. Burtch, as Chapter 7 Trustee for the estate of Pursuit Capital Management, LLC (the "Trustee" for the "Estate" of the "Debtor"), moves for the entry of an order, substantially in the form annexed hereto as Exhibit "A" approving an agreement by, between and among the Trustee and Alpha Beta Capital Partners, L.P. ("Alpha Beta"), Claridge Associates, LLC ("Claridge"), Jamiscott LLC ("Jamiscott"), Leslie Schneider, and Lillian and Leonard Schneider (the "Schneiders") (collectively, Alpha Beta, Claridge, Jamiscott and the Schneiders are the "Creditors") (the "Trustee" and the "Creditors" are the "Parties"), to settle, transfer and assign certain claims, rights, and interests. In support of this Motion, the Trustee respectfully states as follows:

### Jurisdiction

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, as well as Rules 2002, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure.

LEGAL\22166099\1

## Background

3.      On April 7, 2014 (the "Petition Date") the Debtor commenced this case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

4.      As of the Petition Date, various litigation and arbitrations were pending between and among one or more of the Creditors on the one hand and one or more of the Debtor, certain entities related to the Debtor and the individual members of the Debtor (the "Insiders"). A judgment was entered in favor of the Schneiders and against the Debtor, prompting the Debtor to commence this case. There are no creditors in this case other than those identified in this paragraph.

5.      On or about the Petition Date, the Trustee was appointed to serve as the trustee for the Estate of the Debtor, and since the time the 341 meeting was held and concluded on April 29, 2014, the Trustee has been serving as the permanent trustee in this case.

6.      On the Petition Date, the Debtor filed its Chapter 7 Bankruptcy Schedules and the Statement of Financial Affairs.

7.      The only assets listed on the Debtor's Bankruptcy Schedule B are (i) claims asserted in *Pursuit Investment Management, LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.*; Index No. 652457/2013 (Supreme Court of the State of New York) (the "New York Action"); and (ii) potential indemnification claims against Pursuit Capital Management Fund I, L.P. (the "Indemnification Claims"). These two assets are listed as having an "unknown" value.

8.      While no other assets are listed in the Bankruptcy Schedules, a footnote in the Statement of Financial Affairs reveals that gross income for calendar year 2011 in the amount of $645,571.22 was disbursed to the Debtor's members "in the ordinary course of business on 1/16/13" (the "Potential Avoidance Claim").

9.    According to the Creditors, the Debtor may have additional rights, claims and causes of action, (including without limitation actions to recover fraudulent conveyances or other transfers made without value or for less than fair value), against the owners, managers, insiders, affiliates, members, successors, transferees, and assignees of the Debtor, including, without limitation, Northeast Capital Management, LLC, Pursuit Partners, LLC, Pursuit Investment Management, LLC, Anthony Schepis, Frank Canelas and Ruth Canelas (such rights, claims and causes of action, together with the Potential Avoidance Claim, are the "Debtor Claims").

10.    During the 341 meeting of creditors, the Debtor's representative testified that the Debtor owned no assets other than those disclosed in the Bankruptcy Schedules.

11.    During discussions with counsel for the Creditors, the Creditors stated that there is pending litigation in which various "Pursuit" entities have asserted claims against UBS. The Creditors believe that the Debtor has an interest in this litigation, captioned *Pursuit Partners, LLC v. UBS AG*, D.N.X08 CV 4013452 S (Conn. Super. Ct.) (the "UBS Claim"). The Debtor's representative has disputed this contention and stated unequivocally that the Debtor has no interest in the pending litigation against UBS.

12.    The Estate currently has no funds with which to administer the Estate, let alone pursue the claims and litigation referenced hereinabove.

13.    The Creditors, the Harris Firm, and Reed Smith have made an offer (i) to settle the New York Action, and (ii) for the Creditors to take an assignment of all rights and interests of the Estate, if any, in the Debtor Claims, the Indemnification Claims, and the UBS Claim.

14.    The Creditors are the only non-insider creditors[1] listed in Bankruptcy Schedules D, E or F.

---

[1] The only other "creditors" listed in Bankruptcy Schedule F are Messrs. Schepis and Canelas, the members of the Debtor, and the recipients of the funds giving rise to the Potential Avoidance Claim. They are listed as holding contingent, unliquidated indemnification claims.

3

15.     After arm's length negotiations, the Parties have reached an agreement to settle, transfer and assign certain claims on the terms and conditions set forth in the Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Agreement"), a copy of which is annexed hereto as Exhibit "B" and incorporated herein by reference.

### Relief Requested

16.     By this Motion, the Trustee seeks the entry of an order pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Federal Rules of Bankruptcy Procedure 6004 and 9019, (a) authorizing the Trustee to settle, transfer and assign certain claim, rights and interests free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Agreement.

17.     The Agreement generally provides as follows:

(i)     In exchange for a payment by the Creditors to the Trustee in the amount of one hundred twenty five thousand dollars ($125,000.00) (the "Settlement Payment"), the Trustee, on behalf of the Estate shall sell, transfer and convey to the Creditors, free and clear of all liens, claims and interests, all of the right, title and interest of the Debtor and the Estate in and to (i) the Debtor Claims, (ii) the Indemnification Claims, (iii) the UBS Claim, and (iv) all books and records of the Debtor, in whatever format and wherever located (except such books and records that are protected by any applicable privilege). The Trustee may retain originals or copies of said books and records to the extent he determines they are necessary to complete the administration of the Estate. The Settlement Payment shall be paid to the Trustee within twenty (20) days after Court approval of this Agreement;

(ii)     The Creditors shall be permitted to bring the Debtor Claims in the Bankruptcy Court, and are deemed to have standing to bring such claims in the Bankruptcy Court. The Creditors shall bear all of their own costs and expenses associated with doing so. Further, the Creditors shall (i) support the closing of this bankruptcy case notwithstanding the pendency of any adversary proceeding(s) with respect to the Debtor Claims, provided such closing does not prejudice the Creditors or result in dismissal of any then-pending adversary proceedings and (ii) agree to pay the Trustee, out of any recovery or settlement of the Debtor Claims all fees and costs reasonably incurred by the Estate and approved by the Court relating directly or indirectly to the pursuit of the Debtor Claims in the

Bankruptcy Court. Notwithstanding the foregoing, the Trustee shall not move to close the chapter 7 case prior to April 7, 2016;

(iii)   Also, upon receipt of the Settlement Payment in good funds, the New York Action shall be deemed settled and dismissed with prejudice with respect to the Debtor. The Trustee shall execute a reasonable form of stipulation or notice that the Creditors, the Harris Firm, and Reed Smith will prepare and file in the Breach of Contract Claim litigation marking the Debtor's claims in the Breach of Contract Claim settled and dismissed with prejudice. This Agreement shall include a release of (a) all claims brought by the Debtor in the New York Action, including without limitation, all claims that have been or could be compelled to arbitration and (b) all claims that could have been brought by the Debtor in the New York Action; and

(iv)   The assignments, sales, transfers and conveyances hereunder are on an "as is where is" basis, and the Trustee makes no representation or warranty of any kind with respect to the Debtor Claims, the Indemnification Claims, the UBS Claim, or the existence or quality of any books and records.

18.   Upon approval and consummation of this Agreement, all of the Estate's assets will have been settled or assigned to the Creditors. The Trustee expects to be in a position to close this case in a reasonably prompt fashion after approval and consummation of this Agreement.

## Authority for Requested Relief

19.   Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve use, sale or lease, other than in the ordinary course of business, the Court must find "some articulated business justification." *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) and *In re Abbotts Dairies of Pa. Inc.*, 788 F. 2d 143 (3d Cir. 1986 ) (requiring good faith purchasing). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

20.     Courts have held that transactions should be approved under Section 363(b) of the Bankruptcy Code when they are supported by the sound business judgment of the debtor or trustee, as the case may be. *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D.Del. 1991) (holding that transactions should be approved under Section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D.Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

21.     Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

22.     Section 363(f) of the Bankruptcy Code permits the Trustee to sell assets free and clear of all interests which may be asserted against such assets, which any such interests attaching to the net proceeds of the sale, subject to the rights and defenses of the Debtor with respect thereto. As Section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to Section 363(b), it is only necessary to meet one of the five conditions of Section 363(f). To the extent that there are interests that may be asserted in the assets, the Trustee believes that one or more of the aforementioned conditions have been or can be satisfied.

23. Further, Section 704(a) of the Bankruptcy Code, titled "Duties of trustee" lists as the first express duty of a trustee that he "shall collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."

24. In the Trustee's business judgment, the Settlement Payment represents a fair and reasonable price for the claims, rights and interests being settled, assigned or transferred. The benefit of receiving immediate payment for assets upon which the Debtor has placed an "unknown" value outweighs the potential benefits of retaining such assets, which would require pursuing acrimonious and lengthy litigation at considerable risk and without funding. Moreover, the only non-insider creditors of the Estate are the Creditors, who will be able to pursue these assets and enjoy any recovery from their efforts after the Agreement is approved. Lastly, the sale will enable the Trustee to pay administrative expense claims incurred by the Estate and proceed to close this case in a reasonably prompt fashion after approval and consummation of the Agreement.

25. Based on the foregoing, the Trustee submits that the sale of the assets is a prudent exercise of his business judgment under the circumstances and is in the best interests of the Debtor's estate and its creditors.

26. In addition to the sale of the Debtor Claims and Indemnification Claims, the Agreement includes a settlement of all claims in the New York Action held by the Estate that could have been asserted in the New York Action against the Creditors, Reed Smith and the Harris Firm.

27. The Debtor listed the claims of the Debtor in the New York Action as having an "unknown" value. The Trustee, through his undersigned counsel, has discussed the New York Action with counsel for the other plaintiffs in the New York Action. The Trustee has also

solicited an offer from the Insiders to purchase the claims against the Creditors, Reed Smith and the Harris Firm. Based upon these discussions, and a proposal that was submitted by the Insiders, buttressed by the fact that the only non-insider creditors of the Estate are the Parties to the Agreement, the Trustee believes that the settlement of the New York Action is fair and reasonable and approval of the settlement as part and parcel of the Agreement is in the best interest of the Estate.

28.    Pursuant to Bankruptcy Rule 9019(a), the authority to approve a settlement is within the sound discretion of the bankruptcy court. In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate. *Key3Media Group, Inc v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citations omitted), *aff'd*, 2006 WL 2842462 (D. Del. Oct. 2, 2006); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Texaco*, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988); *Depo v. Chase Lincoln First Bank, N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988).[2]

29.    To approve a settlement under Bankruptcy Rule 9019(a), the Court need only determine that the proposed settlement does not fall below the lowest point in the range of reasonableness. *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992); *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Coram Healthcare Corp.*, 315 DR. 321, 330 (Bankr. D. Del. 2004); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Am. Reserve Corp.*, 841 F.2d at 161; *Teltronics Servs.*, 762 F.2d at 187-89. In addition, if the Court determines that the settlement is in the best interests

---

[2] *See also In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989); *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 161 (7th Cir. 1987) (a court is not required to resolve the issues of fact and law compromised by a proposed settlement); *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 187-89 (2d Cir. 1985).

of the estate, it may approve the settlement. *See, e.g., Marvel,* 222 B.R. at 250. A court need not find, however, that the settlement is the best possible agreement or that the parties have maximized their recovery. *See, e.g., Nellis v. Shugrue,* 165 B.R. 115, 123 (S.D.N.Y. 1994) (stating that the task of a bankruptcy judge is not to determine whether settlement was the best that could be obtained); *Coram Healthcare,* 315 B.R. at 330 ("[T]he court does not have to be convinced that the settlement is the best possible compromise"). Rather, courts generally afford great deference to the recommendations of the estate's representative when considering negotiated settlement agreements. *See, e.g., Official Comm. of Unsecured Creditors v. James Talcott, Inc. (In re Int'l Distribution Ctrs., Inc.),* 103 B.R. 420, 423 (S.D.N.Y. 1989).

30.     In determining whether a settlement is within the range of reasonableness, the Court should consider four principal factors:

      (1)     the probability of success in the litigation;

      (2)     difficulties to be encountered in collection;

      (3)     the complexity of the litigation and related expense, inconvenience, and delay; and

      (4)     the interests of the creditors.

*Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc),* 283 F.3d 159, 165 (3d Cir. 2002); *In re Etoys, Inc.,* 331 B.R. 176, 198 (Bankr. D. Del. 2005); *Coram Healthcare,* 315 B.R. at 330-31; *Marvel,* 222 B.R. at 249; *see also Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.),* 258 B.R. 119, 123 (D.N.J. 2000); *see also Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir. 1990); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Props),* 784 F.2d 1377, 1381 (9th Cir. 1986). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.

For the reasons set forth herein, the Trustee respectfully submits that the settlement included in the Agreement provides significant benefit to this Estate and, in light of the aforementioned factors, should be approved.

### Solicitation of Additional Offers

31.     As an additional test of the fairness of the proposed Agreement, the Trustee will consider additional proposals for the assets on similar terms to the Agreement through the date by which objections are due to this Motion. If an additional proposal is received by the Trustee in writing on or before the objection deadline that is higher than the Settlement Payment, the Trustee will request that all bidders submit their last, best and final written proposals by sealed bid no later than the date that is three business days before the hearing date for this Motion.

32.     If an additional proposal is received by the Trustee, then he will promptly advise the bidders of his decision as to which proposal is higher and/or better, and request approval of the higher and/or better proposal at the hearing.

### Notice

33.     Notice of this Motion has been given to the Debtor, the Office of the United States Trustee, counsel for the Insiders, all creditors, and all parties requesting notice pursuant to Fed. R. Bankr. P. 2002.    The Trustee believes that such notice is adequate under the circumstances and that no other or further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as Exhibit "A" granting the relief requested herein, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
COZEN O'CONNOR

Dated: March 2, 2015

Mark E. Felger (DE No. 3919)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
302-295-2000 Telephone
302-295-2013 Fax
mfelger@cozen.com

*Counsel to Chapter 7 Trustee,*
*Jeoffrey L. Burtch*

11

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: : Chapter 7
:
PURSUIT CAPITAL MANAGEMENT, LLC, :
:
Debtor. : Case No. 14-10610 (LSS)
:
:

## AGREEMENT TO SETTLE, TRANSFER AND ASSIGN
## CERTAIN CLAIMS, RIGHTS AND INTERESTS

This agreement is made this 27th day of February, 2015, by, between and among Jeoffrey L. Burtch, as Chapter 7 Trustee for the estate of Pursuit Capital Management, LLC (the "Trustee" for the "Estate" of the "Debtor"), on the one hand, and (i) Harris, O'Brien, St. Laurent & Chaudhry LLP (the "Harris Firm"), (ii) Reed Smith LLP ("Reed Smith"), (iii) Alpha Beta Capital Partners, L.P. ("Alpha Beta"), and (iv) Claridge Associates, LLC ("Claridge"), Jamiscott LLC ("Jamiscott"), Leslie Schneider, and Lillian Schneider, individually and as the personal representative of the executor of the estate of Leonard Schneider (the "Schneiders") (collectively, Alpha Beta, Claridge, Jamiscott and the Schneiders are the "Creditors") (the "Trustee," the "Harris Firm," "Reed Smith," and the "Creditors" are the "Parties").

WHEREAS, on April 7, 2014 (the "Petition Date") the Debtor commenced this case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code;

WHEREAS, on or about the Petition Date, the Trustee was appointed to serve as the trustee for the Estate of the Debtor, and since the time the 341 meeting was held and concluded on April 29, 2014, the Trustee has been serving as the permanent trustee in this case;

LEGAL\22150483\3

98

WHEREAS, on the Petition Date, the Debtor filed its Chapter 7 Bankruptcy Schedules and the Statement of Financial Affairs;

WHEREAS, the only assets listed on the Debtor's Bankruptcy Schedule B are (i) claims asserted in *Pursuit Investment Management, LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.*; Index No. 652457/2013 (Supreme Court of the State of New York) (the "New York Action"); and (ii) potential indemnification claims against Pursuit Capital Management Fund I, L.P. (the "Indemnification Claims"). These two assets are listed as having an "unknown" value;

WHEREAS, while no other assets are listed in the Bankruptcy Schedules, a footnote in the Statement of Financial Affairs reveals that gross income for calendar year 2011 in the amount of $645,571.22 was disbursed to the Debtor's members "in the ordinary course of business on 1/16/13" (the "Potential Avoidance Claim");

WHEREAS, the Debtor may have additional rights, claims and causes of action, (including without limitation actions to recover for fraudulent conveyances or other transfers made without value or for less than fair value), against the owners, managers, insiders, affiliates, members, successors, transferees and assignees of the Debtor, including, without limitation, Northeast Capital Management, LLC, Pursuit Partners, LLC, Pursuit Investment Management, LLC, Anthony Schepis, Frank Canelas and Ruth Canelas (such rights, claims and causes of action, together with the Potential Avoidance Claim, the "Debtor Claims");

WHEREAS, during the 341 meeting of creditors, the Debtor's representative testified that the Debtor owned no assets other than those disclosed in the Bankruptcy Schedules;

LEGAL\22150483\3

2

99

WHEREAS, during discussions with counsel for the Creditors, the Creditors stated that there is pending litigation in which various "Pursuit" entities have asserted claims against UBS. The Creditors believe that the Debtor has an interest in this litigation, captioned *Pursuit Partners, LLC v. UBS AG*, D.N.X08 CV 4013452 S (Conn. Super. Ct.) (the "UBS Claim"). The Debtor's representative has disputed this contention and stated unequivocally that the Debtor has no interest in the pending litigation against UBS;

WHEREAS, the Estate currently has no funds with which to administer the Estate, let alone pursue the claims and litigation referenced hereinabove;

WHEREAS, the Creditors, the Harris Firm, and Reed Smith have made an offer (i) to settle the New York Action, and (ii) for the Creditors to take an assignment of all rights and interests of the Estate, if any, in the Debtor Claims, the Indemnification Claims, and the UBS Claim;

WHEREAS, the Creditors are the only non-insider creditors[1] listed in Bankruptcy Schedules D, E or F; and

WHEREAS, after arm's length negotiation, the Parties have reached an agreement to settle, transfer and assign certain claims on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are

---

[1] The only other "creditors" listed in Bankruptcy Schedule F are Messrs. Schepis and Canelas, the members of the Debtor, and the recipients of the funds giving rise to the Potential Avoidance Claim. They are listed as holding contingent, unliquidated indemnification claims.

LEGAL\22150483\3

3

hereby acknowledged, the Parties, intending to be legally bound, stipulate and agree to settle, transfer and assign certain claims as set forth herein below.

1.       The recitals set forth in the "Whereas" clauses above are incorporated herein by reference.

2.       In exchange for a payment by the Creditors to the Trustee in the amount of one hundred twenty five thousand dollars ($125,000.00) (the "Settlement Payment"), the Trustee, on behalf of the Estate shall sell, transfer and convey to the Creditors, free and clear of all liens, claims and interests, all of the right, title and interest of the Debtor and the Estate in and to (i) the Debtor Claims, (ii) the Indemnification Claims, (iii) the UBS Claim, and (iv) all books and records of the Debtor, in whatever format and wherever located (except such books and records that are protected by any applicable privilege).  The Trustee may retain originals or copies of said books and records to the extent he determines they are necessary to complete the administration of the Estate.  The Settlement Payment shall be paid to the Trustee within twenty (20) days after Court approval of this Agreement.

3.       The Creditors shall be permitted to bring the Debtor Claims in the Bankruptcy Court, and are deemed to have standing to bring such claims in the Bankruptcy Court.  The Creditors shall bear all of their own costs and expenses associated with doing so.  Further, the Creditors shall (i) support the closing of this bankruptcy case notwithstanding the pendency of any adversary proceeding(s) with respect to the Debtor Claims, provided such closing does not result in dismissal of any then-pending adversary proceedings and (ii) agree to pay the Trustee, out of any recovery or settlement of the Debtor Claims all fees and costs reasonably incurred by the Estate and approved by the Court relating directly or indirectly to the pursuit of the Debtor

LEGAL\22150483\3

4

Claims in the Bankruptcy Court. Notwithstanding the foregoing, the Trustee shall not move to close the chapter 7 case prior to April 7, 2016.

4.    Also, upon receipt of the Settlement Payment in good funds, the New York Action shall be deemed settled and dismissed with prejudice with respect to the Debtor. The Trustee shall execute a reasonable form of stipulation or notice that the Creditors, the Harris Firm, and Reed Smith will prepare and file in the New York Action marking the Debtor's claims in the New York Action settled and dismissed with prejudice. This Agreement shall include a release of (a) all claims brought by the Debtor in the New York Action, including without limitation all claims that have been or could be compelled to arbitration and (b) all claims that could have been brought by the Debtor in the New York Action.

5.    The assignments, sales, transfers and conveyances hereunder are on an "as is where is" basis, and the Trustee makes no representation or warranty of any kind with respect to the Debtor Claims, the Indemnification Claims, the UBS Claim, or the existence or quality of any books and records.

6.    This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained here, and this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties.

7.    This Agreement may be executed in several counterparts which may be transmitted by either mail, facsimile, or electronic mail, each of which shall be deemed to be an original, so that all of which taken together shall constitute one and the same instrument.

LEGAL\22150483\3

5

8.    Each Party agrees to be responsible for and to bear its/his own costs, expenses and attorneys' fees incurred in connection with this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

9.    This Agreement shall be governed by the laws of the State of Delaware and applicable federal law, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction. The Bankruptcy Court shall retain jurisdiction over the enforcement of this Agreement and any disputes concerning the terms of this Agreement.

10.    Each Party acknowledges that the consideration referred to and the other terms of this Agreement do not constitute an admission or concession of liability or of any fact.

11.    Each person signing this Agreement represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of such Party and to bind his or her respective client or Party to the terms and conditions of this Agreement.

12.    This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted.

13.    Each Party represents and warrants that such Party has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel of its/his/her choosing with respect to this Agreement and all matters covered by it.

14.    This Agreement shall be submitted to the Bankruptcy Court by the Trustee through a motion to sell property of the estate pursuant to 11 U.S.C. § 363(b) and (f).  The

LEGAL\22150483\3

6

Parties agree to reasonably cooperate with the Trustee to seek entry of the Order approving the Agreement, and agree to pose no objection, formal or informal, to the Trustee's motion seeking entry of the Order to the extent that the Order is consistent with the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

_____

JEOFFREY L. BURTCH AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF
PURSUIT CAPITAL MANAGEMENT, LLC

ALPHA BETA CAPITAL PARTNERS, L.P.

_____
By:
Its:

CLARIDGE ASSOCIATES, LLC

_____
By:
Its:

JAMISCOTT LLC

_____
By:
Its:

(Signatures Continue on Next Page)

Parties agree to reasonably cooperate with the Trustee to seek entry of the Order approving the Agreement, and agree to pose no objection, formal or informal, to the Trustee's motion seeking entry of the Order to the extent that the Order is consistent with the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

JEOFFREY L. BURTCH AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF
PURSUIT CAPITAL MANAGEMENT, LLC

ALPHA BETA CAPITAL PARTNERS, L.P.

By:  Philip Chapman
Its:    General Partner

CLARIDGE ASSOCIATES, LLC

By:
Its:

JAMISCOTT LLC

By:
Its:

(Signatures Continue on Next Page)

Parties agree to reasonably cooperate with the Trustee to seek entry of the Order approving the Agreement, and agree to pose no objection, formal or informal, to the Trustee's motion seeking entry of the Order to the extent that the Order is consistent with the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

JEOFFREY L. BURTCH AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF
PURSUIT CAPITAL MANAGEMENT, LLC

ALPHA BETA CAPITAL PARTNERS, L.P.

By:
Its

CLARIDGE ASSOCIATES, LLC

By:
Its

JAMISCOTT LLC

By:
Its:

(Signatures Continue on Next Page)

RLF1 23-50404-1

106

LESLIE SCHNEIDER

LILLIAN SCHNEIDER

ESTATE OF LEONARD SCHNEIDER

By:
Its

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP

By:  Jonathan Harris
      Managing Partner

REED SMITH LLP

By:
Its:

1746821-029-v0.0-US-

107

LESLIE SCHNEIDER

_____

LILLIAN SCHNEIDER

_____

ESTATE OF LEONARD SCHNEIDER

_____
By:
Its:

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP

_____
By:

REED SMITH LLP

_____
By:   Robert M. Abrahams, Esq., Schulte Roth & Zabel LLP
Its:  Counsel for Reed Smith, LLP

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PURSUIT CAPITAL MANAGEMENT, LLC,<br><br>Debtor. | Case No. 14-10610 (LSS)<br><br>Chapter 7<br><br>**Hearing Date: March 26, 2015 at 2:00 p.m.**<br>**Objection Deadline: March 19, 2015 at 4:00 p.m.**<br><br>**Ref. No. 66** |

**PRELIMINARY OBJECTION TO TRUSTEE'S MOTION FOR AN
ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER
AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS**

Now Come Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (collectively, the **"Creditors"**) and in support of their Preliminary Objection[1] (the **"Objection"**) to the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests [Docket No. 66] (the **"Motion"**) represent as follows:

**Introduction and Overview**

On March 2, 2015, the Chapter 7 Trustee (the **"Trustee"**) for the above captioned Debtor (the **"Debtor"**) filed the instant Motion seeking approval of an agreement (the **"Agreement"**) by, between and among the Trustee and Alpha Beta Capital Partners, L.P., Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider (the **"Claridge Parties"**) to settle, transfer and assign certain claims, rights and interests (the **"Transaction"**) that are property of the Debtor's estate (the **"Estate"**) being held for the benefit of all creditors.

---

[1]    This is a preliminary objection because, as noted herein, discovery is required to determine the process by which the Transaction was negotiated and whether it lacks good faith and fails to maximize value for the Estate.  The Creditors reserve their right to amend and supplement this Preliminary Objection to include information that is learned through the discovery process.

The Creditors intend to show that the proposed Transaction does not maximize the value of the assets being sold and is clearly not in the best interest of the Debtor's Estate.

The Trustee's actions, in preferring one group of creditors to the detriment of other identically situated creditors by refusing to consider a higher and better proposal and signing an agreement that prohibits the acceptance of higher and better proposals, lacks good faith. The full extent of the Claridge Parties and Trustee's actions in negotiating the Transaction needs to be fully understood through the discovery process that is being commenced simultaneously with the filing of this Preliminary Objection.

As a result, this Court should defer consideration of the Motion to allow for the completion of discovery regarding the actions by the Trustee and Claridge Parties in this matter and ultimately deny the Motion.

### Lack of Good Faith

1.     The Creditors believe that the proposed Transaction clearly violates the Trustee's duty to maximize value for the benefit of all parties-in-interest and treat similarly situated parties similarly. Simultaneously with the filing this Objection, the Creditors have commenced discovery to fully understand the process by which the Transaction was negotiated, whether the Transaction was negotiated in good faith and whether it will maximize value for the Estate. To the extent the discovery needed to fully and fairly resolve the Motion has not been fully completed prior to the hearing on the Motion, in light of the serious and significant issues raised in this Objection, the Creditors respectfully request that the hearing on the Motion, currently scheduled for March 26, 2015, be regarded as a status conference where an appropriate discovery schedule can be put into place among the parties.

2

2.      When the Agreement was executed and the Motion was filed, no proofs of claim were on file and the claims bar date was still almost two weeks away.  At that time, the Claridge Parties and the Creditors were identically situated as parties-in-interest who had yet to file proofs of claim in this Chapter 7 case.

3.      The history of the negotiations between the various parties related to the Transaction indicates a lack of good faith.  As more specifically set forth below, the Trustee failed to obtain a higher offer from the Creditors before signing the Agreement, no bidding procedures have been approved and the Trustee has no ability to accept higher and better offers under the Agreement.

4.      The Creditors understand that the Claridge Parties made an initial offer for the assets being sold and the Creditors responded with an offer that was substantially larger.  The Creditors also understand that the Trustee at some point received an offer that was slightly higher than the Creditors' offer.

5.      On the morning of February 27, 2015 - the business day before the Motion was filed (and the same day that the Agreement was dated and apparently signed), counsel for the Trustee sent a message to counsel for the Creditors, "reaching out to you to inquire whether your clients are willing to proceed with a settlement" on terms that would have been substantially larger and materially better than the Agreement because according to his counsel, "we have gotten hung up on certain issues" with the Claridge Parties.  That afternoon, counsel for the Creditors responded "I have had a chance to discuss your proposal with them and they are interested in pursuing it. Please provide a draft settlement agreement at your earliest convenience."

3

6.    It is now obvious that a draft was readily available and could have been provided in short order.  However, no draft agreement was ever provided and no response was ever received from counsel for the Trustee.  Instead and inexplicably, the Creditors learned that the Agreement was executed on February 27 when the Motion was filed on March 2, the next business day.

### The Trustee's "Solicitation for Additional Offers"

7.    Paragraph 31 of the Motion refers to the possibility of submitting additional offers to the Trustee on or before the objection deadline for what would appear to be an unapproved, informal and unsupervised of auction by the Trustee.

8.    The Motion conveniently overlooks paragraph 6 of the Agreement which provides (in its entirety):

> 6.    This  Agreement  constitutes  the  entire  agreement  and understanding between the Parties relating to the subject matter contained here, and this Agreement ***may not be altered, amended, or modified in any respect or particular whatsoever***, except by a writing duly executed by the Parties. (emphasis supplied)

9.    Unlike other sale contracts that this Court regularly considers, the Agreement does not contain any provision or process for others to submit higher or better offers.  Instead, paragraph 6 of the Agreement actually precludes the "Solicitation" that the Motion suggests.

10.    The Trustee's proposed solicitation procedures are also disingenuous. The Trustee has already shown that he is not interested in hearing higher and better offers.  If he was, he would have continued to engage with the Creditors on February 27 knowing that the Creditors

4

had already topped the Claridge Parties' proposal once before and indicated their willingness to proceed based on the terms his attorney suggested.

11.    The "Solicitation" highlights the Trustee's attempt to favor the Claridge Parties at the expense of all other parties-in-interest in this case. The Trustee is not bound to accept a higher or otherwise better offer for the assets being transferred under the Agreement. The Creditors, having already topped a proposal by the Claridge Parties once, had requested specific terms for a substantially higher and better Transaction only to be ignored. Given their experience, the Creditors have no confidence in the Trustee's ability to fairly and impartially evaluate competing proposals for the proposed Transaction. Stated differently, the Creditors (and Court) cannot divine what the Trustee means when he says in the Motion that he "might" consider "similar terms to the Agreement."

12.    This is especially important in this case because the terms of the Agreement would dismiss with prejudice certain claims in the New York litigation against the Claridge Parties rather than selling those claims to the highest bidder to maximize the value to all parties-in-interest. It appears as if the Claridge Parties only care about the dismissal of claims against themselves, not maximizing value for the Estate. This aspect of the proposed Transaction is as subtle as it is significant since it would not maximize value for the Debtor's interest in the New York litigation. Creditors believe the claims against the Claridge Parties should be sold, rather than be dismissed with prejudice to maximize value for the Estate.

13.    Also, as noted above, the Trustee's actions, in not accepting a higher offer from the Creditors, show that he is either unable or unwilling to be an "honest broker" with regard to selling assets for a higher value and greater benefit for the Estate. Having solicited and then disregarded the Creditors' proposal out of hand that would have been materially better, the

5

Trustee now seems to advocate an auction that is precluded by the Agreement.  The Agreement precludes the Trustee from receiving any bids - especially "sealed bids" and the Trustee's actions have caused the Creditors to lose faith in his ability to fairly and impartially evaluate and determine what constitutes the highest and best proposal.

### Inherent Inconsistencies are Troublesome

14.      Paragraph 18 of the Motion claims that, "Upon approval and consummation of this Agreement, all of the Estate's assets will have been settled or assigned to the Creditors." The provision implies that, if the Agreement is consummated, there will be nothing left for the Trustee (or his counsel) to do and no assets left to administer.

15.      However, paragraph 3 of the Agreement provides (in pertinent part), the "[Claridge Parties] shall (i) support the closing of this bankruptcy case . . . and (ii) agree to pay the Trustee, out of any recovery or settlement of the Debtor Claims all fees and costs reasonably incurred by the Estate and approved by the Court relating directly or indirectly to the pursuit of the Debtor Claims in the Bankruptcy Court."

16.      These provisions are in irreconcilable conflict.  If there are no further assets to administer, what would the Trustee be receiving payment for?   This inconsistency is also troublesome in in how it refers to payments to a Chapter 7 trustee without regard to the standards for compensation set forth in section 326 of the Bankruptcy Code.

### The Agreement Exposes the Estate to Substantial
### Administrative Expense Obligations

17.      The litigation, pending in the state courts of New York, is based, in substantial part, on the Claridge Parties' breach of an agreement with the Creditors (among others).[2]

---

[2]   The agreement in litigation in New York is highly confidential and the litigation is filed under seal. The Trustee, having been in position for almost one year and negotiating to dispose of rights in that litigation, would be familiar with that agreement.  The Creditors can provide a copy of that agreement to the Court for an in camera review.

Obviously, the Trustee should be familiar with the claims and defenses in the New York action in which the Debtor is a plaintiff and which is identified in the Agreement and Debtor's Schedules.  The Trustee must know that the gravamen of the Complaint in the New York is that certain of the Claridge Parties colluded with Alpha Beta to assert claims against the Creditors, thereby causing Alpha Beta to breach its Confidential Settlement Agreement (**"CSA"**) with the Creditors.  Inexplicably, the Trustee has done the exact same thing – colluding with Alpha Beta and the remaining Claridge Parties in connection with the assertion of claims against the Creditors.

18.     The Trustee, by executing the Agreement with the Claridge Parties, is inducing new breaches of that agreement thereby exposing the Estate to substantial exposure as a result of his tortious interference with the CSA - including inducing them to sign the Agreement.

19.     It is important to note that the Trustee's acts of inducing the entry into the Agreement, signing the Agreement and seeking its approval are each separate and distinct acts of tortious interference with the CSA the damages for which only increase the longer the Agreement is not repudiated by the Trustee.

20.     The Trustee's actions with respect to the Claridge Parties and the New York litigation by definition all occurred post-petition.  As such, the liabilities created from those actions are post-petition liabilities allowable under section 503 of the Bankruptcy Code and will likely render the damages from the tortious interference to be an administrative expense liability rather than providing assets to the Estate.

21.     Additionally, the Claridge Parties are precluded from entering into the Agreement by the CSA.  28 U.S.C. § 959(b) provides, in pertinent part, "a trustee . . . appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his

7

possession as such trustee . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." The provisions of the CSA that preclude the Claridge Parties from executing the Agreement likewise preclude the Trustee from attempting to obtain this Court's approval of the Agreement.

## The Agreement Wrongfully Abdicates Trustee Rights and Powers

22. Paragraphs 2 and 3 of the Agreement would, if approved, purport to enable the Claridge Parties to take action solely for their benefit while using the avoidance powers (referred to as "Debtor Claims" in the Agreement) vested by the Bankruptcy Code solely and exclusively with a bankruptcy trustee.

23. While such a transfer might be contemplated in a Chapter 11 case (see 11 U.S.C. § 1123(a)(5) and (6)), Chapter 7 of the Bankruptcy Code, neither envisions nor contemplates any successor to or assignee of the bankruptcy trustee with respect to any avoidance actions "assigned by" a chapter 7 trustee.

## Reservation of Amendment Rights

24. The proposed Transaction is alleged to allow the Debtor's case to be closed, and the Estate's assets distributed, swiftly. (See Agreement, Paragraph 3; Motion, Paragraphs 17 - 18) However, another provision of the Agreement specifically prohibits the Trustee from even seeking to close the Chapter 7 case for more than one year (on or after April 7, 2016 at the very earliest). This provision, standing by itself, proves that there is no exigency in the approval process for the Motion.

25. As noted above, discovery is necessary to determine the extent to which the Claridge Parties and the Trustee's actions in this case lack good faith. The Creditors have

simultaneously herewith commenced discovery from the Trustee and Claridge Parties. Once that discovery has been completed, this Objection will be amended or supplemented to identify additional bases for the Agreement to be rejected.

26.     It should be noted that the Claridge Parties include law firms as parties that made the offer to the Trustee and signed in their individual capacities rather than as counsel. As such, the law firms (and their attorneys) have entered into a proposed transaction with the Trustee that would subject them to discovery in their individual (rather than any representative) capacities. Accordingly, there is no attorney/client privilege with respect to the negotiation and drafting of the Agreement or their communications among the Claridge Parties. It is foundational that a party is not permitted to use the attorney-client privilege as both a sword and a shield. *In re Lott*, 139 F. App'x 658, 660 (6th Cir. 2005) ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. 'The attorney-client privilege cannot at once be used as a shield and a sword.'") quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Conversely, where a litigant uses the attorney-client privilege to prevent an adversary's inquiry regarding the content of communications with counsel, he is not permitted to use the substance of those communications to support claims at trial. *See In re Residential Capital, LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013) ("[A]fter having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received . . . .").

27.     In *In re Residential Capital*, a debtor sought court approval of a settlement with certain parties under Rule 9019. 491 B.R. 63, 65 (Bankr. S.D.N.Y. 2013). In the discovery phase leading up to the hearing on its 9019 motion, the debtor claimed privilege throughout its document productions and depositions. *Id.* In deposition, the debtor's CEO was instructed by

9

counsel not to reveal the substance of any of the communications forming the basis for the approval of the settlement, including legal defenses, liabilities, operation of the underlying agreements, and other related issues. *Id.* Objectors to the settlement argued that the debtor should be precluded from introducing the substance of the advice of its counsel because the debtor had claimed attorney client privilege over that advice throughout the discovery period. *Id.* The court agreed, and ruled that "A court should exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id.* at 69.

28.    As in *Residential Capital*, here, the Trustee and other signatories should not be permitted to introduce evidence or argument regarding its analysis of the probability of success in the litigation and the complexity, expense, inconvenience and delay attending litigation of those claims purportedly being resolved by the Agreement.

## Authorities in Support of Preliminary Objection

29.    The Trustee is the representative of the estate and owes his fiduciary duties to the creditors as a whole, not to any particular creditor. *See Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) ("[A] trustee has a fiduciary relationship with *all* creditors of the estate.") (emphasis in original); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354-55 (1985) (noting trustee's fiduciary duties run to shareholders as well as to creditors); *Kusch v. Mishkin (in re Adler, Coleman Clearing Corp.)*, 1998 Bankr. LEXIS 1076 (Bankr. S.D.N.Y. Aug. 24, 1998) ("A chapter 7 trustee's primary duty is not to any individual creditor or even any particular class of creditors, but to the estate as a whole."); *Germain v. Connecticut National Bank*, 998 V.2d 1323, 1330 n.7 (2d Cir. 1993) (chapter 7 trustee "is an officer of the court and owes a fiduciary duty both to the debtor and to the creditors as a group"). In preferring

10

the Claridge Parties over the Creditors, the Trustee is violating his fiduciary duty to the Creditors.

30.     The Trustee's actions also violate his duty under Section 704(1) of the Bankruptcy Code to maximize the value of any assets that can be monetized, investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1); *see also* 6-704 Collier on Bankruptcy P 704.02 (16th Ed.) ("In short, it is the trustee's duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors . . . .").

31.     Ostensibly, the Agreement is attempting to preclude consideration of other offers which may be in the best interest of the estate.  Such a limitation in unenforceable.  In *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996), for example, the court held that a chapter 7 trustee was not required to champion a motion to approve a settlement stipulation that was no longer in the best interest of the estate.  In *Martin*, the trustee settled certain pending state court litigation.  After entering into the settlement agreement, the trustee was made aware of changed circumstances in the state court litigation that rendered the proposed settlement no longer in the best interest of the estate.  On the basis of the changed circumstances, the trustee did not argue in favor of the proposed settlement but did not withdraw it.  The bankruptcy court did not approve the proposed settlement based on evidence that the proposed settlement was no longer in the best interest of the estate. The Third Circuit upheld the bankruptcy court's rejection of the proposed stipulation, noting:

> Although a party to the stipulation, the trustee was not bound to vigorously urge the court to accept it in light of changed circumstances that added $150,500 to the corpus of the bankruptcy estate. Indeed, had she done so, a serious question of breach of a fiduciary responsibility to all creditors would have arisen.

11

91 F.3d at 395. Recognizing the trustee's conflict, the Third Circuit noted that Rule 9019 gives the bankruptcy court the responsibility for approving settlements and that "the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Id.* at 393; see also *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (approval of a settlement pursuant to Bankruptcy Rule 9019 is committed to the discretion of the court).

Further, the Trustee has the burden to establish that a proposed settlement under 9019(a) is fair and appropriate. *See, e.g.*, *Key3Media*, 336 B.R. at 94; *In re Zambrano Corp.*, 2014 Bankr. LEXIS 593 (Bankr. W.D. Pa. 2014) (Rule 9019(a) motion denied where chapter 7 trustee did not meet her burden to show proposed settlement was in the best interest of creditors). The evidence submitted in support of a 9019(a) settlement must be detailed and must provide the Court with enough information to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). For example, in *In re Spansion, Inc.*, the court denied a settlement under Rule 9019 where the debtors failed to provide detailed information regarding the likelihood of success on the claims being settled, and the complexity, expense, inconvenience and delay attending litigation of those claims. *In re Spansion, Inc.*, 09-10690 (KJC), 2009 WL 1531788 (Bankr. D. Del. June 2, 2009). In considering these factors, the court noted that "the Debtors have provided little information as to the specifics of the Actions to provide a basis for evaluating the strengths and weaknesses of the litigation. . . . This likewise makes it difficult to conclude that the settlement is preferable to the expense, inconvenience and delay of litigation." *Id.* at *7-*8. In the absence of sufficient evidentiary support, the court declined to approve the settlement. *Id.* at *9. Similarly, here the Agreement cannot be approved

12

because Trustee has not provided any evidence to support approval of the Agreement under Rule 9019(a). Here, the Agreement is not in the best interest of the Estate and as such, the Agreement cannot be approved.

### Conclusion

The Creditors respectfully request that the Court defer consideration of the Motion to allow for discovery regarding the actions by the Trustee and Claridge Parties in this matter to conclude, ultimately deny the Motion and grant the Creditors such other and further relief to which they might be entitled.

Dated: March 12, 2015
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

William E. Chipman, Jr. (No. 3818)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:  (302) 295-0191
Facsimile:  (302) 295-0199
Email:      chipman@chipmanbrown.com

      -and-

John D. Penn
**PERKINS COIE LLP**
500 North Akard Street, Suite 3300
Dallas, Texas 75201
Telephone:  (214) 965-7700
Facsimile:  (214) 965-7784
Email:      jpenn@perkinscoie.com

*Counsel for Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P., Pursuit Capital Management Fund I, L.P.*

13

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
|  | . |
|  | . Case No. 14-10610 (LSS) |
| PURSUIT CAPITAL MANAGEMENT, LLC, | . |
|  | . Courtroom No. 2 |
|  | . 824 Market Street |
| Debtor. | . Wilmington, Delaware 19801 |
|  | . |
| . . . . . . . . . . . . . . . . . | . Thursday, April 2, 2015 |

TRANSCRIPT OF MOTIONS TO QUASH
AND MOTION FOR CONTINUANCE
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Chapter 7
Trustee:                          Mark E. Felger, Esq.
                                  COZEN O'CONNOR
                                  1201 N. Market Street, Suite 1001
                                  Wilmington, Delaware 19801


For Anthony Schepis,
et al:                            William E. Chipman, Esq.
                                  CHIPMAN, BROWN, CICERO
                                   & COLE, LLP
                                  1007 North Orange Street
                                  Suite 1110
                                  Wilmington, Delaware 19801

                                  John D. Penn, Esq.
                                  PERKINS COIE, LLP
                                  500 North Akard Street, Suite 3300
                                  Dallas, Texas 75201
(Appearances Continued)

Audio Operator:                   Electronically Recorded
                                  by Michael Miller, ECRO


Transcription Company:            Reliable
                                  1007 N. Orange Street
                                  Wilmington, Delaware 19801
                                  (302)654-8080
                                  Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    about that right after the subpoenas were served, as to how

2    much time it might take to assemble documents.  We've never had

3    the information.

4         We know it's a few weeks for the trustee to assemble

5    and produce.  And so part of the equation in scheduling would

6    also depend on when those documents would be forthcoming.

7         THE COURT:  Uh-huh.

8         MR. PENN:  Regardless of anything else that happens,

9    we still have that to deal with.

10   *    THE COURT:  Okay.  Well, I am -- except with respect

11   to the documents that Alpha Beta and the Schneider Parties have

12   agreed to provide to the "Schepis Parties," I'll call them, I

13   am going to grant the motion to quash, as to all parties.

14        I do not believe that the information requested in the

15   document requests are relevant to the issues that we're going

16   to hear at the sale hearing, as it relates to the third

17   parties' views of value; the third parties' views of the

18   settlement; the third parties' views of success in litigation,

19   complexity of the litigation, et cetera.

20        And in deciding this, I looked back at decisions of

21   this Court in other instances that I think are somewhat

22   analogous:  Sale hearings; this is a sale-related hearing;

23   restructuring support agreements; other issues -- other types

24   of litigation, where the Court has looked at what's

25   discoverable from the debtor, and what's discoverable from a

1   third party.  And if the third party is not offering evidence

2   on issues of -- germane to the motion, then their view of

3   value, for example, is irrelevant to the Court.

4         And in -- I would refer specifically to Judge

5   Sontchi's discovery decision in <u>Energy Futures</u>, dealing with

6   third-party discovery versus debtor discovery; and also, Judge

7   Shannon's decision in <u>Dolan Company</u>, which is a transcript that

8   Judge Sontchi relies on.  And I think we're in that same

9   situation here.

10        I do find that discovery of the trustee in this

11  instance is appropriate, and he has provided documents.  And if

12  there's going to be a deposition, that's, I think, appropriate,

13  as well.

14        I'll also say that this is not a fishing expedition.

15  And it strikes me that allegations of collusion between the

16  trustee and the Alpha Beta Parties or the Schneider Parties are

17  simply that; they are just, at this point -- at this point,

18  they are really just more than speculative.  And unless

19  something comes up in discovery of the trustee, I'm not going

20  to have a fishing expedition on that issue.

21        If something comes up in the documents or the

22  depositions of the trustee that suggests some kind of collusion

23  that is legally significant, because usually collusion is among

24  buyers, then we can take another look at this.  But at this

25  point, I'm not going to permit discovery of third parties with

1  respect, certainly, to that issue.

2      I am also going to say that I read the motion to give

3  the Schepis Parties an opportunity to make a higher and better

4  offer.  I read the Schepis Parties' response that you think the

5  agreement precludes that.  I do not read the agreement that

6  way.  I don't think it precludes a higher or better offer,

7  whatever that might mean in the context of this case.

8      And during this extended period -- and we're going to

9  have one, so that discovery that is permitted can go forward --

10  I will say to the trustee that he is to -- he is to entertain

11  any offer that the Schepis Parties might put forward for -- in

12  whatever form, for whatever assets the Schepis Party feels that

13  the debtor has and can sell, transfer, assign, settle,

14  whatever.  And if the Schepis Parties put forth such an offer,

15  the trustee will entertain it, and we'll see where we go from

16  there.  But I want to give the Schepis Parties the opportunity

17  they may have felt they did not have to put forth an offer to

18  do it.

19      I think that disposes of everything except the time.

20  But we have a question -- questions, anybody?

21      MR. HARRIS:  Your Honor, I suggest (indiscernible -

22  away from microphone) myself (indiscernible) my firm.  But for

23  Ms. Schneider, who is 86 years old --

24      THE COURT:  Yes, this includes Ms. Schneider, no

25  discovery of Ms. Schneider.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) )  Chapter 7 |
| PURSUIT CAPITAL MANAGEMENT, LLC<br>Debtors. | ) )  Case No. 14-10610 (LSS) )<br>) **Re: Docket No. 66** ) |

## ORDER WITH RESPECT TO MOTION FOR AN ORDER
## APPROVING AGREEMENT TO SETTLE, TRANSFER AND ASSIGN
## <u>CERTAIN CLAIMS, RIGHTS AND INTERESTS [D.I. 66]</u>

WHEREAS, on March 2, 2015, the chapter 7 Trustee filed his Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests ("Motion to Settle") [D.I. 66]; and

WHEREAS, on March 12, 2015, Pursuit Capital Management Fund I, L.P., Pursuit Opportunity Fund I, L.P., Pursuit Investment Management, LLC, Francis Canelas Jr., and Anthony Schepis (the "Pursuit Parties") filed their Preliminary Objection to the Motion to Settle [D.I. 67] together with their Motion for Continuance of Hearing ("Objection") [D.I. 84] ; and

WHEREAS, on March 23, 2015, Claridge Associates, LLC, Estate of Leonard Schneider, Jamiscott, LLC, Leslie Schneider, Lillian Schneider (the "Claridge Parties") filed their Motion to Quash a Subpoena Served on Jonathan Harris, Esq. and Purportedly Served on Lillian Schneider, and for a Protective Order Preventing Further Service Absent Court Approval [D.I. 79]; and

WHEREAS, on March 26, 2015, Alpha Beta Capital Partners, L.P. ("Alpha Beta") filed its Motion to Quash Subpoena [D.I. 89]; and

WHEREAS, thereafter the court received a series of letters regarding a discovery dispute among the parties [D.I. 104, 106, 107, 108] and

WHEREAS, the court conducted a hearing with respect to the motions on April 2, 2015 (the "April 2 Hearing") and a telephonic hearing with respect to the letters on April 17, 2015 (the "April 17 Teleconference");

NOW THEREFORE, IT IS HEREBY ORDERED for the reasons set forth on the record:

1. Documents to be produced by Alpha Beta Parties and the Claridge Parties as set forth on the record at the April 2 Hearing shall be served no later than April 10, 2015.

2. Depositions as permitted by the Court at the April 2 Hearing and the April 17 Teleconference shall be taken the week of April 27, 2015. Attendance at the depositions shall be governed by Del. Bankr. L.R. 7030-1.

3. The Pursuit Parties shall file their final objection to the Motion to Settle on or before May 13, 2015.

4. Any reply to the final objection shall be filed on or before May 20, 2015.

5. The hearing on the Motion to Settle is continued to June 3, 2015 at 10:00 a.m.

6. The Motion to Settle is subject to higher and better bids/offers. The Pursuit Parties (or any subset thereof) may make any such bid/offer on or before May 13, 2015. Such bid/offer may be for whatever assets the estate may have and may take whatever form the offering party may choose. The chapter 7 Trustee shall entertain any and all such offers and take actions with respect thereto consistent with his duties under the United States Bankruptcy Code.

7. To the extent the Pursuit Parties want any further discovery with respect to the Trustee's negotiation of the agreement that is the subject of the Motion to Settle, the Pursuit Parties must file a memorandum of law with support for the position,

set forth in the Objection, that a Trustee is required to "treat similarly situated

parties similarly" in connection with his negotiation of the Motion to Settle,

which is subject to higher and better offers. Any such memorandum shall be filed

by May 1, 2015.

**BY THE COURT:**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

Dated: April 21, 2015
Wilmington, Delaware

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 14-10610 (LSS) |
| PURSUIT CAPITAL MANAGEMENT, LLC, | Chapter 7 |
| Debtor. | **Ref. Nos. 67, 84 and 111** |

## MEMORANDUM OF LAW IN SUPPORT OF FURTHER DISCOVERY
## NEEDED IN CONNECTION WITH OBJECTION TO MOTION TO SETTLE

Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (collectively, the "**Pursuit Parties**") respectfully submit this memorandum (the "**Memorandum**") in accordance with the Court's Order, dated April 21, 2015 (the "**Order**"), and in support of their request for further discovery with respect to the Trustee's negotiation of the agreement with the defendants in *Pursuit v. Alpha Beta, et al.*, Index No. 652457/2013 (Sup. Ct. N.Y. Co.) (the "**New York Defendants**") that is the subject of the Motion to Settle (the "**Proposed Agreement**") [D.I. 66]. In support of this Memorandum, the Pursuit Parties respectfully represent as follows:

Although the Order states that the New York Defendants' offer is subject to higher and better offers, the Motion to Settle limited such competing offers to those made "on similar terms" to the New York Defendants' offer. And therein lies the rub.

The terms of the Proposed Offer are not only absolutely contrary to both the letter and the spirit of the relevant provisions of the Bankruptcy Code, as discussed below, but they would permit the New York Defendants to effectively perpetrate a fraud on both the Trustee and this Court.

Without further discovery, the Pursuit Parties cannot effectively object to the Proposed Agreement because they will never know whether the Trustee had knowledge of the illicit intentions underlying the New York Defendants' offer.

For example, the Proposed Agreement requires these proceedings to continue for another year at the very least[1] to permit the New York Defendants to pursue the purchased claims in this Court, thereby undermining the core principle of the Bankruptcy Code, as recited by the Trustee in the Motion to Settle, that it is the Trustee's "first express duty" to "close [the] estate as expeditiously as possible."  *See* Motion to Settle ¶ 23.

The extremely limited discovery produced to date indicates that the Trustee was deeply troubled by this term – the Trustee advised the New York Defendants on February 3, 2015 that their request to pursue the purchased claims in this Court was "not acceptable as previously discussed."  *See* RS 0000161, a copy of which is attached hereto as <u>Exhibit A</u>.  There is, surprisingly, absolutely nothing in the discovery produced to date that provides a hint as to why the Trustee reversed his position and agreed to a term that was "not acceptable" to him just weeks earlier.  The Pursuit Parties, and this Court, have a right to know what changed.

Even worse, the Proposed Agreement could not possible satisfy section 363(b)(1) of the Bankruptcy Code, which requires, *inter alia*, that the purchaser act in good faith in purchasing the Debtor's claims.  *See* Motion to Settle ¶ 20 (*citing In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991)).

The New York Defendants' abject bad faith is self-evident.  *Every one* of the claims they seek to acquire in the Proposed Agreement: (i) has been previously adjudicated and is now subject to *res judicata*; (ii) was settled four years ago for valuable consideration in a written

---

[1]  The Proposed Agreement provides that "the Trustee shall not move to close the chapter 7 case prior to April 7, 2016," meaning that the *earliest* the Trustee could begin the months-long process of closing this case is more than eleven months away.

agreement; and/or (iii) is subject to an arbitration provision that precludes the would-be purchaser from litigating the claims in this or any other court.

The Proposed Agreement would, if approved by this Court, sell the following four claims to the New York Defendants (capitalized terms are defined as in the Proposed Agreement):  (i) the New York Action; (ii) the Indemnification Claim; (iii) the Potential Avoidance Claim; and (iv) the UBS Claim.

### The New York Claim

Starting with a point on which all the parties agree, there is no basis for the Debtor to continue as a plaintiff in the New York action.  When certain of the New York Defendants filed an emergency motion in this Court for a declaratory judgment that the Debtor remained as the general partner of the subject Fund, the Trustee made findings that, among other things, (a) the Debtor had been replaced as the general partner prior to the filing of the chapter 7 petition and (b) even if it had not, the Trustee rejected the Fund's limited partnership agreement as an executory contract.  *See* Trustee's Response dated September 25, 2014, a copy of which is attached hereto as Exhibit B.  The Trustee, moreover, has intentionally failed to appear in the New York action for more than a year and has defaulted on any claim it may have had.

The New York Defendants have gone so far as to oppose the New York Plaintiffs' motion to dismiss the Debtor from the New York case.  Why would a defendant object to the dismissal of a plaintiff, particularly while it is prepared to pay a substantial price to achieve the exact same result in this Court?  The Pursuit Parties are plainly entitled to discovery on this question.

## The Indemnification Claim

The indemnification claims that the New York Defendants seek to purchase are contained in the Fund's limited partnership agreement (the "**LPA**"), which also contains an arbitration clause.  The New York Defendants clearly know that they cannot litigate the Indemnification Claim in this or any other Court – several of them even moved to compel arbitration of the New York Action, arguing that even though the New York Action was based solely on a separate settlement agreement, the arbitration clause in the LPA was so broad that it should govern.  (The Appellate Division of the New York State Supreme Court earlier this week affirmed the denial of that motion).

Was the Trustee aware at the time that he agreed to sell the Indemnification Claim to be pursued in this Court that he was aiding a transparently unlawful end-run around the LPA's arbitration clause?  Did the New York Defendants disclose these facts to the Trustee?  Discovery to date has failed to address or answer these questions, and the Pursuit Parties plainly need further discovery on this point.

## The Potential Avoidance Claim

The arbitrator could not have been clearer: "Respondent is entitled under the [Limited Partnership] Agreement to an incentive fee of 20% of the profits in the Pursuit Fund… [and] Claimants have established no basis for depriving Respondent of the incentive fee[.]"  Phase I Award at 30, 31.[2]

So not only are the New York Defendants bound to arbitrate this claim, but they already have.  And they lost.  It is inconceivable that the Trustee would knowingly sell the New York Defendants the right to bring previously adjudicated arbitration-only claims in this Court.  The

---

[2]  To the extent a dispute remains over the calculation of this fee (*see id.*), the resolution thereof is obviously subject exclusively to arbitration.

Pursuit Parties are entitled to know why and how this happened, and this information has not been forthcoming voluntarily.  Discovery on this point is therefore appropriate.

### The UBS Claim

The Proposed Agreement is the *eighth attempt* by the New York Defendants to insinuate themselves into the UBS case.  The same position they seek to assert in the Proposed Agreement has previously been rejected by this Court, the arbitrator and the New York Supreme Court.  There is reason to believe – based on conversations between counsel for the Pursuit Parties and the Trustee – that the New York Defendants intentionally concealed these facts from the Trustee during the negotiations that led to the Proposed Agreement.

First, the New York Defendants filed a motion in arbitration, claiming that they needed to confer with PIM's counsel in the UBS Litigation and asking for the arbitrator to issue an order declaring that they had the right to do so.  The arbitrator denied their request summarily, correctly holding that the Schneiders were so far removed from the UBS Litigation that the attorney-client privilege barred their communicating with PIM's counsel.  *See* Ex. C.

Second, after the UBS complaint was dismissed on a pleading technicality, they filed a second motion in arbitration, this time asking the arbitrator to appoint a receiver to oversee the UBS Litigation.  New York State Supreme Court Justice Kenney vacated the arbitrator's order granting this request almost immediately in an Order dated March 21, 2013, a copy of which is attached hereto as Exhibit D.

Third, they filed a motion before Justice Kenney of the New York Supreme Court directly, seeking to rewrite the arbitration award to reinstate them as limited partners.  Justice Kenney denied their motion by Order dated June 25, 2014, a copy of which is attached hereto as Exhibit E.

Fourth, they asked Justice Kenney to reargue her June 25, 2014 Order.  A copy of Justice Kenney's July 31, 2014 Order denying their motion, a copy of which is attached hereto as Exhibit F.

Fifth, they filed an emergency motion in this Court asking the Trustee to grant them the same relief that the arbitrator and Justice Kenney had previously denied – setting aside the Debtor's withdrawal as the general partner of the PCM Fund and reinstating the Schneiders as limited partners of the PCM Fund.

The Trustee not only opposed the Schneiders' emergency motion, he also made findings of record that: (i) the Debtor had withdrawn as General Partner prior to the Chapter 7 filing; (ii) even if it had not, the Trustee rejected the PCM Fund's limited partnership agreement as a matter of law, thereby removing the Debtor as general partner in any event; and (iii) it was not in the Debtor's interest to continue to appear in the Related Case.  *See* Ex. B ¶¶ 8-11.

Sixth, they submitted a reckless and intentionally misleading *ex parte* application to Justice Kenney, who in reliance thereon issued a temporary restraining order that created an imminent threat to PIM's ability to prosecute the UBS Litigation.

Justice Kenney vacated the temporary restraining order as soon as the undersigned counsel was able to correct the record.  *See* Order dated November 19, 2014, a copy of which is attached hereto as Exhibit G.

It was not an isolated incident when the Harris Firm created a false record and obtained the illicit TRO.  Far from it, it was part of the continuing scheme by the Harris Firm and their clients to use any means possible – lawful and otherwise – to insert themselves into the UBS Litigation.

The Harris Firm and the Schneiders have gone so far as to collaborate with counsel *for the defendants* in the UBS Litigation with the intention of impeding PIM's successful prosecution of the UBS Litigation.

The icing on the cake is the Schneiders' *seventh* attempt to barge into the UBS case – a baseless motion to intervene, a copy of which is attached hereto as <u>Exhibit H</u>.

If, as it currently seems, the New York Defendants intentionally failed to disclose this long and tortured history from the Trustee, the Pursuit Parties need discovery in order to properly object to the Proposed Agreement.

### <u>Alpha Beta and Reed Smith Settled All Claims in April 2011</u>

The New York Action is for breach of a confidential settlement agreement that Alpha Beta and its counsel Reed Smith entered into on April 11, 2011, more than four years ago. The Trustee was on actual notice of the settlement agreement since days after the chapter 7 filing in March 2014. The Trustee knew or should have known that Alpha Beta and Reed Smith were barred from asserting settled claims. Accordingly, the Pursuit Parties are entitled to investigate the sale of these claims in connection with the Proposed Agreement.

7

## <u>CONCLUSION</u>

For any or all of the foregoing reasons, the Pursuit Parties respectfully request that the Court order further discovery so that they can gather information necessary and critical to their forthcoming objection to the Proposed Agreement.

Dated:  May 1, 2015          **CHIPMAN BROWN CICERO & COLE, LLP**
       Wilmington, Delaware

                              */s/ William E. Chipman, Jr.*
                 William E. Chipman, Jr. (No. 3818)
                 Mark D. Olivere (No. 4291)
                 1007 North Orange Street, Suite 1110
                 Wilmington, Delaware 19801
                 Telephone:    (302) 295-0191
                 Facsimile:    (302) 295-0199
                 Email:        chipman@chipmanbrown.com
                                      olivere@chipmanbrown.com

                    -and-

                 John D. Penn
                 **PERKINS COIE LLP**
                 500 North Akard Street, Suite 3300
                 Dallas, Texas 75201
                 Telephone:    (214) 965-7700
                 Facsimile:    (214) 965-7784
                 Email:        jpenn@perkinscoie.com

                    -and-

                 Peter S. Cane
                 **CANE & ASSOCIATES LLP**
                 200 Park Avenue, 17th Floor
                 New York, New York 10166
                 Telephone:    (212) 627-7000
                 Facsimile:    (646) 349-2312
                 Email:        peter@canelaw.com

                 *Counsel for Anthony Schepis, Frank Canelas,*
                 *Pursuit Investment Management, LLC, Pursuit*
                 *Opportunity Fund I, L.P. and Pursuit Capital*
                 *Management Fund I, L.P.*

8

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 14-10610 (LSS) |
| PURSUIT CAPITAL MANAGEMENT, LLC | Chapter 7 |
| Debtors. | **Re: Docket No. 111 & 119** |

### ORDER DENYING REQUEST FOR FURTHER DISCOVERY

UPON CONSIDERATION OF the Memorandum of Law in Support of Further Discovery Needed in Connection With Objection to Motion to Settle ("Request for Further Discovery") filed by counsel for Anthony Schepis, Frank Canelas, and Pursuit Investment Management Fund I, L.P. (collectively, the "Pursuit Parties") [D.I. 119];

IT IS HEREBY ORDERED as follows:

1.    The Court's previous order regarding this matter was not a broad invitation to re-argue discovery sought and denied. Rather, the Order With Respect to Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests ("April 24 Order") [D.I. 111] provided the Pursuit Parties with an opportunity to brief one additional issue with regard to discovery. The April 24 Order provided:

> "To the extent the Pursuit Parties want any further discovery with respect to the Trustee's negotiation of the agreement that is the subject of the Motion to Settle, the Pursuit Parties **must file a memorandum of law with support for the position, set forth in the Objection, that a Trustee is required to "treat similarly situated parties similarly" in connection**

with his negotiation of the Motion to Settle, **which is subject to higher and better offers**" (emphasis added).

2.        The Request for Further Discovery did not provide authority for the proposition. Instead, the Request for Further Discovery sought to rehash arguments that were already made and decided.

3.        Moreover, as set forth in the Request for Further Discovery, the information that the Pursuit Parties seek is either within the Trustee's knowledge,[1] or is "self-evident."[2] Accordingly, as the Pursuit Parties have an opportunity to depose the Trustee, no further discovery is necessary.

4.        For the foregoing reasons, the Pursuit Parties' Request for Further Discovery is **DENIED**.

Dated: May 5, 2015

HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[1] E.g. "Without further discovery, the Pursuit Parties cannot effectively object to the Proposed Agreement because they will never know **whether the Trustee had knowledge** of the illicit intentions underlying the New York Defendants' offer" Pursuit Memo at p. 2; "There is, surprisingly, absolutely nothing in the discovery produced to date **that provides a hint as to why the Trustee reversed his position** and agreed to a term that was "not acceptable" to him just weeks earlier. The Pursuit Parties, and this Court, have a right to know what changed" Pursuit Memo at p. 2; "**Was the Trustee aware at the time that he agreed to sell the Indemnification Claim** to be pursued in this Court that he was aiding a transparently unlawful end-run around the LPA's arbitration clause? Did the New York Defendants **disclose these facts to the Trustee**?" Pursuit Memo at p. 4; "It is inconceivable **that the Trustee would knowingly sell** the New York Defendants the right to bring previously adjudicated arbitration-only claims in this Court. The Pursuit Parties are entitled to know why and how this happened, and this information has not been forthcoming voluntarily" Pursuit Memo at pp. 4-5; "If, as it currently seems, **the New York Defendants intentionally failed to disclose this long and tortured history from [sic] the Trustee**, the Pursuit Parties need discovery in order to properly object to the Proposed Agreement" Pursuit Memo at p. 7; "**The Trustee knew or should have known** that Alpha Beta and Reed Smith were barred from asserting settled claims" Pursuit Memo at p. 7 (emphasis added).

[2] Pursuit Memo at p. 2.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 7 |
|  | . |  |
|  | . | Case No. 14-10610 (LSS) |
| PURSUIT CAPITAL MANAGEMENT, LLC, | . |  |
|  | . | Courtroom No. 2 |
|  | . | 824 Market Street |
| Debtor. | . | Wilmington, Delaware 19801 |
|  | . |  |
| . . . . . . . . . . . . . . . . . | . | Monday, June 15, 2015 |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Chapter 7
Trustee:                         Mark E. Felger, Esq.
                                 COZEN O'CONNOR
                                 1201 N. Market Street, Suite 1001
                                 Wilmington, Delaware 19801

For the Pursuit Parties:         William E. Chipman, Esq.
                                 CHIPMAN, BROWN, CICERO & COLE, LLP
                                 1007 North Orange Street, Suite 110
                                 Wilmington, Delaware 19801

(Appearances Continued)

Audio Operator:                  Electronically Recorded
                                 by Michael Miller, ECRO

Transcription Company:           Reliable
                                 1007 N. Orange Street
                                 Wilmington, Delaware 19801
                                 (302)654-8080
                                 Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    a fair price.  Okay?

2        Here, we have two parties.  Two parties.  No other

3    party would have an interest in these assets.  Two groups.

4    They were on notice, they've been on notice for a year.  And

5    there's no bidder protections, so there was no reason,

6    seemingly no reason, to have a two-step process.  Well, okay.

7    If I had to do it all over again, I probably would have filed

8    that motion.  But that's why we did it, and I think the local

9    rules allow for oral motions.

10        And I guess I'll let the other parties be heard,

11   unless Your Honor has questions for me.

12        THE COURT:  I have no questions.

13        MR. CANE:  (Via Telephone) Your Honor, this is Peter

14   Cane.  May I respond?

15        THE COURT:  You may.

16        MR. CANE:  Thank you.

17        Mr. Felger left out of his rather detailed recitation

18   of the history of this case Your Honor's May 5th, 2015 order,

19   which specifically said that, to the extent that my clients had

20   questions about the process, we could take the trustee's

21   deposition; we have that right, and we could exercise it.

22        As I told Mr. Felger several times before the

23   conference, I didn't think this conference was necessary.  My

24   clients have what I believe to be very legitimate questions as

25   to what happened here.  And if Mr. Felger would produce the

1   trustee for a deposition, we can take the deposition and

2   proceed with the auction thereafter.  We could have

3   accomplished that last week.  Mr. Felger declined to produce

4   the trustee for a deposition, even after I furnished him with a

5   copy of the order, which says that he was supposed to.

6        I'd also note Mr. Felger makes the point that this is

7   the way we always do it, and the point is to provide notice.

8   Well, if it's the way we always do it, why did Mr. Felger wait

9   until the Thursday evening before the Monday morning auction,

10  when he knew that I was out of town on a family emergency, and

11  would not be back in New York, in my office, until Monday

12  morning -- and I was coming back for the auction -- to

13  promulgate this new procedure that neither side asked for,

14  according to Mr. Felger?  It certainly didn't provide

15  appropriate notice.  And why is it coming up for the first time

16  more than a year into the process, if it's what we always do?

17       I'd also note Mr. Felger said several times that my

18  client hasn't signed the bid or given evidence that it was

19  prepared to proceed with the funded bid.  I informed Mr. Felger

20  in writing at least twice that the funds were in my trust

21  account, that we would -- we were prepared to proceed; ready,

22  willing, and able to proceed with the auction.  And then we

23  received the change of rules.

24       I'm trying to figure out why Mr. Felger insists on

25  signing a bid that is no longer particularly relevant.  Your

1    Honor will recall, as I said in my letter, we spent months

2    trying to deviate from the terms that Mr. Felger insisted on.

3    And ultimately, in good faith and in an effort to proceed, we

4    marked up the bid that he had received and agreed to the terms

5    that the so-called "creditors" proposed, which Mr. Felger had a

6    lot of problems with, as discovery to date has revealed.

7            He felt it was inappropriate to prolong the bankruptcy

8    case for more than a year.  He felt it was inappropriate for

9    the creditors to be able to pursue the claims in Bankruptcy

10   Court, et cetera.  Yet, he agreed to all of those terms; so did

11   we, just to get this done.  And then, at the eleventh hour,

12   after we agreed and submitted yet another bid, the rules

13   changed.  I think my clients have at least the right to know

14   why the rules changed.

15           So it seems, I think, pretty straightforward.  The

16   Court has already said we're entitled to mister -- pardon me,

17   I'm sorry -- the trustee's deposition.  So we would

18   respectfully request that the Court direct Mr. Felger to

19   produce the trustee for a deposition forthwith, after which we

20   can schedule the auction.

21           And finally, as I said in my letter, there is a motion

22   that was filed by the same so-called "creditor parties" in the

23   Connecticut Superior Court, where the UBS case is underway, and

24   has been underway for sometime, and is scheduled to come to a

25   trial in about seven weeks.  That's really what all of this

1    frenetic activity is about.

2         It's a very valuable case.  The so-called "creditors"

3    say that they have claims in that case.  It's been rejected

4    seven times by various courts, including the arbitrator, who

5    has exclusive jurisdiction over this dispute.  We think that

6    what the so-called "creditors" are trying to do is place this

7    Court squarely in conflict with the Connecticut Court because

8    we expect the Connecticut Court to rule that these so-called

9    "creditors" don't have the right to intervene.

10         As a matter of fact, for the first time in my

11   experience -- I've only been doing this for twenty-something

12   years, but I haven't seen this before -- both the plaintiffs

13   and all of the defendants oppose these parties' motion to

14   intervene.  Both sides say that they have no right to do it.

15   Two Judges of the New York State Supreme Court have said so,

16   the arbitrator has said so.  But they are seeking direct

17   intervention.

18         And we think it would be appropriate to delay the

19   bidding on some claims until the value of those claims, to some

20   degree, has been determined by the Court who knows best --

21         THE COURT:  But why --

22         MR. CANE:  -- which this would be --

23         THE COURT:  But why -- I don't see myself as being in

24   conflict with what's happening in the court in New York.  If

25   the creditors, the so-called "creditor group" is buying

1    something, is willing to pay for something that has no value,

2    then they are.

3            And why -- and maybe it's a better time to do it ahead

4    of time.  I don't know, and I'm not trying to get into the

5    timing of the trustee's determination of when to sell.  But

6    explain to me why I am doing anything that would conflict with

7    what the New York Court is doing.  Because I certainly don't

8    want to, and I'm not purporting to take jurisdiction over that

9    case or do anything with respect to that case.  That Judge will

10   make whatever decision that Judge makes, which then, of course,

11   may be appealed, or who knows what's going to happen.  So how

12   is it that I'm doing anything that impacts that case?

13           MR. CANE:  Well, there are two, I think, impacts that

14   that would have:

15           First, it gives the so-called "creditors" another

16   excuse to go into Judge Dooley's courtroom -- it's actually the

17   Connecticut case; that's where the UBS case is specifically

18   being litigated.

19           THE COURT:  Okay.

20           MR. CANE:  And it would give the so-called "creditors"

21   another ticket into that courtroom, which, you know, it's plain

22   from the terms of the submitted bid that's exactly what they

23   intend to do.  They can't do it as investors, they can't do it

24   as anything else.  Now they're going to try to do it as a

25   former general partner of one of the funds that didn't even

1  purchase the securities.  It's a -- I understand that -- the

2  fact that it's a -- I hate to use the word, but it's a

3  ridiculous claim, in fact.  Yeah, we'll be able to defeat it, I

4  think, pretty easily.

5       But the problem here is that, yeah, they can buy air,

6  as Your Honor has said, and as the -- I understand a sacred

7  tenant of bankruptcy law is that a trustee can sell air, if the

8  price is right.

9       The problem is that there's a negative value to this.

10  My clients have spent hundreds of thousands of dollars in legal

11  fees defeating these claims over and over and over again.  It

12  seems to me the exact opposite of the policies of the

13  Bankruptcy Code to revive dead claims under the guise of

14  solving a bankruptcy issue.

15       Now the trustee's deposition may clear a lot of this

16  up, and I hope it will, and I hope we can proceed thereafter.

17  But the -- you know, I hope that addresses the Court's question

18  as to why it would, I don't think conflict as a legal matter,

19  but certainly impede and distract, not only the Court, but the

20  parties in the UBS case, which is worth about $100 million,

21  according to the claim and the complaint that's been sustained.

22  And there's also been a substantial -- I think a thirty-five-

23  million-dollar prejudgment remedy awarded my clients to date.

24  It's a real case.

25       And the so-called "creditors" have adopted a strategy

1    of interfering and harassing with my clients' prosecution of
2    the case, in order to make them go away.  They want my clients
3    to write them a big check, give them a piece of the case, so
4    they'll stop.  This would aiding and abetting that wrongful
5    strategy.
6            Also, finally, I'd add the very simply question is:
7    What's the rush?  Mr. Felger was dumping these emails on me
8    about the process and my clients' entity and all this other
9    stuff, after he was told twice by emails, Peter can't respond,
10   he's got an emergency, he's at his kid's school that's out of
11   state, he's dealing with something, can you just relax.  But
12   instead, I'm inundated on Thursday and Friday, when he knows
13   that I can't respond to all these emails.
14           And this case has been pending for more than a year.
15   There was absolutely no action on this case for 10 and a half
16   months.  And now, all of a sudden, it's a massive fire drill.
17   I just have to say that I don't understand what the hurry is,
18   right now, unless the so-called "creditors" are panicking
19   because the trial date is coming up in UBS, and they're seeing
20   this fantasy they have of a multi-million-dollar recovery going
21   away.
22           Well, the fact is it is just a fantasy.  And my
23   clients shouldn't be prejudiced by their rush to try to
24   interfere with their case, and the trustee shouldn't be aiding
25   and abetting them, either, in this rush.  We waited a year; we

1    can wait a few more weeks.

2              THE COURT:  Well, we -- this motion was filed on March

3    2nd, so we're now three months into this motion, which I will

4    say, for a sale motion, is a very long time.  But we had some

5    issues that we had to work through, and so we are where we are,

6    but --

7              MR. CANE:  Respectfully, is there any reason that we

8    shouldn't be allowed to take the trustee's deposition right

9    away --

10             THE COURT:  Well --

11             MR. CANE:  -- as the Court has ordered twice already?

12             THE COURT:  Let me hear from --

13             MR. CANE:  The Court first ordered --

14             MR. FELGER:  Well --

15             THE COURT:  Let me hear from Mr. Felger on that.  Why

16   shouldn't they be able to take the deposition?  Recognizing, of

17   course, they only get his deposition once.

18             MR. FELGER:  Right, once.

19             THE COURT:  Once, that's it.

20             MR. FELGER:  Once.  That's -- and we've -- and we

21   assumed that would be after the auction.  We assumed that, once

22   we had an auction, and one party was determined to be the

23   winning bidder, the other side would want to take the trustee's

24   deposition.  That's what --

25             MR. CANE:  With respect --

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                        |   |                                         |
|----------------------------------------|---|-----------------------------------------|
| In re:                                 | : |                                         |
|                                        | : | Chapter 7                               |
| Pursuit Capital Management, LLC,       | : |                                         |
|                                        | : | Case No. 14-10610 (LSS)                 |
| Debtor.                                | : |                                         |
|                                        | : | **Hearing Date:  June 30, 2015 at 2:30 p.m.** |
|                                        | : | **Objection Deadline:  June 25, 2015**  |
| _____ | : |                                         |

**TRUSTEE'S MOTION FOR APPROVAL OF AUCTION**
**PROCEDURES IN CONNECTION WITH TRUSTEE'S MOTION**
**FOR AN ORDER APPROVING AGREEMENT TO SETTLE,**
**TRANSFER AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS**

Jeoffrey L. Burtch, the Chapter 7 trustee ("Trustee") for the estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby files his motion for approval of auction procedures in connection with the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interest ("Auction Motion"), and avers in support thereof as follows:

1.        On March 2, 2015, the Trustee filed the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Trustee's Motion") [D.I. 66].

2.        The Trustee's Motion seeks approval of an agreement with creditors of the Estate (the "Creditor Group") to settle, transfer and assign certain claims, rights and interests in exchange for a payment by the Creditor Group in the amount of $125,000.  The Trustee's Motion provides that any party wishing to submit a competing offer was to do so by submitting such bid by the deadline for filing objections to the Trustee's Motion (March 19, 2015).  The Trustee's Motion went on to provide that if a higher bid was received by the objection deadline, then the

1

Trustee would request final sealed bids from each bidder and proceed to seek approval of the highest and otherwise best bid at the hearing that was originally scheduled for March 26, 2015.

3.        On or about March 12, 2015, certain parties related to the Debtor (the "Insider Group") filed a preliminary objection (the "Preliminary Objection") [D.I. 67] to the Trustee's Motion raising a host of issues.

4.        After the filing of the Preliminary Objection, a number of discovery motions, a motion for a continuance, and letters to the Court were filed by the parties, all of which are part of the record of these proceedings and are incorporated herein by reference (the "Related Filings").[1]

5.        After conducting a hearing on April 2, 2015 and a telephonic hearing on April 17, 2015 with respect to the Related Filings, the Court entered an Order on April 21, 2015 [D.I. 111] providing in important part that the Insider Group would have until May 13, 2015 to (i) file a final objection to the Trustee's Motion, and (ii) submit a bid to the Trustee for whatever assets the Estate may have and in whatever form the offering party may choose.  The Trustee was provided until May 20, 2015 to file a reply to any final objection filed by the Insider Group.

6.        On May 13, 2015, the Insider Group (i) submitted a bid on substantially similar terms[2] to the bid by the Creditor Group increasing the bid to $147,500, and (ii) filed a final objection to the Trustee's Motion [D.I. 122].

7.        On May 20, 2015, the Trustee filed his reply to the final objection filed by the Insider Group [D.I. 125].

---

[1] The Trustee will avoid a detailed recitation of the Related Filings as they are not necessarily relevant to approval of the Auction Procedures.

[2] The bid was initially submitted as an e-mail and then as a term sheet, which included indemnification and release provisions.  The Trustee requested that the Insider Group re-submit the bid without these provisions and suggested that the Insider Group use the Creditor Group's form and simply mark it up.  The bid ultimately submitted by the Insider Group was in the same form as the Creditor Group's agreement, but it was not signed, and was submitted on behalf of an entity that had not yet been formed.

2

8.      On May 21, 2015, the Court held a hearing at which time the Court directed that an auction take place on June 8, 2015 at 11:00 a.m. and that the hearing to consider approval of the highest and otherwise best bid take place on June 26, 2015.

9.      On June 4, 2015, the undersigned counsel for the Trustee sent a memorandum to the Creditor Group and the Insider Group confirming the time and location of the auction; requesting the names of the bidders' representatives attending the auction; reminding the Insider Group that the Trustee still needed to receive a signed agreement and evidence that the buyer entity was formed and has been funded; and informing the bidders how the bidding would proceed at the auction, i.e. in individual lots followed by aggregate bids.  (A true and correct copy of the memorandum is annexed hereto as Exhibit "A" and incorporated herein by reference).

10.     On June 5, 2015, the Insider Group's counsel replied to the memorandum objecting to the bid procedures and requesting a conference with the Court before the auction went forward.  (A true and correct copy of the reply e-mail (and a subsequent e-mail exchange) is annexed hereto as Exhibit "B" and incorporated herein by reference).

11.     In light of the Insider Group's objection and a request for a Chambers conference, the Trustee decided to postpone the auction and request a status conference with the Court to address auction procedures.

12.     On June 15, 2015, the first available date for the Court and all parties, the Court held a conference.  At the conclusion of the conference, the Court directed the following: (i) the Trustee file a motion requesting approval of auction procedures by June 18, 2015; (ii) the Insider Group and Creditor Group file any objection or response to the procedures motion by June 25, 2015; and (iii) a hearing to consider the auction procedures take place on June 30, 2015 at 2:30

3

p.m. The Court also directed the parties to caucus and schedule the date for the auction and

hearing to consider the Trustee's Motion and advise Chambers of these dates.[3]

### **Proposed Auction Procedures**

13.     The Trustee proposes that the auction of the Estate's assets be governed by the

following procedures ("Proposed Procedures"), subject to modification by the Trustee as he

deems appropriate to comply with his fiduciary obligation:

> (i)    An auction shall take place at the undersigned counsel's offices on July 2, 2015 at 10:00 a.m.;
>
> (ii)   Each bidder shall attend the auction in person through a representative or representatives with full authority to bind the bidder(s). Lead counsel shall attend the auction. Delaware counsel may attend at the bidder's option;
>
> (iii)  The Trustee shall provide for a court reporter to attend the auction and prepare a transcript of the auction;
>
> (iv)   Each bidder shall be required to confirm that it has not engaged in any collusion with respect to bidding on the assets;
>
> (v)    Each bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the assets, and the proposed sale prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and the assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever by the Trustee, whether express, implied, by operation of law, or otherwise regarding the assets, or the completeness of any information provided in connection with the assets, and the proposed sale; and
>
> (vi)   Bids shall be offered in individual lots, followed by bids for the entirety of the assets as set forth in paragraph 4 of Exhibit "A" hereto;
>
> (vii)  Bidding increments shall be a minimum of $10,000 for the individual lots as well as the aggregate bids;
>
> (viii) Time limitations for bidding will not be imposed at the outset of the auction, but the Trustee may later impose reasonable time limits in his sole discretion;

---

[3] The Trustee sent e-mail on June 16, 2015 and again on June 17, 2015 with suggested dates for the auction and the hearing. The Creditor Group has confirmed that the group is available for an auction on July 2, 2015 and a hearing on July 7, 2015. The Insider Group has not replied with their availability as of the filing of this motion.

4

(ix) The auction shall continue with subsequent rounds of bidding, and at the conclusion of the individual lots bidding, and any round of bidding on all assets, the Trustee shall announce the leading bid(s). A bidder that does not submit a bid in any round of bidding with value greater than the current leading bid, shall not be able to submit further bids for that lot;

(x) The Trustee reserves the right to (i) determine in his sole discretion which bid(s) is/are the highest and otherwise best, and (ii) reject at any time, without liability, any bid that the Trustee, in his business judgment, deems to be (1) inadequate or insufficient, (2) not in conformity with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or these procedures, or (3) contrary to the best interests of the Estate;

(xi) The auction may include individual negotiations with each bidder and/or open bidding; provided, however, that all bids shall be made and received in one room, on an open basis, and each bidder shall be entitled to be present for all bidding, and all material terms of each bid shall be fully disclosed to all bidders;

(xii) At the conclusion of the auction, the Trustee shall select the highest and otherwise best offer(s) and also the second highest and otherwise best offer;

(xiii) The second place bid(s) shall be approved at the hearing as the alternate high bid and such bidder shall be prepared to close on its bid should the high bidder fail to close on the timeline provided under the agreement annexed to the Trustee's Motion; and

(xiv) The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Proposed Procedures, the Trustee's Motion, any agreement, and any other matter that in any way relates to the foregoing. All entities that submit a bid shall be deemed to have (i) consented to the core jurisdiction of, and venue in, the Bankruptcy Court and (ii) waived any right to a jury trial in connection with any disputes that in any way relates to the foregoing.

14.     The Trustee believes that the Proposed Procedures will establish parameters pursuant to which the value of the assets will be fully tested at the auction and ensuing hearing. The Proposed Procedures will increase the prospect for the Estate realizing the maximum potential price for the assets, because they encourage an open, fair and competitive process among the only parties believed to have an interest in the assets.

15.     The Trustee submits that the Proposed Procedures are fair and appropriate under the circumstances of this case and wholly consistent with the manner in which auctions in Chapter 7 cases in this District historically have been conducted. Therefore, the Trustee

5

respectfully requests that this Court grant the Motion and approve the Proposed Procedures under Sections 105, 363 and 704 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order in the form annexed hereto as "Exhibit "C" granting the Auction Motion, approving the Proposed Procedures, and granting such other and further relief as is just and proper.

Dated: June 18, 2015
      Wilmington, DE

COZEN O'CONNOR

By: _____
Mark E. Felger (DE 3919)
1201 N. Market Street, Suite 1001
Wilmington, DE  19801
T: (302) 295-2000 / F: (302) 295-2013
mfelger@cozen.com

*Counsel to Chapter 7 Trustee,*
*Jeoffrey L. Burtch*

6

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 |
| Pursuit Capital Management, LLC, | : | |
| | : | Case No. 14-10610 (LSS) |
| Debtor. | : | |
| | : | **Hearing Date:  June 30, 2015 at 2:30 p.m.** |
| | : | **Objection Deadline:  June 25, 2015** |
| _____ | : | |

### NOTICE OF MOTION

Jeoffrey L. Burtch, Chapter 7 Trustee to the estate of Pursuit Capital Management, LLC has filed the *Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests* (the "Motion").

If you wish to file a response to the Motion, you may do so on or before **June 25, 2015.** At the same time, you must also serve a copy of the response upon the Trustee's attorneys:

> Mark E. Felger, Esquire
> Cozen O'Connor
> 1201 N. Market Street, Suite 1001
> Wilmington, DE 19801-1147

**IF OBJECTIONS ARE FILED, A HEARING ON THE MOTION WILL BE HELD ON JUNE 30, 2015 AT 2:30 P.M. BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN, UNITED STATES BANKRUPTCY JUDGE AT THE UNITED STATES BANKRUPTCY COURT, 824 MARKET STREET, 6TH FLOOR, COURTROOM #2, WILMINGTON, DELAWARE.**

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated:  June 18, 2015              COZEN O'CONNOR


*/s/ Mark E. Felger*_____
Mark E. Felger (No. 3919)
*Counsel for Jeoffrey L. Burtch, Chapter 7 Trustee*

LEGAL\23266729\1

# **EXHIBIT A**

**Felger, Mark**

From:          Felger, Mark
Sent:          Thursday, June 4, 2015 6:04 PM
To:            'Silverman, Jesse N. (PHL)'
Cc:            'jon@harrisobrien.com'; 'jscott@reedsmith.com'; ''JPenn@perkinscoie.com'; 'chipman@chipmanbrown.com';
               'peter@canelaw.com'; 'trobinson@reedsmith.com'; Klayman, Barry M.; 'edolido@saniegal.com'
Subject:       RE: Pursuit auction update

All, please note the following concerning the auction:

1. This confirms that the auction will go forward on Monday, June 8 starting at 11:00 a.m. in my firm's Delaware office. A court reporter will attend and create a record of the auction as per our Local Rules;

2. Peter Cane and his client will be appearing via video conference from his office in NYC. Please let me know who will be appearing in my office for each side, so I can alert my security desk;

3. The Trustee has requested from Peter Cane a signed agreement and evidence that the Buyer entity under the agreement has been formed and is funded; and

4. The Trustee presently intends to offer the assets at auction in lots and in the aggregate. He intends to begin the auction by offering each lot individually for bid. At the conclusion of the individual lot bidding, he will then proceed with the bidding on the competing agreements for all assets. The individual lots that will be offered are as follows: Lot A – the Estate's claims in the New York Action; Lot B – the Potential Avoidance Claim; Lot C – the Estate's rights with respect to the UBS Action; Lot D; the Indemnification Claims; and Lot E – the Debtor Claims. Each of these capitalized terms are defined in the current bids. The Trustee will then consider the individual lot bids and the aggregate bids, and decide which bid or bids is highest and best for the Estate. The Trustee will impose bid increments and time limits (if necessary) on submitting bids at the auction. The Trustee reserves the right to change this procedure in any and all respects.

Please let me know if there are any questions. Thanks.

Best regards,


COZEN
O'CONNOR

**Mark E. Felger**
**Co-Chair, Bankruptcy, Insolvency & Restructuring | Cozen O'Connor**
1201 North Market Street, Suite 1001 | Wilmington, DE 19801
P: 302-295-2087 F: 877-286-4528
Email | Bio | LinkedIn | Map | cozen.com

1

# **EXHIBIT B**

**From:** Felge rk

**Sent:**
**To:**
**Cc:**

**Subject:**

Mark,

Sorry for not responding sooner but I have been tied up as lender's counsel in a large chapter 11 that is likely to file this weekend. Subject to my client and Peter's input, we object to your eleventh hour attempt to change the form of the bids - while my co-counsel (as you know) is dealing with a family matter and is unable to respond. The last minute change raises serious questions with regard to the integrity of this process for my client once again. You have two competing bids for substantially all of the Debtor's assets based upon the same form of agreement you filed with the Court. No party has offered to purchase individual assets. There is no reason at this point in time to change the process and offer individual assets for sale, nor has any party in interest, to my knowledge, requested the ability to bid on individual assets. If the Trustee had intended to offer individual assets for sale, that should have been part of a formal bidding procedures motion subject to objections and an opportunity to be heard prior to our bid being submitted. The Trustee chose not to seek formal bidding procedures in this case and we are where we are. I believe at this point the auction should be delayed pending a call with the Judge so that we can get this issue resolved prior to any auction occurring. I am not sure of Peter's availability today for such a call. With regard to funding, Peter has assured me on previous occasions that the has the funds in his escrow account to fully fund the transaction our client has proposed, however, we need clarity on what the process is before attending the auction. Please also provide us with information of who will be participating in the auction, who is a qualified bidder, whether or not they are funded and by whom and your proposed overbid increments. My client reserves the right to not participate in the auction, withdraw its bid and to object to the sale if Trustee intends to proceed as your email suggests. Regards, Bill.

**From:** Felger, Mark [mailto:MFelger@cozen.com]
**Sent:** Thursday, June 04, 2015 6:04 PM
**To:** 'Silverman, Jesse N. (PHL)'
**Cc:** 'jon@harrisobrien.com'; 'Jscott@reedsmith.com'; 'JPenn@perkinscoie.com'; 'William Chipman'; 'peter@canelaw.com'; 'rrobinson@reedsmith.com'; Klayman, Barry M.; 'edolido@samlegal.com'
**Subject:** RE: Pursuit auction update

All, please note the following concerning the auction:

1. This confirms that the auction will go forward on Monday, June 8 starting at 11:00 a.m. in my firm's Delaware office. A court reporter will attend and create a record of the auction as per our Local Rules;

---

**From:**      William Chipman <chipman@chipmanbrown.com>
**Sent:**      Friday, June 5, 2015 11:08 AM
**To:**        Felger, Mark; 'Silverman, Jesse N. (PHL)'
**Cc:**        'jon@harrisobrien.com'; 'Jscott@reedsmith.com'; 'JPenn@perkinscoie.com';
               Klayman, Barry M.; 'edolido@samlegal.com'; 'peter@canelaw.com'; 'rrobinson@reedsmith.com';
               'William Chipman'

**Subject:**   RE: Pursuit auction update

## Felger, Mark

| | |
|---|---|
| **From:** | |
| **Sent:** | William Chipman <chipman@chipmanbrown.com> |
| **To:** | Friday, June 5, 2015 12:21 PM |
| **Cc:** | Felger, Mark; 'Silverman, Jesse N. (PHL)' |
| | 'jon@harrisobrien.com'; 'jscott@reedsmith.com'; 'JPenn@perkinscoie.com'; 'peter@canelaw.com'; 'rrobinson@reedsmith.com'; |
| | Klayman, Barry M.; 'edolido@isamlegal.com' |
| **Subject:** | RE: Pursuit auction update |

Thanks Mark,

Given the hearing is not until the end of June and not knowing Peter's availability (or anyone else's) for a call with the Court, I propose the parties agree to postpone the auction until the end of next week so we can work out these issues. I will reach out to the Court Monday once I know Peter's availability to set up a teleconference with the Judge.

| | |
|---|---|
| **From:** | Felger, Mark [mailto:MFelger@cozen.com] |
| **Sent:** | Friday, June 05, 2015 11:36 AM |
| **To:** | William Chipman; 'Silverman, Jesse N. (PHL)' |
| **Cc:** | 'jon@harrisobrien.com'; 'jscott@reedsmith.com'; 'JPenn@perkinscoie.com'; 'peter@canelaw.com'; 'rrobinson@reedsmith.com'; Klayman, Barry M.; 'edolido@isamlegal.com' |
| **Subject:** | RE: Pursuit auction update |

Bill, the Trustee would have no objection if you wish to schedule a conference with the Court. What we have proposed is very common in auctions as a way to test and maximize value. To allay any concerns you may have, I can represent that we have had no conversations with the other bidder regarding these procedures, and as such we have no idea whether they are fine with them or object to them as you have done. Barring the Court intervening to rule that the Trustee should not offer the assets in individual lots, the Trustee intends to proceed in this manner. If no one bids on individual lots, then so be it... If the parties wish to postpone the auction for a few days, the Trustee likely would have no objection, since the hearing is not until June 26. Lastly, I do still need evidence that your Buyer entity has been formed and is funded – and a signed agreement. Thanks.

Best regards,

**Mark E. Felger**
**Co-Chair, Bankruptcy, Insolvency & Restructuring | Cozen O'Connor**
1201 North Market Street, Suite 1001 | Wilmington, DE 19801
P: 302-295-2087 F: 877-286-4528
Email | Bio | LinkedIn | Map | cozen.com

1

# **EXHIBIT C**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| Pursuit Capital Management, LLC, | : |
| | : Case No. 14-10610 (LSS) |
| Debtor. | : |
| | : |
| | : |
| | : |

### ORDER APPROVING TRUSTEE'S MOTION FOR APPROVAL OF AUCTION PROCEDURES IN CONNECTION WITH TRUSTEE'S MOTION FOR AN ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS

Upon the Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Auction Motion");[1] proper and sufficient notice of the Auction Motion having been given; and good cause appearing for granting the relief requested in the Auction Motion; after notice and hearing, it is hereby

ORDERED that the Auction Motion is GRANTED, and the Proposed Procedures are approved in their entirety.

DATED: _____, 2015          _____
                                      The Honorable Laurie Selber Silverstein
                                      United States Bankruptcy Judge

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings given in the Motion.

23243797\1 09177.0001.000/351440.000

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

PURSUIT CAPITAL MANAGEMENT, LLC,

           Debtor.

Chapter 7

Case No. 14-10610 (PJW)

## CERTIFICATE OF SERVICE

    I, Mark E. Felger, hereby certify that on June 18, 2015, I caused a true and correct copy of the foregoing *Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests* to be served in the upon the following:

### HAND DELIVERY

Jesse N. Silverman, Esquire
Thaddeus L. Weaver, Esquire
Dilworth Paxson LLP
One Customs House, Suite 500
704 King Street
Wilmington, DE 19801

Jeoffrey L. Burtch, Trustee
Cooch & Taylor
1000 West Street
10th Floor
Wilmington, DE 19801

Stuart M. Brown, Esquire
DLA Piper LLP
1201 North Market Street
Wilmington, DE 19801

United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899

William E. Chipman, Jr., Esquire
Chipman Brown Cicero & Cole, LLP
1007 N. Orange Street, Suite 110

LEGAL\22847044\2

Wilmington, DE 19899

**FIRST CLASS MAIL**

Gregg M. Galardi, Esquire
Gabriella Zborovsky, Esquire
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY  10020

John D. Penn, Esquire
Perkins Cole LLP
500 North Akard Street
Suite 3300
Dallas, TX 75201

John L. Scott, Esquire
Reed Smith
599 Lexington Avenue
22nd Floor
New York, NY  10022

Peter S. Cane, Esquire
Cane & Associates LLP
200 Park Avenue
17th Floor
New York, NY  10166

Dated:  June 18, 2015                    COZEN O'CONNOR

                                         Mark E. Felger (No. 3919)
                                         1201 N. Market Street
                                         Suite 1001
                                         Wilmington, DE 19801

                                         *Counsel to Chapter 7 Trustee,*
                                         *Jeoffrey L. Burtch*

LEGAL\22847044\2

2

163

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                  :

                       :   Chapter 7

Pursuit Capital Management, LLC,      :

                       :   Case No. 14-10610 (LSS)

        Debtor.          :

                       :   *re : docket # 133*

                       :

                       :

### ORDER APPROVING TRUSTEE'S MOTION FOR APPROVAL OF AUCTION PROCEDURES IN CONNECTION WITH TRUSTEE'S MOTION FOR AN ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS

Upon the Trustee's Motion for Approval of Auction Procedures in Connection with Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Auction Motion");[1] proper and sufficient notice of the Auction Motion having been given; and good cause appearing for granting the relief requested in the Auction Motion; after notice and hearing, it is hereby

ORDERED that the Auction Motion is GRANTED, and the Proposed Procedures are approved in their entirety.

DATED: *June 30*, 2015

                             The Honorable Laurie Selber Silverstein
                             United States Bankruptcy Judge

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings given in the Motion.

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          ) Chapter 11
                                )
PURSUIT CAPITAL                 )
MANAGEMENT LLC,                 ) Case No.
                                ) 14-10610  (LLS)
            Debtor.             )

                        AUCTION
                        Cozen O'Connor
                        Chase Manhattan Centre
                        1201 North Market Street
                        Suite 1001
                        Wilmington, Delaware

                        Tuesday, July 7, 2015
                        11:11 a.m.

        CONDUCTED BY:  MARK E. FELGER, ESQUIRE
                       Cozen O'Connor

             TRANSCRIPT OF PROCEEDINGS

             WILCOX & FETZER
        Registered Professional Reporters
1330 King Street  -  Wilmington, Delaware 19801
             (302) 655-0477
             www.wilfet.com



1    say we are not making more modifications?

2                    MR. FELGER:  We are going to

3    proceed.  The trustee has reviewed the two

4    bids and has concluded that the bid for

5    $147,500 is the highest and otherwise best bid

6    as we sit here at the moment.

7                    So the ball is in the creditor

8    group's court to respond to the Pursuit

9    parties' bid of $147,500.

10                    MR. HARRIS:  We would like to

11    make the following to modify --

12                    MR. FELGER:  Remember, the

13    increments are $10,000.  You can always go

14    more.  The minimum increment is $10,000.

15                    MR. HARRIS:  -- to modify our

16    bid at Page 3 just to clarify the definition

17    of the UBS claim so that on the whereas clause

18    at the top of Page 3 --

19                    MR. FELGER:  Mr. Cane, can you

20    hear that?

21                    MR. CANE:  They have already

22    been told they can't modify.  If they want to

23    modify the number, let them do that.

24    Otherwise they are acting improperly.

W&F

WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
166

1           MR. FELGER:  That's not the

2    case, Mr. Cane.  They can certainly make

3    changes to their bid however they believe they

4    need to make it to make it better than your

5    bid, which we just deemed to be better than

6    their previous bid.  So the ball is in the

7    creditor group's court.  As I said, to improve

8    their bid, it has to be a minimum of $10,000

9    increment, and they can make whatever other

10   changes they think are beneficial to the

11   estate.  Just as you can, Mr. Cane.

12           MR. HARRIS:  On Page 3 of the

13   proposal, there's a parenthetical that says

14   the, quote, UBS claim, closed quote.  We're

15   going to change that parenthetical to read "to

16   the extent of the Debtor's" -- capital D --

17   "interest in such litigation or any claims to

18   a carried interest against any party," --

19   comma -- "the UBS claim."

20           MR. FELGER:  You are changing

21   the definition of the UBS or clarifying the

22   definition of the UBS claim?

23           MR. HARRIS:  I am.

24           MR. FELGER:  We will have to



1   read that, but okay.

2                   MR. HARRIS:   On Page 4,

3   Paragraph 3, "The creditors shall be

4   permitted," and we're adding the words comma,

5   ", if they choose.   It is not this is.   Forget

6   that.

7                   "The creditors shall be

8   permitted to bring the debtor's claim and" --

9   we're adding -- "UBS claim in the Bankruptcy

10  Court and are deemed to have standing to bring

11  such claims in the Bankruptcy Court."   Then

12  we're adding a sentence, "the debtor claims,"

13  -- comma -- "along with the UBS claim, will be

14  pursued on behalf of the bankruptcy estate and

15  any recoveries will be property of the

16  bankruptcy estate to be distributed in

17  accordance with the priorities established by

18  the Bankruptcy Code."

19                  And we are changing the next

20  sentence to read, "The creditors shall

21  initially bear all of their own costs and

22  expenses associated with doing so and the cost

23  or expenses of pursuing such claim shall be

24  paid out of any proceeds."



W&F
WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
168

1          We are changing the next

2   sentence to read, "Further, the creditors

3   shall, one, support the closing of this

4   bankruptcy case, notwithstanding the pendency

5   of any adversary proceedings with respect to

6   the debtor claims and UBS claim."  We're

7   adding "and UBS claim" twice more into that

8   clause.

9          We will then increase the bid by

10  the $10,000 increment required.

11          MR. FELGER:  157,500?

12          MR. HARRIS:  That's correct.

13          MR. FELGER:  Make copies of your

14  edits.

15          MR. HARRIS:  Yes.  I can mark it

16  up is probably the easiest thing.  I can mark

17  it up and I can print it out.

18          MR. FELGER:  Okay.

19          MR. ROBINSON:  So are we going

20  to take a couple minutes for Mr. Harris to do

21  that?

22          MR. FELGER:  Yes.  Peter, it is

23  probably going to take five minutes -- I don't

24  know how fast you type --



**W&F**
**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
169

1               MR. HARRIS:   Ten minutes.

2               MR. FELGER:   -- to get this.   I

3   will scan it and we can e-mail it to you,

4   Peter, so you will have it in ten minutes or

5   so.

6               MR. CANE:   Yes.   I will go on

7   mute for the next ten minutes.

8               MR. FELGER:   Just so you know,

9   the ball will be in your court to reply to

10  that.

11              MR. CANE:   Absolutely, Mark.   I

12  will see you as soon as you get that back to

13  me.

14              MR. FELGER:   Thank you.

15              (Recess.)

16              MR. FELGER:   Let's go back on

17  the record.

18              MR. CANE:   Mark, for the record,

19  I'd like to note that there are numerous

20  additional changes that Jon Harris did not

21  reference when he said he was going to send

22  this.   He mentioned two changes, three if you

23  count the date, and all of a sudden now we are

24  seeing we can't depose the trustee, which is a

W&F
WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
170

1  direct contravention of the Court's order in

2  this case.

3           MR. FELGER:  No.

4           MR. CANE:  How does that work?

5           MR. FELGER:  That has nothing to

6  do with these proceedings.  Most of these

7  changes Jon read into the record.  After we

8  looked at the changes, we suggested a couple

9  of additional changes, and those are the

10 changes you see.  There's the block, there's

11 the changes at the end of Paragraph 3, and

12 there's the change at the end of the first

13 sentence in Paragraph 3 just to add, I think

14 it just clarifies it to the extent of

15 applicable law.

16           The change that you just

17 referred to in 3(a) has to deal with any

18 claims that they were to bring in the

19 Bankruptcy Court to pursue the debtor claims

20 or the UBS claim, which frankly have nothing

21 to do with the trustee.  So if you wanted to

22 depose the trustee with respect to the sale

23 motion, this has obviously nothing to do with

24 the pending sale motion.


**W&F**
**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
171

```
 1              MR. CANE:   This says no
 2   deposition shall be taken of the trustee.
 3              MR. FELGER:   Yes.
 4              MR. CANE:   It doesn't say that
 5   Mr. Harris or his clients won't take a
 6   deposition.   It says no deposition shall be
 7   taken.   Is that just bad writing?
 8              MR. FELGER:   No.   But it says
 9   with respect to the proceedings relating to
10   the debtor claims and the UBS claims in the
11   Bankruptcy Court.   It doesn't say any other --
12              MR. CANE:   So are you saying if
13   the Schneiders are pursuing my clients in the
14   Bankruptcy Court, I'm not allowed to take the
15   trustee's deposition in that action?
16              MR. FELGER:   That's correct.   It
17   is not being brought in the name of the
18   trustee and the trustee would have no relevant
19   information.
20              MR. CANE:   But the trustee can
21   object to the subpoena at that time.   You
22   can't pre-agree that the trustee is immune to
23   a discovery as part of this deal.   That's
24   illegal.
```

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
172

```
 1              MR. FELGER:  I wouldn't say
 2   that's illegal.  I mean that's an objection
 3   that you can make at the sale hearing to that
 4   provision of the agreement.
 5              MR. CANE:  Such fundamental
 6   changes, I need time to confer with my client
 7   on this, if he's available and I can confer
 8   with him.  I'll need a five-minute, at least,
 9   adjournment of the proceedings, the same break
10   you guys have been taking.  Now for the first
11   time I need to call one.  So I'm going to
12   confer with my client and be back to you in
13   the next five minutes or so.  Okay?
14              MR. FELGER:  Well, we are on the
15   record, you are taking all this down, correct?
16              COURT REPORTER:  Yes.
17              MR. FELGER:  The trustee has
18   reviewed this agreement and the revised bid
19   and believes it is now the highest and better
20   offer than the previous bid.  So the bid now
21   is in your court, Mr. Cane, for your clients
22   to respond to this bid, and certainly we
23   recognize you need time.  So you have said
24   five to ten minutes.  If you need a little
```

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

173

```
1   longer, that won't be a problem, but just let
2   us know if it is going to be longer than ten
3   minutes and how much longer it will be.
4               MR. CANE:  Sure.  I'll get back
5   to you in the next ten minutes or so either
6   way.
7               MR. FELGER:  We will go off the
8   record.
9               (Recess.)
10              MR. FELGER:  Back on the record.
11              Peter, have you had a chance to
12  review the latest bid?
13              MR. CANE:  Yes.  My response to
14  the e-mail is yes, I'd like to confer on that
15  matter.
16              MR. FELGER:  Do you want to take
17  another five-minute break?
18              MR. CANE:  Sure.
19              MR. FELGER:  Okay.
20              MR. CANE:  I'm going to ring off
21  this line, but I'm going to take a five-minute
22  break and I am going to call back into this
23  line in five minutes.  Okay?
24              MR. FELGER:  Okay.
```



1              (Recess.)

2                   MR. FELGER:  We are back on the

3      record.  The last offer of 157,500 with a

4      revised agreement that the parties have seen

5      is now the highest and best offer for the

6      assets.  The ball is in the Pursuit parties'

7      court to decide whether to make an overbid.

8                   Mr. Cane?

9                   MR. CANE:  Without prejudice to

10     my clients' positions on the propriety or lack

11     thereof of the terms of the so-called

12     creditors' bid, my clients' bid is the same as

13     to all terms except to the amount of cash,

14     which is now $170,000 even.

15                  MR. FELGER:  So you are revising

16     the agreement in the same way that the

17     creditor group revised the agreement?  I just

18     want to be clear.

19                  MR. CANE:  I am just looking up,

20     it would be in Paragraph 2, the second line,

21     we are changing 147,500 to 170,000.

22                  MR. FELGER:  Other than that, we

23     are apples to apples, as they say?

24                  MR. CANE:  Oh, we are not even



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

```
 1   close to apples to apples.  We're apples to
 2   kangaroos on these two bids.  But my point
 3   here is our bid remains the same as previously
 4   sent to the trustee except we are raising the
 5   cash component to $170,000.
 6                   MR. FELGER:  So it is in the
 7   same form as the prior agreement that was
 8   attached to your May 13 e-mail, but it has
 9   been increased to 170,000; correct?
10                   MR. CANE:  That's correct.
11                   MR. FELGER:  Gotcha.  I am glad
12   I clarified that.  Because I thought you had
13   said it was identical to the revised agreement
14   by the creditor group.  Okay.
15                   MR. CANE:  No.  It is identical
16   to our prior submission, as you just said.
17                   MR. FELGER:  Gotcha.
18                   We are going to step out of the
19   room for one minute, Peter, the trustee and I.
20                   MR. CANE:  So you know, I have a
21   conference with the New York court at three
22   o'clock at Jon Harris's request, and we agreed
23   to it.  I am not going to skip that.  The
24   Court scheduled it.
```



1          MR. HARRIS:  That is a

2   scheduling conference.  Sarah Coleman can

3   handle that, or anyone else, and I'm sure it

4   will be quite brief as well.

5          MR. CANE:  Don't tell me who can

6   handle what.  This is about sanctions against

7   you for fraudulently misrepresenting facts to

8   the court.  Don't make it worse for yourself.

9          MR. FELGER:  We are off the

10  record.

11          (Recess.)

12          MR. FELGER:  Peter, are you on

13  the line?  How about Sarah?  I'm hearing

14  nothing.

15          I received an e-mail from Peter

16  at 3:27.  It says, "Mark, the New York court

17  has asked us to try again at four o'clock,

18  which means I need to call my adversary at

19  3:55.  I am not sure how long it will take.  I

20  know I will be completely clear, as will my

21  client, between 8:30 and nine o'clock, so I

22  suggest we resume then if that is agreeable to

23  everyone else.  As you said, these auctions

24  often go to midnight, so I hope this is not a

**W&F**
**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com
177

1    problem.  Please let me know.  Thanks, Peter."

2                    Where we currently stand is that

3    the Pursuit parties submitted a bid for

4    $170,000 on the same terms as the May 13

5    submission, which the trustee deemed to be the

6    highest and/or best offer.  The proverbial

7    ball is now in the creditor group court to

8    reply.

9                    In light of this development in

10   terms of Mr. Cane's and his clients'

11   availability, the trustee has determined to

12   suspend/adjourn the auction, so we are going

13   to do that.  It will be reconvened at a date

14   to be determined that is convenient for the

15   two bidders and the trustee.  So with that, we

16   are adjourned.

17                    (Adjourned at 3:42 p.m.)

18

19

20

21

22

23

24

**W&F**
**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

178

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:

PURSUIT CAPITAL MANAGEMENT, LLC,

                              Debtor.

. . . . . . . . . . . . . . . . . .

.  Chapter 7
.
.  Case No. 14-10610 (LSS)
.
.  Courtroom No. 2
.  824 Market Street
.  Wilmington, Delaware 19801
.
.  Thursday, July 16, 2015


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Chapter 7
Trustee:                      Mark E. Felger, Esq.
                              COZEN O'CONNOR
                              1201 N. Market Street, Suite 1001
                              Wilmington, Delaware 19801

For Reed Smith, LLP:          Joseph C. Barsalona, II
                              RICHARDS, LAYTON & FINGER, PA
                              920 North King Street
                              Wilmington, Delaware 19801

For the Pursuit Parties:      William E. Chipman, Esq.
                              CHIPMAN, BROWN, CICERO & COLE, LLP
                              1007 North Orange Street, Suite 110
                              Wilmington, Delaware 19801

(Appearances Continued)

Audio Operator:               Electronically Recorded
                              by Michael Miller, ECRO

Transcription Company:        Reliable
                              1007 N. Orange Street
                              Wilmington, Delaware 19801
                              (302)654-8080
                              Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1        (Proceedings commence at 11:01 a.m.)

2        (Call to order of the Court.)

3            THE COURT:  Please be seated.

4            Mr. Felger.

5            MR. FELGER:  Good morning, Your Honor.  Mark Felger of

6    Cozen O'Connor on behalf of Jeoffrey Burtch, the Chapter 7

7    Trustee.

8    *        We have three matters on the agenda for this morning.

9    The first matter, Your Honor, is the trustee's motion for an

10   order approving agreement to settle, transfer, and assign

11   certain claims, rights, and interests.  That matter was set

12   down for a hearing today, with the expectation that an auction

13   would be conducted and concluded last week; I believe it was

14   the 8th.

15           We held an auction on the 8th; I actually have the

16   transcript with me in the courtroom, and it will be filed with

17   the Court in due course.  We did not conclude the auction on

18   the 8th, unfortunately.  We started at eleven o'clock, and took

19   care of the preliminary issues, moved into the actual bidding,

20   had a couple of rounds of bidding.  And Mr. Cane, who I should

21   note was participating telephonically without his client,

22   indicated that he had to leave the auction to attend to a

23   scheduling conference in another matter.  So, at just before

24   three o'clock we broke.

25           We then received an email from Mr. Cane around 3:25,

1    indicating that his scheduling conference had been moved to 4,
2    and that he and his client would be available again at between
3    8:30 and nine o'clock that evening.  So, rather than have
4    everyone wait for five to six hours, we decided to adjourn for
5    the day.
6            I've been trying in earnest to reschedule the auction.
7    It seems that every day that's proposed, someone isn't
8    available, unfortunately.  So I stand here to report that we
9    started an auction, but we have been unable to conclude it, and
10   we do not have another date to conclude it.
11           I have proposed yet another date of July 27th, which
12   is a week from Monday, and I've heard from some, indicating
13   that they're available.  I have not heard from Mr. Cane yet, as
14   to his and his client's availability.  But we're hoping that
15   July 27th will be the date to reconvene and conclude the
16   auction.
17           I should point out that, if we can't reach agreement
18   on a date in short order, the trustee is considering concluding
19   the auction as he had proposed in the motion originally, to
20   simply request that each side submit final, sealed bids, which
21   would be shared with each side, so they each knew what the
22   other bid.  The trustee would select the highest and best
23   final, sealed offer and present it to the Court for approval.
24   So I just mention that.  The trustee is seriously considering
25   going that route if we can't, very quickly, reach agreement on

1     a date to conclude the auction.

2           In addition, Your Honor, I've had some discussions

3     with Your Honor's chambers about resetting this hearing.

4           THE COURT:  Uh-huh.

5           MR. FELGER:  Ms. Johnson offered two dates, July 29th

6     and August 10th.  Given that we may be reconvening the auction

7     on the 27th, at the earliest, we would suggest that we schedule

8     the hearing for August 10th.  I believe Ms. Johnson said at two

9     -- you had time at two o'clock on August 10th.  And I would

10    request that we set this down for August 10th at two o'clock.

11          Our expectation is that, at that point, we will have

12    concluded the auction, either by having a formal, in-person

13    auction in my office, or, in the alternative, by requesting

14    final, sealed bids submitted by the two bidding parties.  So

15    that's where we are on Item 1.

16          THE COURT:  Okay.  We'll put you in for August 10th at

17    2, and expect that the hearing will go forward then.

18          MR. FELGER:  Okay.  Thank you, Your Honor.

19    *       That brings us to Items 2 and 3, which are Mr.

20    Chipman's and Mr. Penn's motions to withdraw as counsel.  I'll

21    cede the podium to Mr. Chipman, and I believe Mr. Penn is on

22    the phone.

23          The trustee did not file an objection to either of

24    these motions.  But I did speak with the trustee yesterday, and

25    he asked me to make a couple of statements on the record with

1    mean, that's initially when you file something.

2            THE COURT:  Uh-huh.

3            MR. CHIPMAN:  I'm not sure if that would be applicable

4    here or not.  But I believe Mr. Cane is aware that he needs to

5    retain local counsel.  I'm not sure if he's actually retained

6    anyone yet.

7            THE COURT:  I think he requested 60 days to do so, and

8    I said that was too long.

9            MR. CHIPMAN:  Yes.  And I don't remember what Your

10   Honor said with regard to time; I don't know if it was a week

11   or -- for some reason, a week stands out in my head, but I'm

12   not sure, Your Honor.

13           THE COURT:  I don't recall that.

14           MR. PENN:  Your Honor, it's John Penn.  If I might

15   interrupt, just briefly?

16           THE COURT:  Yes.

17           MR. PENN:  First, I would also confirm that I'm not

18   aware of any rules that would require any kind of disclosure.

19           And second, I believe that the DLA firm never withdrew

20   from its initial representation of the Pursuit Parties.  And so

21   I'm not sure that it's accurate to say that Mr. Chipman's

22   withdrawal leaves them without local counsel.

23           THE COURT:  Well, maybe Mr. Penn has saved you.

24       (Laughter)

25           THE COURT:  I'm going to permit your withdrawal,

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| PURSUIT CAPITAL MANAGEMENT, LLC, | Case No. 14-10610 (LSS) |
| Debtor. | Hearing Date:     TBD<br>Obj. Deadline:     TBD |

## MOTION TO ADJOURN SALE HEARING

Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P., and Pursuit Capital Management Fund I, L.P. (collectively, the "Pursuit Parties") respectfully submit this Motion to Adjourn the Sale Hearing, currently scheduled for August 10, 2015 at 2:00 p.m. (the "Motion"). In support of this Motion, the Pursuit Parties state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The predicate for the relief requested in this motion is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

2.      On March 2, 2015, the Trustee filed a Motion for an Order Approving Agreement to Settlement, Transfer, and Assign Certain Claims, Rights and Interests seeking approval of an agreement ("Assignment Motion"), which ultimately led to an auction that was adjourned from time to time. The auction was not reconvened for formal bidding after an initial adjournment due to scheduling conflicts among the bidders, instead, on July 27, 2015, the Trustee, through his

counsel, notified the bidders that final, signed, and sealed bids must be delivered by 4:00 on July 30. The Pursuit Parties were not able to finalize the terms of a bid by the stated deadline. Thus, on July 31, 2015, the Trustee provided an "Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Agreement"), that the Trustee executed with certain assignee signatories thereto (the "Assignees") for which he indicated he would seek approval at a 2:00 p.m. hearing on August 10, 2015.

3.    The Pursuit Parties have previously objected to the bidding procedure aspects of the Assignment Motion; but have not yet been afforded the opportunity to depose the Trustee regarding the final hearing on the Assignment Motion or the Agreement. At a hearing on the auction procedures contemplated by the Assignment Motion, counsel for the Trustee indicated that the Pursuit Parties would be afforded the opportunity to depose the Trustee if they were not the prevailing bidder. *See* Transcript of Hearing, June 30, 2015, at 11:16-24 ("And I have dates for proposed sale hearing, as well. I recognize we can't do it in -- we ought not try to schedule a sale hearing the day after the auction or two days after the auction because, at least Mr. Cane has made it known that he would like to depose the trustee. My suspicion is that if Mr. Cane's clients emerge as the highest bidder, the creditor group may wish to depose the trustee. So we would probably build in a few days between the auction and the sale hearing for the deposition by the -- should likely be by the losing bidder."); *accord id*. at 31:16-18 (stating that prior to a sale hearing the parties will have to "squeeze a deposition in" prior to a final sale hearing).

4.    The Pursuit Parties have reasserted their interest in taking the Trustee's deposition but, in discussions with the Trustee's counsel, the parties have not yet agreed upon a date for a deposition (and a deposition on Monday prior to the hearing will not be possible as Mr. Cane, counsel who would take the deposition, is in a hearing on another matter on Monday morning).

5.      In addition to discussing the deposition issues with the Trustee's counsel, the Pursuit Parties have discussed and have made or will shortly make a further proposal to the Trustee for the potential resolution of these cases, which the Pursuit Parties understand the Trustee is considering or will consider when presented.  As such, the primary basis for a requested adjournment is to permit the Pursuit Parties and the Trustee to explore this additional proposal over the next 10 to 15 days.

6.      As part of the foregoing discussions and as a compromise, counsel for the Pursuit Parties requested that the Trustee agree to an adjournment of the final hearing on the Agreement from August 10 to the Court's standing chapter 7 hearing date scheduled either on September 10 or 24, 2015, but in no event prior to the Court's standing chapter 7 hearing date scheduled on August 20, 2015; however, as of the date of this filing, the Trustee has not agreed to the Pursuit Parties' request for any adjournment.

## RELIEF REQUESTED

7.      By this Motion, the Pursuit Parties seek entry of an order adjourning the date of the hearing (and all subsequent related dates) for a period of 45 days in order to permit the Pursuit Parties to negotiate with the Trustee regarding the Assignment Motion and the Agreement and the Pursuit Parties' recent proposal or to permit the Pursuit Parties adequate time to take the Trustee's deposition and permit final briefing with respect to the Assignment Motion prior to any final hearing.

## BASIS FOR RELIEF

8.      In sum, the Pursuit Parties request that under Section 105 of the Bankruptcy Code the Court continue the Sale Hearing for 45 days to provide a short and reasonable amount of time up to least 45 days.  There is no present emergency requiring a hearing on the Sale Agreement

only 10 days after it was executed and made available to the Pursuit Parties.  The preferred course would be to adjourn that hearing for 45 days to permit the Pursuit Parties to complete the recent settlement discussions that have commenced between the Trustee and the Pursuit Parties and in the alternative to provide the Pursuit Parties with sufficient time to depose the Trustee, file a final brief in opposition to the Sale Agreement, and to permit the Trustee the opportunity to submit any final reply to the Pursuit Parties brief.

9.      In addition to the foregoing rationale that justifies an adjournment, lead counsel, Peter Cane, has a hearing in another matter (namely a probate matter involving the Schneiders) on August 10, 2015, for which he must prepare and attend telephonically and one of the Pursuit Parties has a vacation scheduled for the week of August 10, which will not permit him to participate in the planning for the hearing should it go forward on August 10.  As a result of these pre-existing commitments, it will not be possible for the Pursuit Parties to take the Trustee's deposition prior to the currently scheduled hearing.

10.      In order to preserve all objections, the Pursuit Parties hereby make a general objection to the entirety of the Sale Procedure and the sale of Debtor's assets as contemplated by the Sale Agreement.

## CONCLUSION

11.      For the reasons stated above, the Pursuit Parties respectfully request that this Court adjourn the Sale Hearing for a minimum of 45 days in order to provide them with sufficient time to further explore settlement negotiations and to ensure that the Pursuit Parties are afforded adequate due process to take the deposition of the Trustee prior to a final hearing in order to ensure the record is fully developed and the relevant matters are fully briefed.

Dated: Wilmington, Delaware
August 6, 2015

**DLA PIPER LLP (US)**

/s/  R. Craig Martin
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5723)
Daniel N. Brogan (DE 5723)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  stuart.brown@dlapiper.com
          craig.martin@dlapiper.com
          daniel.brogan@dlapiper.com

-and-

CANE & ASSOCIATES LLP

Peter S. Cane
200 Park Avenue
17th Floor
New York, New York 10166
(212) 627-7000

*Attorneys for the Pursuit Parties*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 7 |
|  | . |
|  | . Case No. 14-10610 (LSS) |
| PURSUIT CAPITAL MANAGEMENT, LLC, | . |
|  | . Courtroom No. 2 |
|  | . 824 Market Street |
| Debtor. | . Wilmington, Delaware 19801 |
|  | . |
| . . . . . . . . . . . . . . . . . . | . Friday, August 7, 2015 |

TRANSCRIPT OF TELEPHONIC HEARING RE:
PURSUIT PARTIES' MOTION FOR CONTINUANCE OF SALE HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA TELEPHONE:

| | |
|---|---|
| For the Chapter 7 Trustee: | Mark E. Felger, Esq.<br>COZEN O'CONNOR |
| For the Pursuit Parties: | R. Craig Martin, Esq.<br>DLA PIPER, LLP (US) |
| | Peter S. Cane, Esq.<br>CANE & ASSOCIATES |
| For the Claridge Associates,<br>LLC, et al: | Jesse N. Silverman, Esq.<br>DILWORTH PAXSON, LLP |
| | Jonathan Harris, Esq.<br>HARRIS, O'BRIEN, ST. LAURENT<br>& CHAUDHRY, LLP |

(Appearances Continued)

| | |
|---|---|
| Audio Operator: | Electronically Recorded<br>by Michael Miller, ECRO |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1   be afforded the opportunity to negotiate further with the

2   Pursuit Parties, I think there's a separate basis justifying

3   our requested relief.

4        And finally, Your Honor, I think what is most notable

5   from the opposition is there's really no prejudice to any

6   parties here.  We understand the policy behind finality of

7   options and wanting to get something approved, but simply fail

8   to see how an adjournment for the time period that we've

9   requested or less would prejudice any party.  And we think

10  that, in light of the lack of prejudice and the need for a

11  potential deposition and with ongoing discussions that might

12  enhance value to these estates, that there's sufficient grounds

13  to support our request for a continuance of Monday's hearing.

14  And it's for those reasons that we would ask the Court to grant

15  the relief we've requested.

16       THE COURT:  Thank you, Mr. Martin.

17       Mr. Felger, what's the trustee's position on this?

18       MR. FELGER:  Good afternoon, Your Honor.  And maybe I

19  should take just a couple of minutes to bring Your Honor up to

20  the moment.

21       We had -- as Your Honor will recall, we had a status

22  conference not -- I forget the dates, but I know it was a

23  couple of weeks ago, where we reported to the Court that we had

24  begun the auction and actually received bids at the auction,

25  but we couldn't conclude the auction that day.

1          And what I had said at that status conference was that

2     I was attempting to schedule the conclusion of the auction.

3     And I think I also said at the conference that, if we couldn't

4     reschedule it in short order, we would -- we were considering

5     concluding the auction by requesting the submission of final

6     sealed bids, as we had proposed in our initial motion that

7     started the process.

8          So, since that hearing, we've made an effort to

9     reschedule and conclude the auction.  We've floated no less

10    than nine separate dates to the parties and could not come to a

11    date that worked for everyone.  So, rather than continue to

12    delay this process -- which, as Your Honor knows, is already

13    approaching, I think, four months, if not longer -- we decided

14    to solicit final sealed bids from both of the bidder groups.

15    So we gave notice to the parties that we were doing that; I

16    think we gave notice a week in advance of the date by which we

17    wanted final sealed bids.

18          And prior to the date, the deadline for the submission

19    of the final sealed bids, I heard from Mr. Cane, who, once

20    again, asked that we consider delaying the conclusion of the

21    auction until after the -- until after the UBS trial, which I

22    believe is set to occur in about 10 days, and perhaps the

23    parties can correct me if I'm wrong, but -- so he suggested

24    that we put off the conclusion of the auction until the

25    conclusion of the trial, which I believe everybody expects, if

1   it starts in 10 days, that it will be concluded by -- certainly

2   by early September.  And again, folks should tell me if I have

3   that wrong.

4          So Mr. Cane requested that.  I said, if both -- the

5   trustee said, if both parties, both bidder groups are willing

6   to do that, then we would consider that.  And so we reached out

7   to both sides.  Mr. Cane indicated he was prepared to do that;

8   the creditor group indicated they were not willing to do that.

9   So we said we're going forward with the deadline for the

10  submission of final sealed bids.

11         The creditor group submitted a final sealed bid by the

12  four o'clock deadline; Mr. Cane's clients did not submit a

13  final sealed bid.  In fact, Mr. Cane sent an email saying they

14  weren't submitting a bid, and in fact, were withdrawing their

15  prior bids, as well.

16         And just a correction to Mr. Martin's statement.  He

17  had said that the Pursuit Parties bid $180,000 at the close of

18  the auction.  It was actually 170,000 at the close of the

19  auction.  The final bid received by the creditor group was

20  $180,001.  And we had -- the trustee had requested some minor

21  changes to the agreement, to clarify the agreement; they agreed

22  to do that and have since executed a revised agreement -- a

23  revised assigned agreement for the trustee.

24         So we were prepared, Your Honor, to move forward on

25  Monday to approve that proposal.  And over the last few days,

1    Mr. Martin has gotten involved in the case; I've had some

2    discussions with Mr. Martin.  He, in fact, has requested a

3    further adjournment.  And he, in fact, made a new offer to the

4    trustee, which is -- which has different terms to it from what

5    was proposed previously, and it is also for a higher --

6    proposes a higher dollar amount than the proposal by the

7    creditor group.

8           So, you know, the trustee is in a difficult spot, as

9    Your Honor can imagine.  The trustee's job here is to maximize

10   value.  We have competing policies at issue here.

11          I mean, I would draw -- as an interesting side note

12   here, this issue about whether to put this off until after the

13   UBS trial was initially raised by the creditor group back at

14   the time of the auction, about possibly putting off the

15   conclusion of the auction until after the UBS trial, with the

16   thinking being, once we know the results of the UBS trial, it

17   could affect how parties may bid at the auction because I

18   believe there's an expectation that there could be a very large

19   judgment rendered in favor of -- let's just say adverse to the

20   UBS parties.  But of course, it could go the other way.

21          And so they had suggested, I think, at that point,

22   possibly putting it off until after the UBS trial.  And we had

23   floated that to both sides, and for whatever reason, we

24   couldn't get both sides to agree to do that.  And now, just a

25   week or so ago, I have Mr. Cane asking to put it off until

1    after the UBS trial, and it was the creditor group, at that

2    point, that said they weren't prepared or willing to do that at

3    that point.  So we've had, over the last -- over the last month

4    or so, we've had both sides, at different times, suggesting

5    that we put this off until after the UBS trial, but we haven't

6    had them both in agreement on that at any given moment.

7          So, you know, our -- I guess our view is that I don't

8    see a particular prejudice to putting this off for a short

9    period of time.  But if we were going to do this, if the Court

10   were inclined to do that, the trustee would want to make sure

11   that we had a date-certain that -- say, in mid-September, or

12   the second week of September, where we're going to go forward

13   with a sale hearing, sort of -- I hate to use the expression,

14   but "come hell or high water," we're going to get this done at

15   that point.

16         And what is in the back of my mind, Your Honor, is, as

17   you know, we're not selling widgets; we're selling causes of

18   action.  And we have a 546 deadline, a 108 deadline that

19   continues to approach.  And you know, we're now about five or

20   six months away from that deadline, and you know, we really

21   don't want to get too close to that deadline because,

22   obviously, it could prejudice -- it will begin to prejudice the

23   estate.

24         So I guess that's our view, Your Honor.  The -- again,

25   we don't want to have an open-ended -- if the Court is inclined

1   to grant an adjournment, we don't want an open-ended

2   adjournment.  This has to come to an end; this should have come

3   to an end already.  And the Pursuit Parties have asked for

4   adjournments time and time again.  We had this set up to

5   conclude in April, Your Honor, and here we are in August.  And

6   you know, we've really bent over backwards to make this process

7   fulsome, open, fair, and transparent, and you know, it just has

8   to come to an end.

9           So, again, if Your Honor is inclined to grant the

10  motion, we would sort of urge Your Honor that we -- if we do

11  so, we pick a date, everybody on this phone clears it; that we

12  don't have any lawyer coming to us the day before, saying they

13  have another hearing that day, and we're going forward that day

14  without -- you know, without any party coming forward again to

15  ask for a further adjournment.

16          THE COURT:  Okay.  Thank you.

17          Who wants to go -- who wants to go next, Mr. Harris or

18  Mr. Silverman?  Who wants to go next.

19          MR. HARRIS:  Your Honor, this is Mr. Harris, and I'll

20  speak for the creditor group.

21          And so this was originally submitted on March 2nd;

22  it's been five months.  Since that time, the Pursuit Group has

23  done nothing other than request adjournments, delay, miss

24  deadlines, and filed frivolous motions.

25          There was a last and final -- there was a last and

1    final process.  The creditor group complied with the last and

2    final process.

3            And it's been enormously expensive for us.  There is

4    dissipation of assets going on here.  I mean, just to set the -

5    - and I'm -- and I know the Court knows this.  The Pursuit

6    Group are the insiders who looted this entity, and then dumped

7    it on the bankruptcy door.

8            We are offering $180,001 in cash, and then we intend

9    to pursue claims, avoidance claims and other claims, on behalf

10   of the estate.  There's simply no basis here for delay.

11           Last and final should mean last and final.  The last

12   and final was held on July -- on the 30th.  There was plenty of

13   time for a deposition, plenty of time for something else.  They

14   wait until last night at five o'clock to file a motion seeking

15   an adjournment.  That motion is disingenuous.  Mr. Cane is

16   easily available at two o'clock for a hearing in this court.

17   The statement that they offered $180,000, that was also

18   incorrect.  And we wish very much to go ahead, we wish to

19   pursue these claims.

20           The creditor group has no insight whatsoever into

21   what's happening in the UBS case.  The only people with any

22   insight into that are the insiders, who are the ones who are

23   just continually seeking these adjournments and delays and

24   filing motions.

25           And we strongly, strongly urge the Court to go ahead

1    and stick to the schedule.  We complied with the rules, we

2    repeatedly complied with the rules.  We have been trying to get

3    this done since March; we have been met with nothing but

4    obstruction and delay and cost.

5         Meanwhile, the things we're buying here are claims.

6    And as this Court knows, as time passes, these claims get

7    harder and harder to pursue, it gets harder and harder to track

8    the money that has been taken.  And we could not more strongly

9    urge this Court to go ahead with the hearing on Monday.

10         THE COURT:  Okay.  Does anyone else wish to be heard?

11         MR. MARTIN:  Well, Your Honor, we would like a reply

12    from me.  This is Mr. Martin.

13         THE COURT:  If you would like, Mr. Martin.

14         MR. MARTIN:  Yeah, just a few brief points.

15         The concept of a delay from March to now, I will note

16    that, in the objectors' pleading, they indicate that the bid in

17    March was for 125,000.  That, obviously, has increased.  So,

18    while I understand that parties are critical of some things

19    that have happened in the last three or four months and don't

20    like that motions have been filed, the value has increased.

21    And in that regard, the trustee is doing his best to run a

22    process to maximize value.  And I don't think that the last

23    five months has been simply an exercise in delay.  I think the

24    process has increased value.

25         To clarify on the amount that the creditors have bid,

```
 1    it is -- since we're on a recorded transcript -- it is one
 2    eight zero, comma, zero zero one.  And my understanding is
 3    that, you know, it's a one-dollar-more than the last received
 4    bid.  But to -- also, to Mr. Felger's point, he is correct that
 5    those bids were made in prior auctions, and that the Pursuit
 6    Parties did not make the final sealed bid.  So I wanted to make
 7    sure that I had that part of the record correct for the Court.
 8              Obviously, the dissipation of assets and looting the
 9    entity and those allegations may -- we can simply reserve our
10    rights on those.
11              I understand the parties want to move promptly.  We
12    did not wait at the last moment; we reached out to Mr. Felger
13    earlier in the week, asked for -- our initial request for an
14    adjournment to the 20th of August; the parties rejected that.
15    I believe Mr. Felger asked the creditor group if that date
16    would work, and they were not amenable to that date.
17              We see that the Court has standing Chapter 7 dates at
18    the 10th and the 24th in September, and so it's for that reason
19    that we grafted the forty-five-day request.  Obviously, if the
20    Court feels another date, in light of the history, is more
21    appropriate, we would be willing to comply with the Court's
22    order on that.  But that's the reason that we made the request
23    in the fashion that I made it.
24              And I think that, at least over the last week, the
25    conversations with Mr. Felger have been very useful between he
```

1    and I, and we would like to explore them.  And we're willing,

2    at the same time as we explore those, to do the work necessary

3    to take the deposition, so that those discussions don't turn

4    into anything more meaningful, that we can achieve the

5    objection that the trustee seeks, which is a hearing on this at

6    some point; at which, if we still have objections, we can

7    appear and present those to the Court at that time.

8         So I think, in light of all of those reasons, the

9    balance of equities weighs in favor of a continuance, and I

10   would re-urge our request for that to the Court.  Thank you.

11        And also, I want to thank the Court for making itself

12   available.  Court staff and Your Honor have been very

13   accommodating, and obviously, we appreciate that greatly.  It

14   probably goes without saying, but I did want to acknowledge it

15   and say thank you for it.

16        THE COURT:  It goes without saying, and you're

17   welcome.

18        Well, I have to say I'm torn because, looking at the

19   request in isolation, it seems very reasonable.  But in the

20   history of this case, I'm not sure that it is.

21        And what particularly concerns me is that the Pursuit

22   Parties acted not to provide a final bid by July 30th, when it

23   was requested.  And whether or not they withdrew all their

24   other bids, that was represented; I'll take that as true.  But

25   even if they didn't, it concerns me the way the Pursuit Parties

1    are treating the orders of this Court and the process.  And we

2    have afforded the Pursuit Parties significant process in this

3    case.

4           What also concerns me is that we're hearing today, or

5    maybe earlier this week, that August 10 does not work as a

6    hearing date because of scheduling issues.  And I checked, and

7    my understanding is we gave that -- the Court gave that date

8    out on July 16th, in court.  And if that was not a convenient

9    date, then it should have been brought to the Court's attention

10   sooner than yesterday.  There are other people's schedules, not

11   just the Pursuit Parties' schedules, that we are dealing with

12   here.

13          I also believe -- and I'm not in my office, and people

14   know that several people are not in their offices, so we don't

15   have our complete files or notes in front of us.  But going

16   from memory, I believe that I made it clear that I didn't think

17   we should run up against the trial because it would postpone

18   everything.  And here we are, running up against the trial.

19          So I have concerns, significant concerns, over the way

20   this Court and other parties' schedules and this Court's orders

21   are being ignored, to some extent, by the Pursuit Parties.  So,

22   as I said, in isolation, the request seems reasonable.  But I'm

23   not sure that it does when I look at the last five months,

24   since this motion was filed.

25          And the fact that we have a greater price is just the

1    result of finally having the auction, at least as I see it.

2         So I think we're going to go forward with the hearing

3    on Monday.  The trustee will have to be able to show that the

4    Court should approve the sale.  If the trustee changes his

5    mind, that's something the trustee can consider.  And I -- but

6    I think, for the sake of process, we actually need to go

7    forward, based on what has happened in this case over the last

8    five months.

9         MR. CANE:  Your Honor, this is Peter Cane speaking for

10   the Pursuit Parties.

11        Just with respect to the deposition of the trustee,

12   which is something that we had covered at a couple of the other

13   conferences, we will not be able to take his deposition.  We've

14   tried --

15        THE COURT:  Did you --

16        MR. CANE:  -- to schedule it --

17        THE COURT:  Did you notice it for last week?

18        MR. CANE:  I believe that it was a topic of

19   conversations between Messrs. Felger and Nelson.

20        THE COURT:  Well, why didn't you notice it, and come

21   to me and say, they're not giving me a deposition?

22    (No verbal response)

23        THE COURT:  I mean, we do have -- there is -- there

24   are processes, there are ways to get depositions, when you know

25   you have a hearing coming up.  But we did build in time for

1    depositions.  And in fact, even with the delay, there was an

2    entire week where there could have been a deposition.

3            Again, sort of in isolation, it seems reasonable, but

4    it does not in the context of this case and where we have been.

5    So I understand the issue, but I'm going to go forward.

6            MR. MARTIN:  Your Honor, this is Craig Martin.

7            I think I at least understand the Court's ruling, and

8    we'll accept it and have nothing further for the Court, unless

9    the Court has something further for us.

10           THE COURT:  No.  Thank you.  I appreciate the papers,

11   the argument, and counsel all making themselves available.

12           And the reason I really had this -- decided to go

13   ahead and have this today, rather than hearing it over the

14   weekend, was because I felt counsel should know whether or not

15   we're going forward on Monday.  So I appreciate everyone

16   getting together on the phone call.

17           Any other questions from anyone?

18           MR. HARRIS:  Your Honor, this is Mr. Harris.  Thank

19   you very much.  We appreciate it.

20           COUNSEL:  Thank you, Your Honor.  Thank you.

21           THE COURT:  Thank you.  You all have a good day.

22           COUNSEL:  Thank you, Your Honor.  Thanks, Your Honor.

23   Thank you.

24       (Proceedings concluded at 4:29 p.m.)

25                         *****

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

In re:                                            :
                                                  :
PURSUIT CAPITAL MANAGEMENT, LLC,  :  Chapter 7
                                                  :
    Debtor.                                :  Case No. 14-10610 (LSS)
                                                  :
_____  :  Related D.I. No. 66

<div align="center">

**ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER**
**AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS**

</div>

AND NOW, this _27th_ day of August, 2015, upon consideration of the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Motion"), and all objections thereto, after notice and hearing, it is hereby

**ORDERED**, that for the reasons identified by the Court in its ruling on the record, the Motion is GRANTED; and it is further

**ORDERED**, that the Agreement by, between and among the Trustee and Alpha Beta Capital Partners, L.P., Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider, Lillian Schneider, individually and as the personal representative of the executor of the estate of Leonard Schneider, Reed Smith LLP, and Harris, O'Brien, St. Laurent and Chaudhry LLP to settle, transfer and assign certain claims, rights, and interests attached hereto as Exhibit "A" (the "Agreement") as modified herein below is hereby APPROVED; and it is further

**ORDERED**. that the Agreement is modified as follows:  except with respect to the UBS Claim and the Insider Avoidance Action, the Creditor Group will provide the Trustee with three business days notice before commencing any action in the Bankruptcy Court on behalf of the Debtor asserting claims that were not referenced in the Debtor's bankruptcy schedules. If the Trustee objects to the assertion of any such claim, then the Creditor Group shall obtain an Order

from the bankruptcy court before commencing any such action in the Bankruptcy Court. The standard for asserting such claims will be the "colorable claim" standard set forth in the Third Circuit's Cybergenics case, 330 F.3d 548, provided, however, that only the Trustee shall have standing to object.    With respect to the UBS Claim, the Creditor Group may pursue such non-scheduled claims without following the procedure described above, provided that the relief requested in such action will not result in the Debtor and/or the Estate or the Trustee being re-installed as a general partner of any of the Pursuit Funds, other than for the limited purpose of collecting funds it is due, including without limitation any incentive fee or carried interest.  If the proposed action requests such relief, then the Creditor Group shall follow the procedure for non-scheduled claims; and it is further

ORDERED, that notwithstanding anything to the contrary in the Agreement, all rights, claims and defenses that may be raised or asserted by the Pursuit Parties with respect to the UBS Litigation, the UBS Claim, the Debtor's Claims, the Insider Avoidance Claims and/or the Indemnification Claims, including, without limitation, any right to challenge standing or jurisdiction, are expressly reserved and preserved; and it is further

ORDERED, that nothing in this Order finds that any party prosecuting any claims assigned under the Agreement is exempt from filing employment and fee applications in these cases, or required to file employment and fee applications in these cases, which issues are not yet ripe; accordingly, all parties' rights with respect to those issues and/or requirements (if any) are hereby reserved.

**ORDERED**, that this Court shall retain exclusive jurisdiction with respect to any matters, claims, rights, or disputes arising from or relating to this Order and/or the Agreement.

Dated: Aug 27, 2015

LAURIE SELBER SILVERSTEIN
United States Bankruptcy Judge

# EXHIBIT 'A'

LEGAL\22166099\1

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
|  | : |  |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : | Case No. 14-10610 (LSS) |
| _____ | : |  |
|  | : |  |

<div align="center">

**AGREEMENT TO SETTLE, TRANSFER AND ASSIGN**
**CERTAIN CLAIMS, RIGHTS AND INTERESTS**

</div>

This agreement is made this 30th day of July 2015 by, between and among Jeoffrey L. Burtch, as Chapter 7 Trustee for the estate of Pursuit Capital Management, LLC (the "Trustee") for the "Estate" of the "Debtor"), on the one hand, and (i) Harris, O'Brien, St. Laurent & Chaudhry LLP (the "Harris Firm"), (ii) Reed Smith LLP ("Reed Smith"), (iii) Alpha Beta Capital Partners, L.P. ("Alpha Beta"), and (iv) Claridge Associates, LLC ("Claridge"), Jamiscott LLC ("Jamiscott"), Leslie Schneider, and Lillian Schneider, individually and as the personal representative of the executor of the estate of Leonard Schneider (the "Schneiders") (collectively, Alpha Beta, Claridge, Jamiscott and the Schneiders are the "Creditors") (the "Trustee," the "Harris Firm," "Reed Smith," and the "Creditors" are the "Parties").

WHEREAS, on April 7, 2014 (the "Petition Date") the Debtor commenced this case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code;

WHEREAS, on or about the Petition Date, the Trustee was appointed to serve as the trustee for the Estate of the Debtor, and since the time the 341 meeting was held and concluded on April 29, 2014, the Trustee has been serving as the permanent trustee in this case;

WHEREAS, on the Petition Date, the Debtor filed its Chapter 7 Bankruptcy Schedules and the Statement of Financial Affairs;

WHEREAS, the only assets listed on the Debtor's Bankruptcy Schedule B are (i) claims asserted in *Pursuit Investment Management, LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.*; Index No. 652457/2013 (Supreme Court of the State of New York) (the "New York Action"); and (ii) potential indemnification claims against Pursuit Capital Management Fund I, L.P. (the "Indemnification Claims"). These two assets are listed as having an "unknown" value;

WHEREAS, while no other assets are listed in the Bankruptcy Schedules, a footnote in the Statement of Financial Affairs reveals that gross income for calendar year 2011 in the amount of $645,571.22 was disbursed to the Debtor's members purportedly "in the ordinary course of business on 1/16/13" (the "Insider Avoidance Claim");

WHEREAS, the Debtor may have additional rights, claims and causes of action of any kind or nature, (including without limitation actions to recover for fraudulent conveyances or other transfers made without value or for less than fair value or for fees or its share of any carried interest), against the owners, managers, insiders, affiliates, members, successors, transferees and assignees of the Debtor (including, without limitation, Northeast Capital Management, LLC, Pursuit Partners, LLC, Pursuit Investment Management, LLC, Anthony Schepis, Frank Canelas and Ruth Canelas), against the Pursuit Capital Management Fund I, L.P or other partnership(s) of which the Debtor served as general partner or to which the Debtor rendered services, or against any other person or entity (such rights, claims and causes of action, together with the Insider Avoidance Claim, the "Debtor Claims");

2

WHEREAS, during the 341 meeting of creditors, the Debtor's representative testified without providing any backup that the Debtor owned no assets other than those disclosed in the Bankruptcy Schedules;

WHEREAS, during discussions with counsel for the Creditors, the Creditors stated that there is pending litigation in which various "Pursuit" entities have asserted claims against UBS Securities LLC and other defendants captioned *Pursuit Partners, LLC v. UBS AG*, D.N.X08 CV 4013452 S (Conn. Super. Ct.) (the "UBS Litigation"), and the Creditors believe that the Debtor has a valuable interest in the proceeds of any such claims as the general partner of the Pursuit Capital Management Fund I, L.P and other partnerships;

WHEREAS, the Creditors believe that Debtor has (i) a direct or indirect interest in the UBS Litigation, (ii) a direct or indirect interest in any recoveries of any kind from the UBS Litigation whether by settlement or judgment or otherwise (a "Recovery"), including without limitation through the payment, distribution or allocation of any such Recovery or any portion thereof to any partnership (or side pocket) of which the Debtor served as general partner, or to any successor or substitute general partner of any such partnership or side pocket, and /or (iii) an interest or claim to any fees or carried interest to be paid to the general partner of any funds (or side pockets) for which the Debtor served as general partner, including any payments, distributions or allocations made to any purported substitute or successor general partners of any such funds, including, without limitation, Northeast Capital Management, LLC) (such claims to be collectively called, (the "UBS Claim");

3

WHEREAS, the Estate currently has no funds with which to administer the Estate, let alone pursue the claims and litigation referenced hereinabove;

WHEREAS, the Creditors, the Harris Firm, and Reed Smith have made an offer (i) to settle the New York Action, and (ii) for the Creditors to pursue (initially at their own expense) the interests of the Debtor, the Trustee or the Estate, if any, in the Debtor Claims, the Indemnification Claims, and the UBS Claim;

WHEREAS, the Creditors are the only non-insider creditors[1] listed in Bankruptcy Schedules D, E or F; and

WHEREAS, after arm's length negotiation, the Parties have reached an agreement to settle, transfer and assign certain claims on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, stipulate and agree to settle, transfer and assign certain claims as set forth herein below.

1.      The recitals set forth in the "Whereas" clauses above are incorporated herein by reference.

2.      In exchange for:

---

[1] The only other "creditors" listed in Bankruptcy Schedule F are Messrs. Schepis and Canelas, the members of the Debtor, and the recipients of the funds giving rise to the Potential Avoidance Claim. They are listed as holding contingent, unliquidated indemnification claims.

4

(a) a cash payment by the Creditors, the Harris Firm and /or Reed Smith to the Trustee in the amount of one hundred eighty thousand and one dollars ($180,001) (the "Cash Payment"), plus

(b) a contribution to the Estate (the "Additional Consideration") by the Creditors of all net amounts recovered from

   (i)  the Insider Avoidance Claim,

   (ii)  the Debtor Claims; and

   (iii)  the UBS Claim,

which Additional Consideration, in the aggregate, the Creditors value at no less than $500,000.00, after payment of all fees and expenses, as set forth in Paragraph 3, *infra* (together, with the "Cash Payment" the "Total Settlement Consideration"),

the Trustee, on behalf of the Estate shall sell, transfer and convey to the Creditors, free and clear of all liens, claims and interests, all of the right, title and interest of the Debtor, the Trustee and /or the Estate in and to (i) Insider Avoidance Claim; (ii) the Debtor Claims, (iii) the Indemnification Claims, (iv) the UBS Claim, and (v) all books and records of the Debtor, in whatever format and wherever located (except such books and records that are protected by any applicable privilege). The Trustee may retain originals or copies of said books and records to the extent he determines they are necessary to complete the administration of the Estate. The Cash Payment shall be paid to the Trustee within twenty (20) days after the entry of a final Order approving this Agreement.

5

3.      The Creditors (or any one of the Creditors) shall be permitted (but not required) to bring the Insider Avoidance Claim, Debtor Claims and UBS Claims in the Bankruptcy Court, and are deemed to have standing to bring such claims in the Bankruptcy Court to the extent of applicable law.  The Creditors may assign, allocate, or transfer or convey amongst themselves the rights acquired hereto to the Insider Avoidance Claim, the Debtor Claims and the UBS Claims, including assigning to any one or more of the Creditors the rights to bring such claims, it being understood and agreed that the Insider Avoidance Claim, Debtor Claims, and the UBS Claim will be pursued on behalf of the bankruptcy Estate and any net recoveries will be property of the bankruptcy Estate to be distributed in accordance with the priorities established by the Bankruptcy Code.  The Creditors shall initially bear all of their own costs and expenses associated with doing so, and the costs and expenses of pursuing such claims (which shall not include the Cash Payment) shall be paid out of any proceeds.  Further, the Creditors shall (i) support the closing of this bankruptcy case notwithstanding the pendency of any adversary proceeding(s) with respect to the Insider Avoidance Claim, the Debtor Claims and UBS Claim, provided such closing does not result in dismissal of any then-pending adversary proceedings and (ii) pay the Trustee, out of any recovery or settlement of the Insider Avoidance Claim, the Debtor Claims and the UBS Claim all fees and costs reasonably incurred by the Estate and approved by the Court relating directly or indirectly to the pursuit of such claims in the Bankruptcy Court.  Notwithstanding the foregoing, the Trustee shall not move to close the chapter 7 case prior to April 7, 2016.  With regard to any proceedings related to the Insider Avoidance Claim, the Debtor Claims and the UBS Claim in the bankruptcy court:

6

(a)     No discovery shall be propounded upon, and no deposition shall be taken of, Jeoffrey L. Burtch, the Trustee;

(b)     Any and all net proceeds, if any, whether by verdict, judgment, settlement or other compromise – are the property of the Estate and shall be promptly remitted to the Trustee for Estate administration in accordance with the Bankruptcy Code; and

(c)     Any proposed settlement or compromise, whether in whole or in part, shall be submitted to the Bankruptcy Court for prior approval in accordance with Federal Rule of Bankruptcy Procedure 9019.

4.     Also, upon receipt of the Cash Payment in good funds, the New York Action shall be deemed settled and dismissed with prejudice with respect to claims that have been brought by the Debtor.   The Trustee shall execute a reasonable form of stipulation or notice that the Creditors, the Harris Firm, and Reed Smith will prepare and file in the New York Action marking the Debtor's claims brought in the New York Action settled and dismissed with prejudice.   Such stipulation shall include a release of (a) all claims currently brought by the Debtor in the New York Action, including without limitation all claims that have been or could be compelled to arbitration and (b) all claims that could have been brought by the Debtor against any of the Defendants (or their associated principals, officers, members, partners, agents, attorneys, employees or affiliates) in the New York Action, but shall not include a release of any claims that could be brought by Debtor against other Plaintiffs or other non-parties to the New York Action which shall be acquired hereunder by Creditors.

7

5.    The assignments, sales, transfers and conveyances hereunder are on an "as is where is" basis, and the Trustee makes no representation or warranty of any kind with respect to the Debtor Claims, the Indemnification Claims, the UBS Claim, or the existence or quality of any books and records.

6.    This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained here, and this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties.

7.    This Agreement may be executed in several counterparts which may be transmitted by either mail, facsimile, or electronic mail, each of which shall be deemed to be an original, so that all of which taken together shall constitute one and the same instrument.

8.    Each Party agrees to be responsible for and to bear its/his own costs, expenses and attorneys' fees incurred in connection with the negotiation of and entering into this Settlement Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees (it being understood that the Creditors may, as set forth above, deduct the fees, costs and expenses of pursuing any Insider Avoidance Claim, Debtor Claims or the UBS Claim from the proceeds of such claims.)

9.    This Agreement shall be governed by the laws of the State of Delaware and applicable federal law, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction. The Bankruptcy Court

8

shall retain jurisdiction over the enforcement of this Agreement and any disputes concerning the terms of this Agreement.

10.    Each Party acknowledges that the consideration referred to and the other terms of this Agreement do not constitute an admission or concession of liability or of any fact.

11.    Each person signing this Agreement represents and warrants that he or she has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of such Party and to bind his or her respective client or Party to the terms and conditions of this Agreement.

12.    This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted.

13.    Each Party represents and warrants that such Party has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel of its/his/her choosing with respect to this Agreement and all matters covered by it.

14.    This Agreement shall be submitted to the Bankruptcy Court by the Trustee through a motion to sell property of the estate pursuant to 11 U.S.C. § 363(b) and (f).  The Parties agree to reasonably cooperate with the Trustee to seek entry of the Order approving the Agreement, and agree to pose no objection, formal or informal, to the Trustee's motion seeking entry of the Order to the extent that the Order is consistent with the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

9

JEOFFREY L. BURTCH AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF
PURSUIT CAPITAL MANAGEMENT, LLC

ALPHA BETA CAPITAL PARTNERS, L.P.

By: John Scott, Reed Smith LLP
Its: Counsel

CLARIDGE ASSOCIATES, LLC

By: Jonathan Harris
Its: counsel, with authority to sign


JAMISCOTT LLC

By: Jonathan Harris
Its: counsel, with authority to sign


(Signatures Continue on Next Page)

10

LESLIE SCHNEIDER

_____
by: Jonathan Harris, her counsel with authority to sign

LILLIAN SCHNEIDER

_____
by: Jonathan Harris, her counsel with authority to sign

ESTATE OF LEONARD SCHNEIDER

_____
By: Jonathan Harris
Its: Counsel, with authority to sign


HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP

_____
By:  Jonathan Harris
      Managing Partner


REED SMITH LLP


_____
By:
Its:

11

LESLIE SCHNEIDER

_____
by: Jonathan Harris, her counsel with authority to sign

LILLIAN SCHNEIDER

_____
by: Jonathan Harris, her counsel with authority to sign

ESTATE OF LEONARD SCHNEIDER

_____
By: Jonathan Harris
Its: Counsel, with authority to sign

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP

_____
By: Jonathan Harris
    Managing Partner

REED SMITH LLP

_____
By:    Robert M. Abrahams, Esq., Schulte Roth & Zabel LLP
Its:    Counsel for Reed Smith, LLP

11

218



**Rabobank**

# Incoming Wire Confirmation

This serves as confirmation that an incoming wire was received on behalf of trustee Jeoffrey L. Burtch with the following account information.

**Incoming Wire:**

Incoming Wire Reference: 1283600273ES

Date: 2015-09-30

Time: 8:35 am

Amount: $180,001.00

**Case Information:**

Case Number: 14-10610

Case Name: Pursuit Capital Management, LLC

Account: 5013185166

**Sender:**

Name: HARRIS OBRIEN ST LAURENT AND/ JPMORGAN CHASE

ABA: 021000021

All wires received are credited to the account the same day. Funds are available for immediate withdrawal.

Should there be any questions or concerns please do not hesitate to contact the BMS Banking Center at:

*(800) 634-7734 option 8 Toll Free*

*(866) 678-5091 Fax*

*BMSBankingCenter@bms7.com*

# District of Delaware
# Claims Register

**14-10610-LSS Pursuit Capital Management, LLC**

| | |
|---|---|
| **Judge:** Laurie Selber Silverstein | **Chapter:** 7 |
| **Office:** Delaware | **Last Date to file claims:** 03/12/2015 |
| **Trustee:** Jeoffrey L. Burtch | **Last Date to file (Govt):** |

---

| Creditor: (9373526) | **Claim No: 1** | Status: |
|---|---|---|
| Claridge Associates, LLC, et al. | Original Filed | Filed by: CR |
| Jesse N. Silverman, Esquire | Date: 03/09/2015 | Entered by: EPOC Filer |
| Dilworth Paxson LLP | Original Entered | Modified: |
| 1500 Market Street | Date: 03/09/2015 | |
| Suite 3500E | | |
| Philadelphia, PA 19102 | | |

| Amount | claimed: | $6185747.60 | | |
|---|---|---|---|---|
| Unsecured | claimed: | $6185747.60 | | |

| History: | | | |
|---|---|---|---|
| Details | 1-1 | 03/09/2015 | Claim #1 filed by Claridge Associates, LLC, et al., Amount claimed: $6185747.60 (EPOC Filer) |

Description:

Remarks:

---

| Creditor: (7803172) | **Claim No: 2** | Status: |
|---|---|---|
| Frank Canelas | Original Filed | Filed by: CR |
| 34 East Putnam Avenue | Date: 03/09/2015 | Entered by: EPOC Filer |
| Suite 113 | Original Entered | Modified: |
| Greenwich, CT 06830 | Date: 03/09/2015 | |

| Amount | claimed: | $0.00 | | |
|---|---|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 2-1 | 03/09/2015 | Claim #2 filed by Frank Canelas, Amount claimed: $0.00 (EPOC Filer) |
| | 113 | 04/30/2015 | Objection to Claim 2 by Claimant(s) Frank Canelas (Claim No. 2).. Filed by Jeoffrey L. Burtch. Hearing scheduled for 6/3/2015 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 5/27/2015. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Certificate of Service) (Felger, Mark) |

Description:

Remarks: (2-1) Filer Comment: Unliquidated

---

| Creditor: (9373568) | **Claim No: 3** | Status: |
|---|---|---|
| Pursuit Capital Management Fund I, L.P. | Original Filed | Filed by: CR |
| 34 East Putnam Avenue | Date: 03/09/2015 | Entered by: EPOC Filer |
| Suite 113 | Original Entered | Modified: |
| Greenwich, CT 06830 | Date: 03/09/2015 | |

| Amount | claimed: | $0.00 | | |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| *History:* | | | |
| Details | 3-1 | 03/09/2015 | Claim #3 filed by Pursuit Capital Management Fund I, L.P., Amount claimed: $0.00 (EPOC Filer) |
| | 116 | 04/30/2015 | Objection to Claim 3 by Claimant(s) Pursuit Capital Management Fund I, L.P... Filed by Jeoffrey L. Burtch. Hearing scheduled for 6/3/2015 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 5/27/2015. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Certificate of Service) (Felger, Mark) |

| |
|---|
| *Description:* |

| |
|---|
| *Remarks:* (3-1) Filer Comment: Unliquidated |

---

| | | |
|---|---|---|
| *Creditor:* (9373569) Pursuit Investment Management, LLC 34 East Putnam Avenue Suite 113 Greenwich, CT 06830 | **Claim No: 4** *Original Filed Date:* 03/09/2015 *Original Entered Date:* 03/09/2015 | *Status:* *Filed by:* CR *Entered by:* EPOC Filer *Modified:* |

| |
|---|
| Amount claimed: $0.00 |

| | | | |
|---|---|---|---|
| *History:* | | | |
| Details | 4-1 | 03/09/2015 | Claim #4 filed by Pursuit Investment Management, LLC, Amount claimed: $0.00 (EPOC Filer) |
| | 117 | 04/30/2015 | Objection to Claim 4 by Claimant(s) Pursuit Investment Management, LLC.. Filed by Jeoffrey L. Burtch. Hearing scheduled for 6/3/2015 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 5/27/2015. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit b # 4 Exhibit C # 5 Certificate of Service) (Felger, Mark) |

| |
|---|
| *Description:* |

| |
|---|
| *Remarks:* (4-1) Filer Comment: Unliquidated |

---

| | | |
|---|---|---|
| *Creditor:* (9373570) Pursuit Opportunity Fund I, L.P. 34 East Putnam Avenue Suite 113 Greenwich, CT 06830 | **Claim No: 5** *Original Filed Date:* 03/09/2015 *Original Entered Date:* 03/09/2015 | *Status:* *Filed by:* CR *Entered by:* EPOC Filer *Modified:* |

| |
|---|
| Amount claimed: $0.00 |

| | | | |
|---|---|---|---|
| *History:* | | | |
| Details | 5-1 | 03/09/2015 | Claim #5 filed by Pursuit Opportunity Fund I, L.P., Amount claimed: $0.00 (EPOC Filer) |
| | 115 | 04/30/2015 | Objection to Claim 5 by Claimant(s) Pursuit Opportunity Fund I, L.P... Filed by Jeoffrey L. Burtch. Hearing scheduled for 6/3/2015 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 5/27/2015. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Certificate of Service) (Felger, Mark) |

| |
|---|
| *Description:* |

| |
|---|
| *Remarks:* (5-1) Filer Comment: Unliquidated |

---

| | | |
|---|---|---|
| *Creditor:* (7803171) Anthony Schepis | **Claim No: 6** *Original Filed* | *Status:* *Filed by:* CR |

| 34 East Putnam Avenue<br>Suite 113<br>Greenwich, CT 06830 | *Date*: 03/09/2015<br>*Original Entered*<br>*Date*: 03/09/2015 | *Entered by:* EPOC Filer<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $0.00 | | ‖‖ |
|---|---|---|---|---|

**History:**

| Details | 6-1 | 03/09/2015 | Claim #6 filed by Anthony Schepis, Amount claimed: $0.00 (EPOC Filer) |
|---|---|---|---|
| | 114 | 04/30/2015 | Objection to Claim 6 by Claimant(s) Anthony Schepis.. Filed by Jeoffrey L. Burtch. Hearing scheduled for 6/3/2015 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 5/27/2015. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Certificate of Service) (Felger, Mark) |

**Description:**

**Remarks:** (6-1) Filer Comment: Unliquidated

| Creditor: (9374025)<br>Alpha Beta Capital Partners, L.P.<br>c/o John L. Scott, Esq.<br>Reed Smith LLP<br>599 Lexington Avenue<br>New York, NY 10022 | **Claim No: 7**<br>*Original Filed*<br>*Date*: 03/10/2015<br>*Original Entered*<br>*Date*: 03/10/2015 | *Status:*<br>*Filed by:* CR<br>*Entered by:* EPOC Filer<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $2939902.66 | | ‖‖ |
|---|---|---|---|---|
| Unsecured | claimed: | $2939902.66 | | ‖‖ |

**History:**

| Details | 7-1 | 03/10/2015 | Claim #7 filed by Alpha Beta Capital Partners, L.P., Amount claimed: $2939902.66 (EPOC Filer) |
|---|---|---|---|

**Description:**

**Remarks:**

# Claims Register Summary

**Case Name:** Pursuit Capital Management, LLC
**Case Number:** 14-10610-LSS
**Chapter:** 7
**Date Filed:** 03/21/2014
**Total Number Of Claims:** 7

| | |
|---|---|
| **Total Amount Claimed*** | $9125650.26 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | | |

1

2   UNITED STATES BANKRUPTCY COURT

3   DISTRICT OF DELAWARE

4   Case Nos. 08-12264 (CSS) and 08-12265 (CSS)

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7   AMC INVESTORS, LLC,

8            Debtor.

9   - - - - - - - - - - - - - - - - - - - - -x

10  In the Matter of:

11  AMC INVESTORS II, LLC,

12            Debtor.

13  - - - - - - - - - - - - - - - - - - - - -x

14                  U.S. Bankruptcy Court

15                  824 North Market Street

16                  Wilmington, Delaware

17

18                  May 31, 2011

19                  2:07 PM

20

21  B E F O R E:

22  HON. BRENDAN L. SHANNON

23  U.S. BANKRUPTCY JUDGE

24

25  ECR OPERATOR:  LESLIE MURIN

Page 36

1   was obtained quite close in time, before the filing of this

2   bankruptcy case.  And that is, in our view, the triggering

3   event that creates -- that starts the running of the statute of

4   limitations for any claim by the guarantors against Mr. Glazer,

5   Mr. Rial and the others.

6            Thank you, Your Honor.

7            THE COURT:  All right.  Thank you.  All right.  Okay.

8   I'm going to need just a couple minutes to organize my notes

9   and I will return and rule.  All right.  Thanks very much,

10  counselor.

11          (Recess from 2:58 p.m. until 3:13 p.m.)

12          THE COURT:  Thanks.  The matter before the Court is

13  the request of Eugenia for derivative standing and before I

14  rule on the motion I would make an observation that I've made

15  at other times but I just have to say one of the real pleasures

16  of this job is able counsel arguing interesting and sometimes

17  novel questions.  And for that I appreciate the quality of the

18  briefing, even on an expedited basis, and particularly the

19  quality of the argument today.

20          I will -- I have reviewed all of the papers and the

21  attachments and other submissions.  I have also heard argument.

22  For the reasons that I will state, I'm prepared to grant the

23  motion.

24          The standard for the grant of derivative standing is

25  not in material dispute today.  Under the Cybergenics case the

1   movant must demonstrate that it possess a -- wishes to pursue a

2   colorable claim, that the trustee has failed to pursue that

3   claim and that leave of the bankruptcy court has been obtained

4   to pursue the claim.

5          I will start with the threshold proposition which I'm

6   really intrigued by, and I appreciate the argument, again, from

7   counsel on the issue.  It is a much more significant or complex

8   question than I would have originally assessed, but I am

9   satisfied that Cybergenics is not limited to Chapter 11 cases

10  and I've carefully read both Cybergenics as well as the cases

11  cited to me by the parties, particularly the Cooper and Hannah

12  cases.

13         I have construed and applied the Cybergenics case in

14  Chapter 11 cases on numerous occasions.  And I've also given

15  serious consideration to the debtors' argument that it doesn't

16  apply in Chapter 7.  And while I will acknowledge that the

17  uniform existence of a trustee in Chapter 7 cases may give rise

18  to what I think is fairly described as a more stringent

19  application of the standard, I don't believe that the existence

20  of the Chapter 7 trustee precludes derivative standing for a

21  creditor.

22         And I will further note that I have carefully reviewed

23  both the Cooper and Hannah cases, which I note -- and I'd note

24  that Judge Jernigan, at page 815 of the Cooper case, having

25  rejected the proposition would, at least observed, I think

1    consistent with my comments today, that if indeed derivative

2    standing can occur under Chapter 7, that it would require a

3    substantial showing and I think that it does require more

4    stringent standard and application.

5            And so, I am satisfied that actually the concept of

6    derivative standing is not precluded by Cybergenics and that it

7    can in fact serve a particularly valuable and functional

8    purpose in Chapter 7 cases where, for example, as here the

9    Chapter 7 trustee and the estate lacks sufficient funds to

10   pursue a stated cause of action.

11           Applying the test under Cybergenics, part one is

12   colorable claim and I will return to that.  The second element

13   is failure of the trustee to pursue or consent by the trustee,

14   and I think here we've met both of those constructions.  First,

15   the trustee has candidly stated in his submission that the

16   estate lacks the money to pursue the claim.  Second, I read the

17   trustee's response to constitute consent to pursuit of the

18   litigation.

19           Now as to colorable claim, obviously the third element

20   is bankruptcy court approval and as noted I am prepared to

21   grant the motion.  As to colorable claim, I'm satisfied that

22   the movant here has demonstrated that it wishes to pursue a

23   colorable claim.  The debtors have made, frankly, strong

24   arguments that these claims fail right out of the box, either

25   due to statute of limitations issues, due to collateral

Page 39

1    estople and/or due to application of the doctrine of in pari

2    delicto, each of which I would regard as affirmative defenses.

3    And I want to be clear that my ruling today granting derivative

4    standing and permitting the prosecution of this litigation or

5    the commencement of the litigation is not and should not be

6    construed, in any respect, as a commentary or pre-assessment on

7    the merits of these defenses identified by the debtors.

8         I fully expect that these arguments will be the

9    subject of robust, dispositive motion practice either under

10   Rule 12(b) or under Rule 56 in the very near future.  And it

11   may be that this litigation will have a prompt end, as the

12   debtors have predicted.

13        But I'm not satisfied today that the record before the

14   Court is sufficient to allow me to completely bar the

15   opportunity to present those claims and I'm further satisfied

16   that the claims have been identified in a sufficiently

17   colorable framework that I am prepared to grant Eugenia's

18   motion.

19        Mr. Ramos or Mr. Karlan, do you have a form of order

20   today?

21        MR. RAMOS:  Your Honor, we do have a form of order.

22   It is the form that actually we submitted with the motion.  I

23   note that the trustee had some suggestions or concerns

24   regarding the form of order.

25        THE COURT:  You know, where do you stand with that?

Page 40

1   Have you had an opportunity to have discussions with the

2   trustee on that?

3            MR. KARLAN:  Your Honor, I haven't.  There were four,

4   as I recall them.

5            THE COURT:  There were four separate points.

6            MR. KARLAN:  The first three are no problem at all.

7            THE COURT:  The fourth is indemnification.

8            MR. KARLAN:  It is and I haven't spoken to the client

9   about it.

10           THE COURT:  Why don't we do this; you have my ruling.

11  I'd like to give you, and particularly Mr. Burtch, the

12  opportunity to have a discussion.  I can understand why you

13  didn't have a big back and forth on that question prior to the

14  Court ruling.  And if there are issues you can get me on the

15  phone but if you can settle on a form of order and I'd ask,

16  obviously, that you run it past counsel for the debtors as

17  well, Mr. Miller and Ms. Sawczuk, then I'll entertain it under

18  COC and if there are issues you can get me on the phone, okay?

19           MR. KARLAN:  Thank you.

20           THE COURT:  Mr. Miller?

21           MR. MILLER:  Your Honor, I need to discuss this with

22  our client but I suspect that we may wish to appeal this.

23           THE COURT:  I understand.

24           MR. MILLER:  So could Your Honor put in a place a stay

25  of the litigation once its filed, for some period of time, in

UNITED STATES BANKRUPTCY COURT
IN THE DISTRICT OF NEW JERSEY

IN RE:                          )   Case No. 14-22654
                                )
                                )
REVEL AC, INC.,                 )
                                )   Camden, New Jersey
                    Debtor.     )   March 4, 2015
                                )   2:32 p.m.


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE GLORIA M. BURNS
UNITED STATES CHIEF BANKRUPTCY JUDGE

For the Debtor:         JOHN CUNNINGHAM, ESQUIRE
                        EVAN M. GOLDENBERG, ESQUIRE
                        WHITE & CASE, LLP
                        Wachovia Financial Center
                        Suite 4900
                        200 South Biscayne Blvd.
                        Miami, FL  33131

                        MICHAEL VISCOUNT, ESQUIRE
                        JOHN STROCK, ESQUIRE
                        FOX ROTHSCHILD, LLP
                        2000 Market Street, 20th Floor
                        Philadelphia, PA  19102-3222


For the Committee:      WARREN USATINE, ESQUIRE
                        RYAN JARECK, ESQUIRE
                        COLE SCHOTZ
                        900 Third Avenue, 16th Floor
                        New York, NY 10022


For Casino Reinvestment     PATRICK McAULEY, ESQUIRE
Development Authority:       CONNELL FOLEY
                            85 Livingston Avenue
                            Roseland, NJ 07865


For Amenity Tenants:        ROBERT SCHECHTER, ESQUIRE
                            WARREN MARTIN, ESQUIRE
                            RACHAEL PARISI, ESQUIRE
                            PORZIO BROMBERG & NEWMAN
                            29 Thanet Street
                            Princeton, NJ 08540

1          MR. CUNNINGHAM:  Thank you, Your Honor.  Your Honor,

2    on the very first day of this case, on June 19th, I came

3    before you, and I said it's time, it's time for Revel to be

4    sold and that this is a sale case.  Your Honor knows better

5    than anyone in this courtroom that it's been a long process.

6    It has been almost nine months, and we have tried everything

7    in our power to sell Revel.

8          We had two failed auctions, the first one in August.

9    Not a single qualified bidder showed up.  The one that we did

10   get a winning bid Your Honor approved, Brookfield, they

11   walked.  Polo North then walked on its backup bid.  It's been

12   a long and arduous process.

13         I harken upon the words of Judge Simandle in his

14   ruling that actually affirmed Your Honor's ruling in which he

15   called Revel a catastrophically failed casino hotel concept,

16   and it certainly has been that.  As a result, it's been very

17   difficult to get a buyer in this case, but it's not for lack

18   of trying.  From the debtor's point of view, all we can do is

19   lead the horse to water.  We can't make it drink.

20         THE COURT:  Well, let me ask you a couple questions.

21   First of all --

22         MR. CUNNINGHAM:  Yeah.

23         THE COURT:  -- what's this thing about a breakup

24   fee?  There's no breakup fee in this agreement, and I think I

25   dealt with the breakup fee that was in the Brookfield one

 1   already.

 2              MR. CUNNINGHAM:  Yes.  Let me -- let me discuss the

 3   breakup fee, Your Honor.  Your Honor's September 15th modified

 4   procedures order gave a breakup fee to Polo North if there was

 5   a consummation of a alternative transaction.

 6              THE COURT:  Right.

 7              MR. CUNNINGHAM:  So if we had closed with Polo --

 8   I'm sorry -- with Brookfield, arguably --

 9              THE COURT:  Polo North.

10              MR. CUNNINGHAM:  -- Polo North would have been

11   entitled to the $3 million breakup fee.  Technically, Your

12   Honor, with respect to their backup bid, it still -- if we

13   displaced them while we were trying to close with them on the

14   backup bid and another buy came along, it still would be an

15   alternative transaction that arguably could trigger the

16   $3 million breakup fee.  In other words, it wasn't just linked

17   to Brookfield.  It's -- if while we're under contract and

18   proceeding to closing with Mr. Straub we terminate the

19   agreement and go with another bidder.

20              THE COURT:  Well, but that deal was for

21   $91.45 million, and this one is for 82.  So, I mean, you know,

22   it hasn't come up before.  The first time I heard it was on

23   the testimony today, but, I mean, that's another issue that

24   calls into question whether I should approve this bid, and as

25   Mr. Martin pointed out, there are a number of conditions on

Cunningham - Argument                          120

1   there that would then set aside the order that I entered that

2   determined at your request that the $10 million deposit was

3   forfeited as part of the failure to close and the termination

4   of the agreement.

5              MR. CUNNINGHAM:  Right.

6              THE COURT:  Now, I know that in some ways, some

7   defaults, it brings it back to the -- to what it was before,

8   but on some others, then basically, that ruling that I -- that

9   I made goes away.  So I guess my -- and my other things is I

10  don't really understand the -- what you call the fiduciary

11  out.

12             MR. CUNNINGHAM:  Okay.

13             THE COURT:  So are you telling me that if I approve

14  this today --

15             MR. CUNNINGHAM:  Yes.

16             THE COURT:  -- then the board can -- of the debtor

17  can decide themselves whether to go with some other deal

18  notwithstanding the fact the Court approved this deal?

19             MR. CUNNINGHAM:  No.  What we would propose, Your

20  Honor, is if the Board were to exercise the fiduciary out, we

21  would come back before Your Honor and say we have a superior

22  proposal that we believe in the --

23             THE COURT:  So --

24             MR. CUNNINGHAM:  -- since our fiduciary duties are

25  to maximize value --

 1            THE COURT:  Right.

 2            MR. CUNNINGHAM:  -- that this is a proposal, and we

 3   would ask the Court.  Of course we would have to come back to

 4   the Court.

 5            THE COURT:  Right.  Okay.  So then that wouldn't be

 6   something the Court was determining.  It's something that the

 7   -- that the debtor would be determining.

 8            MR. CUNNINGHAM:  In te first instance, the debtor

 9   would have to determine.  We also would consult obviously with

10   their consultation parties, Wells Fargo, the Committee about

11   doing that.  I mean, we wouldn't exercise that -- that

12   fiduciary out lightly, but if we were presented with

13   something, if somebody wants to pay a billion dollars for

14   Revel, we can't turn that down as a debtor in bankruptcy.  We

15   must -- and we --

16            THE COURT:  Right, because --

17            MR. CUNNINGHAM:  -- negotiate for the fiduciary out.

18            THE COURT:  -- because you're -- right, because

19   you're required to get the highest and best offer.

20            MR. CUNNINGHAM:  That's right, Your Honor.

21            THE COURT:  Okay.  This offer that you want me to

22   approve today, it's not supposed to close until the end of

23   March.

24            MR. CUNNINGHAM:  Correct.

25            THE COURT:  This basically came on, I don't know, it

1    was to be how many days afterwards, but we had a hearing.  I

2    granted your request to authorize termination, and you

3    indicated that there was some interest out there.

4              MR. CUNNINGHAM:  Yes.

5              THE COURT:  Why not give it a little more time to

6    see if some of it might be as good as or better than this

7    offer?  There are certain conditions in this offer that I am

8    not crazy about.

9              Now, if we give a little time and ultimately, I

10   determine that it's probably in the best interest of the

11   estate based on the fact that the numbers could tumble

12   afterwards and the issues with conversion, I hear all that,

13   but what I'm saying is other bidders got very -- and I think

14   that's -- that's what I'm hearing from the objectors today.

15             MR. CUNNINGHAM:  Right.

16             THE COURT:  All right?  Other bidders got very

17   little chance to come forward and show why they could be a

18   better deal.  So why is that not something that we should

19   consider or why -- the Court shouldn't consider that before I

20   make a final ruling?  I may agree with you that those are not

21   as good, you know, but your witnesses testified.  There wasn't

22   a lot of time.  They really didn't have a chance to vet out

23   this new interested party that wasn't around at the last time

24   for whatever reason, but, you know, it's pretty much out in

25   the news there that this -- this debtor is for sale, and if

 1    there's somebody who wants to match or improve or -- or offer

 2    even something less, there's always the -- I think it

 3    strengthens your case that this is the best deal that the

 4    debtor can get today, but, you know, I did this on shortened

 5    time at your request, but -- and if closing had to be

 6    tomorrow, maybe that would be something I'd have to take into

 7    consideration, but there is a lot of litigation expense the

 8    debtor has to undertake under this new agreement, which the

 9    original agreement didn't have, because closing was supposed

10    to take place by February 9th.  So now the debtor has to do

11    more -- more work.

12           You know, I have issues and questions about the deal

13    that gives up the 2013 tax credit when the likelihood of

14    success would seem to me -- and I don't know anything about

15    that program or that law -- would be stronger for 2013 when

16    the debtor actually operated for the full year than 2014 when

17    it only operated for part of the year and 2015 when it didn't

18    operate at all.  So -- and the debtor still has to do all the

19    work.  So that's another concern I have about the -- I don't

20    know that much about the IDEA litigation.  So I'm not going to

21    spend a lot of time on that.

22           MR. CUNNINGHAM:  Sure.

23           THE COURT:  But approving the sale today I think is

24    premature, because I don't know that there's enough here for

25    me to make that call based on what you presented.  You know,

Cunningham - Argument                    124

1    Mr. Gwynne wanted to address the Court today, and I don't know

2    if he'll need to when I finish my discussion today, but the

3    people who are interested were interested enough to come out

4    to New Jersey, to hire him to come in here.  Why not explore

5    that?

6          MR. CUNNINGHAM:  Your Honor, and I -- I understand,

7    and I was anticipating Your Honor making that comment, because

8    you're right.  I did hear that loud and clear from the

9    objector.

10          THE COURT:  And you know what?  You know, like I

11    know that every offer comes to fruition, and there has been

12    lots of interest over time, but the numbers are different now.

13    The situation is different now.  There is -- you know, the

14    debt to the -- on the DIP loan is different now.  There is

15    just a lot of changes now in what's happening with the case,

16    and before I feel comfortable in saying this is in the best

17    interest the estate, I need to be convinced that it is the

18    best deal the debtors can get --

19          MR. CUNNINGHAM:  I understand.

20          THE COURT:  -- because it has a lot of negatives in

21    my mind.

22          MR. CUNNINGHAM:  I understand, Your Honor.  I think

23    from the debtor's standpoint, the one -- and I want to point

24    out this one provision.  This is our most urgent concern,

25    because if Your Honor is going to decide this later, puts this

                    Cunningham - Argument                          125

1    off, I recognize March 31st is a ways away.

2              THE COURT:  Couple weeks.  I mean --

3              MR. CUNNINGHAM:  Couple weeks.

4              THE COURT:  -- I'm not saying I'm going to put this

5    off for a long time, but, you know, maybe a little bit of time

6    to see if this offer that's here is a good one or if there's

7    something else out there that might be -- you know,

8    truthfully, if you could come up with an offer that was more

9    palatable -- I'm going to use that word -- to the objectors,

10   maybe they wouldn't object.  Maybe it would be easier to get

11   it through.  Maybe it vv

12             MR. CUNNINGHAM:  I --

13             THE COURT:  -- could resolve some of the appeals

14   issues that are going on.  I'm not saying that it will.

15             MR. CUNNINGHAM:  Yes.

16             THE COURT:  But until you look at that, until the

17   debtors -- the debtor looks at it, until they consider whether

18   it might be something worth considering and be able to address

19   that, you know, it's -- the hearing is quick --

20             MR. CUNNINGHAM:  Right.

21             THE COURT:  -- and I think it -- you know, the

22   issues involved here and the consideration that is necessary -

23   - and I spent a lot of time on this over the last few days

24   reading all these binders that you've provided.

25             MR. CUNNINGHAM:  Right.

1          THE COURT:  And as I said, I have a lot of

2    questions, but the big question that I have is is this in the

3    best interest, and I can't tell that yet when there is at

4    least a inkling of some interest that might be good --

5          MR. CUNNINGHAM:  Right.

6          THE COURT:  -- and I don't know the answer to that.

7          MR. CUNNINGHAM:  Right.  Your Honor, I understand

8    your point.  I can tell you -- and I know this personally, and

9    the testimony you heard was we've had many inklings.  We've

10   had many of these expression submissions, people coming out of

11   the wood works.  We're not turning anyone down, but we want

12   the certainty that we've never had, which is what we have

13   today.  I understand Your Honor's --

14         THE COURT:  Well, you have a little bit of time to

15   get that certainty --

16         MR. CUNNINGHAM:  I understand.

17         THE COURT:  -- and if -- you know, if this deal and

18   none of the others that are out there are the best, then I'll

19   have to consider whether -- you know, I agree with you, and,

20   you know, the testimony -- I generally don't think Chapter 7

21   is a good thing when -- you know, I mean, I -- you know, I

22   honestly -- I've said this before.  I don't think everybody

23   intended we would be here now.  I certainly didn't.  I don't

24   think anybody did.  I don't think the debtor did.  I don't

25   think the parties -- the objecting parties thought that.  I

 1   thought -- I think they thought something would happen --

 2            MR. CUNNINGHAM:  Right.

 3            THE COURT:  -- in the interim, but here we are with

 4   what we have today, and I think in order for me to feel

 5   comfortable, you need to satisfy me that every -- every stone

 6   has been unturned to find the best deal.

 7            MR. CUNNINGHAM:  Understood, Your Honor.  I would

 8   say if we're going to continue this hearing, and I think

 9   that's the words from -- from the debtor's point of view we

10   need to, because under that provision on termination, which

11   you heard --

12            THE COURT:  Right.

13            MR. CUNNINGHAM:  -- the witnesses discuss, its

14   automatic termination null and void, it provides --

15   automatically terminates if the approval order is not entered

16   by the approval order outside date and that's --

17            THE COURT:  Which is --

18            MR. CUNNINGHAM:  -- a defined term.

19            THE COURT:  Okay.  What's the --

20            MR. CUNNINGHAM:  It says the later of February 27th

21   -- obviously, that's gone -- or the date determined by the

22   Bankruptcy Court due to scheduling as the hearing date for the

23   entry or denial of the approval order.  So Your Honor set a

24   hearing date today.  If you continue to schedule a further

25   hearing, the -- our --