## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>PURSUIT CAPITAL<br>MANAGEMENT, LLC,<br><br>        Debtor. | Bankruptcy Case No. 14-10610<br>(LSS) |
| PURSUIT PARTIES,<br><br>        Appellants,<br><br>    v.<br><br>JOEFFREY L. BURTCH, CHAPTER 7<br>TRUSTEE,<br><br>        Appellee. | Case No. 1:15-cv-00801-RGA |

### <u>PURSUIT PARTIES' REPLY BRIEF</u>

R. Craig Martin, Delaware Bar No. 5032
craig.martin@dlapiper.com
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801-1147
Telephone:  302.468.5700
Facsimile:   302.394.2341

*Attorneys for Appellants, Pursuit Parties:*
*Anthony Schepis, Frank Canelas,*
*Pursuit Investment Management, LLC,*
*Pursuit Opportunity Fund I, L.P., and*
*Pursuit Capital Management Fund I, L.P.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

REPLY ARGUMENT .......................................................................................3

     I.     This Appeal Is Not Moot And The Court May Decide It .....................3

          A.     When a sale is not conducted in good faith, the
                Purchaser does not benefit from the protection
                in Section 363(m). ........................................................................3

          B.     Alternatively, this appeal is not moot because
                the Court can enter relief that does not affect
                the validity of the sale. .................................................................9

     II.     The Trustee May Not Sell His Fiduciary Duty To Prosecute
          Claims To A Single Aggrieved Creditor.............................................11

     III.     The Pursuit Parties Were Not Allowed To Depose The
          Trustee In Connection With The Sale Hearing, Despite
          Assurances That They Would Be Permitted To Do So .....................20

     IV.     When The Trustee Modified The Bidding Procedures To
          Call For Sealed Bids There Were No Longer "Clearly
          Established" Procedures That Would Justify The Trustee's
          Refusal To Consider Higher Bids .....................................................21

CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cinicola v. Scharffenberg,*
    248 F.3d 110 (3d Cir. 2001) ............................................................................10

*Ferrari N. Amer., Inc. v. Sims (In re R.B.B., Inc.),*
    211 F.3d 475 (9th Cir. 2000) ...........................................................................8

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
    530 U.S. 1 (2000) ......................................................................................13, 14

*In re Abbotts Dairies of Pa., Inc.,*
    788 F.2d 143 (3d Cir. 1986) ..........................................................................3, 5

*In re AMC Invs.,*
    2012 WL 868775 (D. Del. March 14, 2012) ...................................................16

*In re AMC Invs., LLC,*
    Case No. 08-12264 (Bankr. D. Del. June 2, 2011) ..............................16, 17, 19

*In re Bigler, LP,*
    443 B.R. 101 (Bankr. S.D. Tex. 2010) ............................................................22

*In re Family Christian, LLC,*
    533 B.R. 600 (Bankr. W.D. Mich. 2015) ..........................................................7

*In re Hannah,*
    316 B.R. 57 (Bankr. D. N.J. 2004) .............................................................13, 15

*In re ICL Holding Co., Inc.,*
    802 F.3d 547 (3d Cir. 2015) .....................................................................3, 9, 10

*In re M Capital Corp.,*
    290 B.R. 743 (9th Cir. BAP 2003) ....................................................................5

*In re Optim Energy, LLC,*
    527 B.R. 169 (D. Del. 2015) ...........................................................................18

*In re Parirokh,*
    Case No. DG 11-05409 (Bankr. W.D. Mich. May 2, 2013) .............................13

*In re Sandhill, Inc.*,
   304 B.R. 692 (E.D. Pa. 2004) ..........................................................................16

*In re Sax*,
   796 F.2d 994 (7th Cir. 1986) ..............................................................................9

*In re Tempo Tech Corp.*,
   202 B.R. 363 (D. Del. 1996) ...............................................................................5

*In re Weyandt*,
   544 Fed. Appx. 107 (3d Cir. 2013) ....................................................................13

*Knapper v. Bankers Trust Co. (In re Knapper)*,
   407 F.3d 573 (3d Cir. 2005) .......................................................................*passim*

*Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*,
   141 F.3d 490 (3d Cir. 1998) ..............................................................................10

*Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In
   re Cybergenics Corp. (Cybergenics I)*,
   226 F.3d 237 (3d Cir. 2000) .........................................................................12, 13

*Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In
   re Cybergenics Corp.) (Cybergenics II)*,
   330 F.3d 548 (3d Cir. 2003) ......................................................................*passim*

*Petroleum & Franchise Funding LLC v. Bulk Petroleum Corp.*,
   435 B.R. 589 (E.D.Wis.2010) .............................................................................8

*Pittsburgh Food & Bev. v. Ranallo*,
   112 F.3d 645 (3d Cir. 1997) ...............................................................................9

*PW Enterps., Inc. v. North Dakota Racing Comm'n In re Racing Servs., Inc.
   (In re Racing Svcs., Inc.)*,
   540 F.3d 892 (8th Cir. 2008) .............................................................................17

*The Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland
   Dev. Grp., Inc.)*,
   16 F.3d 552 (3d Cir. 1994) ................................................................................10

**STATUTES**

11 U.S.C. § 328 ........................................................................................14

11 U.S.C. § 364 ......................................................................................9, 14

11 U.S.C. § 363(b) ...................................................................................17

11 U.S.C. § 363(m) ............................................................................*passim*

11 U.S.C. § 544(b) ...................................................................................13

## PRELIMINARY STATEMENT

This appeal raises serious issues regarding how chapter 7 trustees should treat bidders under the Bankruptcy Code.  This issue routinely arises in this district.  Here, the Pursuit Parties[1] participated in an auction under court ordered procedures, which the Trustee impermissibly modified.  As a result, he discriminated against the Pursuit Parties and selected a lower bid.

As explained in the Opening Brief, the auction was flawed because the Trustee lacks authority to sell Estate Claims, he did not submit any evidence the Estate Claims were "colorable," the Pursuit Parties were not allowed to depose the Trustee even though they were promised a deposition, and the bankruptcy court usurped the Trustee's business judgment regarding bidding.  This resulted in a deeply flawed auction process that deserves this Court's scrutiny and its grant of this Appeal.

In response, the Trustee argues this Appeal is moot.  This argument fails, however, because the sale was not conducted in good faith, and, alternatively, this Court may decide this Appeal without affecting the sale's validity by deciding the Litigation Consortium has no power to prosecute the Estate Claims even though it may own them.

---

[1]     Capitalized terms shall have the meaning given them in the Opening Brief.

The Trustee next argues he may sell the Estate Claims by conflating derivative standing case law with case law that prohibits the sale of the Trustee's associated duty of prosecution. The Trustee has not rebutted the case law cited by the Pursuit Parties on the point; instead, he relies on an unpublished case addressing derivative standing that supports the Pursuit Parties' position and demonstrates the bankruptcy court below failed to apply the appropriate standard of review.

The Trustee closes by making arguments based on material not part of the record on the Sale Hearing and that must be disregarded. For example, the Trustee argues that the Pursuit Parties were engaged in delay that supposedly justified denial of their request to depose the Trustee. Similarly, the Trustee argues that the Litigation Consortium's bid was better than the Pursuit Parties' bid; however, not only was no valuation evidence offered to support this, the bankruptcy court did not so find, finding instead that the Litigation Consortium's last bid was better than its first bid.

This Reply Brief address these issues and sets forth additional argument in support of its requests that this Court grant this Appeal.

## REPLY ARGUMENT

**I.     This Appeal Is Not Moot And The Court May Decide It.**

**A.     When a sale is not conducted in good faith, the purchaser does not benefit from the protection in Section 363(m).**

The Third Circuit has stated that "while § 363(m) aims to make sales of estate property final and inject predictability into the sale process, we don't think it does so at all costs and certainly not for non-purchasers." *In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015). The Third Circuit interprets Bankruptcy Code § 363(m) mootness to apply only when an auction lacks "misconduct" that would destroy a "purchaser's good faith status," which good faith does not exist if a purchaser colludes with the trustee or when the trustee "attempts to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-48 (3d Cir. 1986).

In the Opening Brief, the Pursuit Parties identified why the sale was not conducted in good faith and how they were discriminated against during the auction. (*See* Op. Br. at 21, 33-35.) The underlying facts regarding the auction are undisputed. (*Compare* Op. Br. 5-17 *with* Ans. Br. 8-18.) The Trustee does not address the "good faith" aspect of Section 363(m) other than in a conclusory footnote and in a passing parenthetical. (Ans. Br. at 19 n.7 & 24.) Instead, the Trustee admits the discrimination but argues it was justified, (*Id.* at 35-36), and then argues that the Litigation Consortium acted in good faith and incorrectly

contends that the Pursuit Parties do not dispute the Bankruptcy Court's "determination that the parties acted in good faith." (*Id*. at 36 & n.17.)  This is wrong because the Trustee discriminated against the Pursuit Parties in the conduct of the auction.  Indeed, the bankruptcy court sanctioned this discrimination and, having found it occurred, justified it on the ground that the auction procedures permitted modified bidding,[2] to which the Pursuit Parties had not objected, and that because the Pursuit Parties bid contrary to the auction procedures, they could not object to the change of procedures.  (Op. Br., App., Ex. 4 at 13:22-14:5.)  By this logic, the Pursuit Parties should not have bid and just objected to the bid at the Sale Hearing, then they would have prevailed because the bid would have been obtained contrary to the auction procedures.  This is nonsense and the bankruptcy court's pre-textual justification of the Trustee's discrimination against the Pursuit Parties' is unjustified and reversible.

Importantly, the bankruptcy court did not find that the auction was conducted in good faith but only that the "parties acted in good faith" because their negotiations were conducted at arm's-length.  (*Id*. at 11:22 to 12:1.)  This finding, however, was not supported by evidence and does not address whether the auction

---

[2]    The bankruptcy court did not find that the Trustee provided evidence that such modification was required to enable him to fulfill his fiduciary duties as the auction procedures required.

was conducted in good faith.[3]  The lack of evidence on good faith and the Trustee's admission that he treated the Pursuit Parties differently demonstrates the Trustee did not carry its burden of proof on good faith.[4]  For this reason, the appeal is not moot.  *See In re M Capital Corp.*, 290 B.R. 743, 749 (9th Cir. BAP 2003) (unstayed sale order not moot because appellate court cannot presume purchaser's "good faith" from silent record, adding that presumption would invert burden of proof); *accord Abbotts Dairies,* 788 F.2d at 149-50 (remanding case where no evidence of good faith was put on but bankruptcy court instead presumed good faith because of an auction); *see also In re Tempo Tech Corp.*, 202 B.R. 363, 367 (D. Del. 1996) ("where the good faith of the purchaser is at issue, the district court is required to review the bankruptcy court's finding of good faith before dismissing any subsequent appeal as moot under section 363(m).")

The Trustee makes new arguments based on material not submitted at the Sale Hearing, namely that the Pursuit Parties were trying to delay the auction and that perception justified his modification of the auction procedures.  Not only did

---

[3]     The only evidence that was offered by the Trustee was a proffer.  (*See* Op. Br. App., Ex. 1 at 17:21-24:15.)  The testimony was factual and did not contain a single statement regarding good faith.

[4]     In the Answering Brief, the Trustee admits he negotiated with the Litigation Consortium **after** the sealed bid deadline and that he found their bid better than the Pursuit Parties' bid because they agreed to contribute proceeds from the Estate Claims.  (Ans. Br. at 35-36.)  This new term was not disclosed to the Pursuit Parties until the Sale Hearing where they were denied the chance to bid against it.

the Trustee not testify one iota about how the change in auction procedures allowed him to meet his fiduciary duties, the Court cannot consider the material regarding the supposed delay.[5]  Moreover, the **record** does not reflect any delay. Rather, the Trustee imagines the Pursuit Parties wanted delay.  (Ans. Br. at 33.)[6] The Trustee then imagines the bankruptcy court found such a delay was present; however, this is inaccurate.  The bankruptcy court merely found that the auction procedure modification was justified not to meet the Trustee's fiduciary duties but by the "circumstances of the case."

The Pursuit Parties continued to bid to pay more to the estate than the Trustee accepted and wanted the chance to take a deposition that had been

---

[5]     As noted in the Opening Brief, the only relevant record items are those the bankruptcy court said it would consider and entered in evidence.  (*See* Op. Br. at 13 n.6.)  The Trustee attached an extensive appendix to his Answering Brief of materials that were not in evidence.  These items must be struck from the record or ignored.

[6]     The Trustee argues that when he tried to reschedule the auction, the Pursuit Parties refused to agree to proposed dates and times; however, there was no evidence offered on this.  What the Trustee's counsel told the bankruptcy court is that dates could not be mutually agreed.  (*Compare* Ans. Br. at 34 *with* Op. Br., App., Ex. 4 at 20:2-10 (proffered testimony: "He would testify that he, through his counsel, attempted to reconvene the auction over the several-day period after the auction commenced and proposed at least eight alternative dates to reconvene the auction.  He would testify that ***no date was acceptable to all parties,*** so rather than engage in further delay, he requested final sealed bids . . ..") (emphasis added).) The Trustee's delay theory also states the Pursuit Parties moved to adjourn the hearing for 45 days; however, they only sought a 10 day adjournment to take a deposition or make further bids, which the Trustee refused, forcing the Pursuit Parties to file a motion.  (D.I. 201 at 14:11-23.)

promised to them should another bid be accepted.  They were willing to bid late into the evening of the auction, the Trustee was not able to get mutually agreeable dates from all parties for a continued auction, so without meeting the predicate to justify modifying the procedures, he modified them to demand final sealed bids. When the Pursuit Parties made a final sealed bid that was $40,000 more than the proposed bid (that was unbeknownst to the Pursuit Parties still being negotiated) the Trustee rejected it and the bankruptcy court used that bid against the Pursuit Parties.  This treatment reflects that the Trustee disliked the Pursuit Parties, but that is no basis to permit him to discriminate against a bidder in a bankruptcy case.  A fiduciary must set aside personal animosity and treat parties fairly and without discrimination.  That did not happen.

In short, the auction was contrary to the procedures, and the Trustee admits he discriminated against the Pursuit Parties.  (Ans. Br. at 35-36.)  The bankruptcy court allowed this without explaining how such discrimination enabled the Trustee to meet his fiduciary duties.[7]  It is fundamental that an auction conducted by a fiduciary contrary to court ordered procedures is in bad faith and should not be approved by a bankruptcy court.  *See, e.g., In re Family Christian, LLC*, 533 B.R. 600, 621 (Bankr. W.D. Mich. 2015) ("If the court perceives any degree of fraud,

---

[7]    A review of the Sale Hearing Transcript will show that no evidence was tendered on the Trustee's fiduciary duties in relation to changing the sale procedures.

unfairness or mistake with the sale, including any flaws with an auction process, the court should assess the impact of these factors on the sale when the offer is compared to the court's finding of value of assets to be sold."). As a result, this Court's review of the resulting transaction is not statutorily moot.

The Pursuit Parties also argued below that the Litigation Consortium colluded with the trustee. (R. 3 at ¶¶ 10-11.) The Trustee has also failed to identify the buyer, identifying different buyers in his Answering Brief than listed on the Agreement,[8] indicating confusion remains over who bought what and who can enforce what rights, which also means the Court's review of the Sale Order is not statutorily moot. *See, e.g., Ferrari N. Amer., Inc. v. Sims (In re R.B.B., Inc.)*, 211 F.3d 475, 478-79 (9th Cir. 2000) (holding that lack of identity of who buyer is and who has acquired rights means purchaser is not acting in good faith and an appellate court may review the appeal); *see also Petroleum & Franchise Funding*

---

[8]     *Compare* (R. 20 (Sale Order) at p. 1 (listing the following as purchasers: Harris, O'Brien, St. Laurent & Chaudhry LLP, Reed Smith LLP, Alpha Beta Capital Partners, L.P., and Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, and Lilian Schneider, individually and as the personal representative of the executor of the estate of Leonard Schneider).) *with* (Ans. Br. at 1 (identifying only the "Claridge Parties" and Alpha Beta Capital Partners, L.P. as the "Purchasers." The Claridge Parties are defined on page 8 of the Answering Brief to be Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, and Lilian Schneider, individually and as the personal representative of the executor of the estate of Leonard Schneider).)

*LLC v. Bulk Petroleum Corp.*, 435 B.R. 589, 593 (E.D.Wis.2010) (holding that

when appellant challenges the good faith of an auction, the appeal is not moot).

The manner in which the Trustee conducted the auction below means this

appeal is not statutorily moot.

**B.      Alternatively, this appeal is not moot because the Court can enter
relief that does not affect the validity of the sale.**

If the Court determines the auction was conducted fairly and affirms the

bankruptcy court's finding of good faith (even though unsupported by evidence),

this appeal remains ripe because the Third Circuit holds that a sale is statutorily

moot only when the relief sought impacts the validity of a sale, which will not

occur here. *See In re ICL Holding Co., Inc.,* 802 F.3d 547, 554 (3d Cir. 2015).

Thus, while a sale may be valid, this Court retains the ability to modify or amend a

sale. *Id*. Rather than cite *ICL Holding*, the Trustee relies largely on *Pittsburgh

Food & Bev. v. Ranallo*, 112 F.3d 645 (3d Cir. 1997) and *In re Sax*, 796 F.2d 994,

997 (7th Cir. 1986). Citing these cases, the Trustee argues that even if a sale is

deficient or woefully erroneous any appeal therefrom is moot if the bankruptcy

court "authorizes" the sale and the order is not stayed. (Op. Br. at 24-25.) The

Trustee's reliance on this case law is improper because the Third Circuit clarified

that *Ranallo* presented two alternatives, one based on the narrow construction like

the Seventh Circuit's *Sax* decision and another alternative based on the Third

Circuit's decision dealing with statutory mootness under 11 U.S.C. § 364, *The*

*Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552 (3d Cir. 1994). The Third Circuit held that, unlike many other circuits, it does not apply a *per se* mootness rule to dismiss every appeal not stayed, applying the *Swedeland* rationale to statutory mootness under Section 363(m) of the Bankruptcy Code. *See ICL Holdings,* 802 F.3d at 598; *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 498-500 (3d Cir. 1998). When a stay has not been entered, an appeal is not moot if "relief can be fashioned" that would not affect the validity of the sale. *See, e.g., Cinicola v. Scharffenberg*, 248 F.3d 110, 128 (3d Cir. 2001).

Here, the Trustee concedes the relief sought by the Pursuit Parties -- a finding that the Trustee lacked authority to sell Estate Claims to the Litigation Consortium and that they may not prosecute those claims -- does not "directly" seek reversal or modification of the Sale Order. (Ans. Br. at 20.) Instead, the Trustee argues that it would have a "clear and adverse effect" on the sale. (*Id.*) This is incorrect because the bankruptcy court stated it was not ruling on whether the Litigation Consortium may prosecute the purchased claims. (R. 20 (Sale Order at p. 2); Op. Br., App., Ex. 4 at 14:11-18 ("the Pursuit Parties question the right of the trustee to assign the claims as inconsistent with the Bankruptcy Code. They specifically wish to reserve all defenses to the Pursuit Parties' ability to prosecute the claims on behalf of the estate or otherwise. It is clear that the Pursuit Parties

must be able to raise any and all defenses they have to whatever litigation is brought, and the order entered by the Court approving the sale must so provide.")) Thus, this Court can rule on whether the Litigation Consortium has the right to exercise the estate's rights without affecting the validity of the transfer of title.  If this Court rules the Litigation Consortium lacks power to prosecute the Estate Claims, it will continue to own the Estate Claims and the validity of the Trustee's sale to them will not be affected.

This issue was preserved in the Sale Order for the benefit of the Pursuit Parties and the Court can rule on that issue without running afoul of the statutory mootness provision under Section 363(m) of the Bankruptcy Code.

## II.      The Trustee May Not Sell His Fiduciary Duty To Prosecute Claims To A Single Aggrieved Creditor.

The Trustee argues he sold certain claims and causes of action of the estate and that the Bankruptcy Court approved this sale.  (Ans. Br. at 27.)  He then argues that the estate can sell causes of action, citing *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548 (3d Cir. 2003) ("*Cybergenics II*"), for the proposition that his sale of the Estate Claims is not actually a sale of estate assets because the claims already belong to the creditors.  (*Id*. at 27-28.)[9]  This argument makes no sense in this context.  As

---

[9]      The Trustee fails to distinguish between the various *Cybergenics* cases.  The Pursuit Parties cited *Official Comm. Of Unsecured Creditors of Cybergenics Corp.*

noted, the Trustee has argued that the Estate Claims belong to the estate and that he can sell them.  He cannot have it both ways and argue in a different section of his brief that the Estate Claims do not belong to the estate but belong to creditors who can prosecute them derivatively.  If the estate did own the Estate Claims, then creditors may only prosecute them using the fiduciary duties Congress conferred on the Trustee, which they cannot do.  This logical inconsistency demonstrates numerous flaws in the Trustee's arguments.  The fact that purchasers might purchase the Estate Claims but not the Trustee's fiduciary duties does not diminish the funds he received or the purchasers' receipt of essentially a quit claim deed to the Estate Claims.[10]

If the Trustee can argue he can sell assets that don't belong to the estates in reliance on *Cybergenics II*, the Court should closely examine that decision because: (1) *Cybergenics II* holds that a chapter 11 creditors' committee may be given standing to prosecute state law fraudulent transfer claims because outside of bankruptcy creditors could prosecute those claims; however, that argument does not apply to the Estate Claims, which arise under the Bankruptcy Code and that the

---

*v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000) ("*Cybergenics I*") for its proposition that certain claims do not belong to the estate and cannot be sold and in response, the Trustee cites to *Cybergenics II*, which enables him to further conflate the issues.

[10]     It does, however, further demonstrate that taking $180,000 for them instead of $250,000 was a mistake and that he did not accept and the bankruptcy court did not approve the highest and best bid for those assets.

*Cybergenics II* majority permitted in a chapter 11 but indicated they would not in a

chapter 7,[11] (2) as noted in the Opening Brief, courts interpret *Cybergenics II* to

hold that the types of action sold by the Trustee cannot be sold (and *Cybergenics I*

holds certain actions cannot be sold),[12] and (3) four judges dissented in

*Cybergenics II* on the ground that *Hartford Underwriters Ins. Co. v. Union*

*Planters Bank, N.A.*, 530 U.S. 1 (2000) says that when the Bankruptcy Code says

"the trustee may" take some action, that means only the trustee may take that

action.  Thus, only a trustee may prosecute estate causes of action, the *Cybergenics*

---

[11]    The implication is clear: *Cybergenics II* does permit a bankruptcy court to grant a creditor in a chapter 7 case standing to prosecute claims because those claims may only be prosecuted by a chapter 7 trustee. *See Cybergenics II*, 330 F.3d at 584 ("I cannot distinguish *Hartford Underwriters*, as the majority does, simply on the basis that *Hartford Underwriters* was a chapter 7 case while here we consider a case under chapter 11.") (Fuentes, J. dissenting); *see also id.* at 560 n.5 ("Critically, however, unlike the debtor in *Hartford Underwriters*, Cybergenics never converted its case from Chapter 11 to Chapter 7."). *See also* n. 12, *infra*.

[12]    In the Opening Brief at 28, the Pursuit Parties cite *In re Parirokh*, Case No. DG 11-05409 (Bankr. W.D. Mich. May 2, 2013) which the Trustee argues is mere *dicta*. The reasoning applied by the *Parirokh* court is consistent with a New Jersey court that came to the same conclusion. *See In re Hannah*, 316 B.R. 57, (Bankr. D. N.J. 2004) ("in a Chapter 7 or Chapter 13 case, a trustee has a unique and defined role. A trustee is always in place, and thus much of the rationale relied upon by the *Cybergenics* court for holding that a committee of unsecured creditors has standing in a Chapter 11 case to bring an action under § 544(b) is not applicable in a Chapter 7 or 13 case.") (citations omitted). The Third Circuit has addressed the issue in *dicta* in an unpublished decision and as noted above has expressly adopted the reasoning in a chapter 13 case. *See In re Weyandt*, 544 Fed. Appx. 107, 110 (3d Cir. 2013) (noting that outside of chapter 11 there are significant hurdles to a party obtaining derivative standing); *see also Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 583 (3d Cir. 2005). The Trustee's effort to cast off this logic as *dicta* must necessarily fail.

*II* dissent noted the majority distinguished its ruling based on the fact that the case dealt with a chapter 11 not a chapter 7, meaning that *Cybergenics II* does not apply to a chapter 7 case where only a trustee may bring litigation permitted by the Bankruptcy Court.[13] *See* n. 11-12, *supra*. The Third Circuit has so held with respect to proceedings under chapter 13, *see In re Knapper*, 407 F.3d at 583 (citing *Hartford Underwriters*), and this Court should follow that authority here and hold that a creditor cannot prosecute causes of action belonging to a chapter 7 estate.

The facts here are clear and undisputed: the Trustee sold Estate Claims to the Litigation Consortium for which they were willing to pay but for which they do not have the same prosecutorial rights as the Trustee. As the bankruptcy court below noted, if the Trustee wants to sell air and someone is willing to pay for air, the Trustee can accept that purchaser's money. (D.I. 210 at 16:5-8 ("But the problem here is that, yeah, they can buy air, as Your Honor has said, and as the -- I understand a sacred tenant of bankruptcy law is that a trustee can sell air, if the price is right.").) And, as noted above, the bankruptcy court's ruling recognized

---

[13] Importantly, there are remedies for a chapter 7 trustee that lacks funds. He can either find contingent fee lawyers (11 U.S.C. § 328) or borrow money to fund his litigation (11 U.S.C. § 364). If the actions belong to the creditor, they can seek to lift the stay and prosecute them (or the trustee could agree to permit lift stay modification with an arrangement that the creditors would return some of the funds to the chapter 7 estate). *See Cybergenics*, 330 F.2d at 587 (listing potential alternatives in a chapter 11 case for creditors to prosecute claims) (Fuentes, J., dissenting).

that the Litigation Consortium may have paid for worthless assets.  (Op. Br., App., Ex. 4 at 14:11-18.)  If a purchaser lacks the ability to prosecute an action, but is willing to pay for it anyway, the Trustee may sell that action, take that creditor's money, and administer the estate.  This conclusion is of no moment.  The real question is whether the party buying Estate Claims can exercise the fiduciary duties of the Trustee and prosecute them.  The plain answer is no; a chapter 7 trustee cannot sell his responsibility to act as a trustee.  The Trustee has not cited a single case that says he can, and not surprisingly he does not argue that he can sell his chapter 7 duties to a creditor.  The Pursuit Parties have cited numerous cases that demonstrate this point.  (Op. Br. at 24-27 (citing *Cooper* and *Fox*)); *see also In re Knapper* and *In re Hannah*, *supra* n. 12.

The Pursuit Parties argued in their Opening Brief that a chapter 7 Trustee cannot sell its causes of action; however, recognizing that some courts have permitted it in limited circumstances by analogy to "derivative standing" cases; the Pursuit Parties argued in the alternative, that the Litigation Consortium cannot prosecute the Estate Claims because the bankruptcy court did not give them standing or find that the Estate Claims were "colorable."  (Op. Br. at 27-30.)  The Trustee concedes that the Litigation Consortium bought the claims not that they sought derivative standing to prosecute them. (Ans. Br. at 1 (noting that the Trustee reached an agreement with Purchasers to "sell substantially all of the

Debtor's assets (specifically, litigation claims . . ..").)  The Trustee argues later in his briefing that what really happened is that the Litigation Consortium acquired derivative standing and, as he must, acknowledges that the Third Circuit has never addressed the question of whether a creditor in a chapter 7 case can be given derivative standing, although as noted, the *Cybergenics II* and *In re Knapper* cases demonstrate a chapter 7 creditor cannot be given standing.

The Trustee uses a sleight of hand to argue that derivative standing justifies the entry of the Sale Order, citing an unpublished, transcript ruling for the proposition that a creditor in a chapter 7 case can be granted derivative standing. (Ans. Br. at 29-30 (citing *In re AMC Invs., LLC*, Case No. 08-12264 (Bankr. D. Del. June 2, 2011).).)[14]  This argument conflates the Trustee's ability to sell

---

[14]     The Trustee also quotes from the District Court's denial of a request for leave to appeal in the *AMC Investors* case, suggesting that this is a "holding" and then simply cuts and pastes the citations from that decision into footnote 14 of the Answering Brief (Ans. Br. at 30.); *compare* (*Id*. n. 14.) *with In re AMC Invs.*, 2012 WL 868775 at *2 (D. Del. March 14, 2012).  This presentation is flawed because the visiting judge stated no determination as to the correctness of the bankruptcy court's decision was made as doing so would "effectively create a backdoor appeal."  *In re AMC Invs.*, at *3 n.4.  This unpublished decision is at odds with another decision where another district court granted leave for interlocutory appeal on a standing question in a chapter 7 case where there is a "substantial ground for difference of opinion on the legal question" of whether a bankruptcy court may grant a creditor in a chapter 7 case standing.  *See In re Sandhill, Inc.,* 304 B.R. 692, 694 (E.D. Pa. 2004).

fiduciary duties with derivative standing in a chapter 7 case.[15]   The cases that the

Pursuit Parties cite, however, are unrebutted, and the Trustee has cited no cases

that stand for the proposition that he (or any chapter 7 trustee) can delegate the

fiduciary duties Congress conferred on chapter 7 trustees to angry, aggrieved

creditors like the Litigation Consortium.

In *AMC Investments*, a creditor did not buy causes of action under Section

363(b) of the Bankruptcy Code, but instead filed a motion for standing to file a

specific complaint.  (*See* Ex. A.)  This is the normal path for seeking derivative

standing because the law requires that a creditor that seeks standing articulate the

claims it intends to bring and that the court determine, among other things, that the

claims are "colorable" and that the trustee unjustifiably refused to pursue colorable

claims.  *See, e.g., PW Enterps., Inc. v. North Dakota Racing Comm'n (In re Racing

Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008) ("At bottom, the determination of

whether the trustee unjustifiably refuses to bring a creditor's proposed claims will

require bankruptcy courts to perform a cost benefit analysis.")

---

[15]     Notably, rather than distinguish the logic in the *Cooper* case, the Trustee merely relies on *AMC Investments* to argue that *Cooper* is not the law in Delaware. (*Compare* Op. Br. at 24-25 *with* Ans. Br. at 29.)  As noted below, even the *AMC Investments* court suggested it would rule differently if a trustee sought to sell causes of action rather than a creditor seeking standing to pursue them, demonstrating that this Court should follow *Cooper* and find that the Litigation Consortium has no right to prosecute the Estate Claims.

None of this happened here and the court made no findings regarding whether the claims were "colorable" and made no valuation determination regarding the costs associated with prosecuting them and the benefit with respect thereto.[16]  The Trustee argues that there is evidence that the unspecified and vague claims are "colorable" because the estate is administratively insolvent.  (Ans. Br. at 31-32.)  The Trustee goes on to argue that the Estate Claims are "colorable" by first misstating the record (arguing that the Pursuit Parties described the UBS claim as a "real case"), by making reference to evidence that was not submitted to the Court at the sale hearing, and by stating that the Sale Motion described the claims "in detail."  (*See* Ans. Br. at 31-32.)

The Trustee's argument that the Estate Claims are "colorable" fails for at least two reasons, *first*, the items that the Trustee points to were not offered into evidence at the Sale Hearing and could not have been considered by the Court in making a determination of whether the estate claims were "colorable"[17] and, *second*, the items referred to are wholly insufficient to survive a motion to dismiss

---

[16]     The "colorable determination requires the court [to] undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim."  *In re Optim Energy, LLC*, 527 B.R. 169, 173-74 (D. Del. 2015) (citation omitted.)

[17]     The Trustee's argument that the Pursuit Parties said the "UBS Claim" is real misstates the record.  The Pursuit Parties' position was that the litigation against UBS is real but that the chapter 7 estate has absolutely no interest in that litigation (and neither does the Litigation Consortium) and it is worthless to the estate.  (R. 12 at ¶¶ 25-31.)

as there are no plausible factual allegations anywhere in the record.  In short, when a creditor seeks standing, it should identify and submit the claims it seeks to prosecute in a draft complaint and the bankruptcy court should find that the claims are "colorable."  That did not happen here; instead, the bankruptcy court expressly ruled that it was not making such a finding and preserved the Pursuit Parties right to make contrary arguments in the future.  (Op. Br., App. 4, at 14:11-19.)

The bankruptcy judge in the *AMC Investments* case recognized derivative standing is different than a sale of causes of action, the latter of which "would set off all kinds of bells because that's closing on champ[e]rty . . . and maintenance and the sale and transfer of causes of action, that's limited for various sound public policy reasons."  (Ex. B, Tr. at 23:2-5.)  The bankruptcy court further ruled that "if indeed derivative standing can occur under Chapter 7, that it would require a ***substantial showing*** and I think that it does require more stringent standard and application."  (*Id.* at 38:1-4 (emphasis added).)  The bankruptcy court here did not apply this more stringent standard and the Trustee did not make a "substantial showing" over and above what would be required for the Litigation Consortium to have been given standing.  Thus, to the extent this Court determines the standing analysis applies, the Court should rule the Litigation Consortium lacks standing to prosecute the claims it purchased because there was no showing of "colorability" and the bankruptcy court conducted no cost benefit analysis with respect thereto.

**III.    The Pursuit Parties Were Not Allowed To Depose The Trustee In Connection With The Sale Hearing, Despite Assurances That They Would Be Permitted To Do So.**

The Trustee argues the bankruptcy court properly declined to move the date of the Sale Hearing to permit the Pursuit Parties to depose the Trustee. (*See* Ans. Br. at 37.) In support, the Trustee argues the Pursuit Parties had "ample time to schedule and notice the Trustee's deposition," because "at least as of July 30, the Pursuit Parties were on notice that . . . they were not the successful bidder" and, therefore, "between July 31 and August 10, they could have noticed and taken the Trustee's deposition." (*Id*.) Far from the "ample time", the Pursuit Parties had a mere six business days in which to respond to supposed auction results (which, as discussed below, was not complete until days later). Indeed, rather than wait until the "last minute," the Pursuit Parties acted swiftly, reaching out to the Trustee's counsel to ask for the promised deposition and when Trustee's counsel refused, requested a ten-day adjournment to permit a deposition. (D.I. 201 at 14:12-14) ("we did not wait at the last moment; we reached out to Mr. Felger earlier in the week, asked for -- our initial request for an adjournment to the 20th of August; the parties rejected that.").) The Trustee demanded the Pursuit Parties move for the adjournment of the Sale Hearing. The Trustee's refusal prevented the Pursuit Parties from exploring in discovery the bad faith nature of the entire sale process, severely prejudicing the Pursuit Parties below and on Appeal.

These arguments suffer a further deficiency.  Despite the fact that the

modified sale process had supposedly "closed," the Agreement was not final until

moments before the Sale Hearing when it was presented to the bankruptcy court

and the Pursuit Parties.  (Aug. 7 Tr. 38:25-39:2 ("this is an ever-developing

process, so this agreement, in fact, was finalized moments before we appeared

before Your Honor.").)  Moreover, the Trustee now admits that on July 30, he

remained in substantive negotiations with the Purchasers.  (Ans. Br. at 14.)

Specifically, the Trustee states "[b]etween the bid deadline and the August 10,

2015 Sale Hearing, the Trustee and Purchasers engaged in further negotiations

which resulted in the Purchasers improving their bid by agreeing to contribute to

the estate net recoveries from the Insider Avoidance Claim . . . ."  (*Id*.)  The Pursuit

Parties could not have taken a meaningful deposition between July 31 and August

10 because there was no final agreement.  Instead, the Court should have adjourned

the Sale Hearing so that it could consider this transaction on a complete evidentiary

record and it committed reversible error when it did not.

**IV.    When The Trustee Modified The Bidding Procedures To Call For
         Sealed Bids There Were No Longer "Clearly Established" Procedures
         That Would Justify The Trustee's Refusal To Consider Higher Bids.**

The Pursuit Parties argued in their Opening Brief that a chapter 7 trustee

should obtain the highest and best bid for assets sold and that when a party appears

at a sale hearing to offer more value, the chapter 7 trustee should consider such a

bid.  (Op. Br. at 43-41.)  In addressing this situation, the courts in the Third Circuit historically have permitted overbids at the sale hearing but imposed a slightly higher standard for allowing overbids after a sale hearing but before closing of the sale.  (*Id.* at 43 n.8 (citing Third Circuit cases)).  The policy rationale is that courts should balance the need for finality of the auction process with the need for an estate to maximize its value.

The Trustee cites case law to argue that the finality policy rationale is more important than maximizing value.  (Ans. Br. at 44-45.)  The basis for these decisions is that reopening the auction will undercut confidence and faith in the bankruptcy system when a court reopens "the auction process ***when procedures were clearly established***, when the auction was conducted without fraud or collusion ***and in compliance with the procedures***, and when an adequate bid was accepted . . . ."  (*Id.* at 45 (*citing In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (emphasis added)).  In this case, the bankruptcy court established procedures; however, the auction was not conducted in compliance with those procedures and an inadequate bid was accepted.  Indeed, the bankruptcy court did not find that the Litigation Consortium's bid was better than the Pursuit Parties' bid, but instead found that the Litigation Consortium final bid was higher than their original bid.  (Op. Br., App., Ex. 4 at 11:16-21 ("The third factor is whether the sale produced a fair[] price.  The original agreement provided for a cash payment

to the estates of $125,000.  By virtue of the auction, the consideration to the estate is now a cash payment of $180,000.01, and the potential upside from any recoveries from the assigned causes of action.").)[18]

The Trustee misunderstands the argument.  The Pursuit Parties do not dispute that in a properly conducted auction where all bidders are treated equally and fairly and afforded due process that the policy of finality may outweigh a possibly higher and better bid made outside of the auction procedures and after the sale hearing.  Where a trustee or debtor in possession throws the court-approved auction procedures out the window and reverts to previously rejected procedures without providing evidence that he was justified in doing so, however, the bankruptcy court errs as a matter of law when it applies the rejected procedures to one bidder but not against others.  That is what happened here.

The Trustee originally proposed a bid from the Litigation Consortium and indicated that it would accept final sealed bids by a date certain.  The Pursuit Parties objected to this procedure and the bankruptcy court approved procedures as a result.  (R. 12 and 13.)  The Trustee then conducted an auction but then announced at a hearing where the Pursuit Parities were not present or represented

---

[18]     The Trustee offered no evidence of the value of the Estate Claims at the Sale Hearing other than the Litigation Consortium's self-serving valuation of at least $500,000.  Of course costs associated with pursuing litigation will be deducted, and the Trustee failed to prove the Estate Claims had any value to the estate.

by counsel that he might go back to his original proposal of sealed bids, contrary to the procedures established after objection. The Trustee then pursued his agenda, ignored the auction procedures, and called for sealed bids. No acceptable sealed bid was submitted, and the Trustee elected to continue negotiating with the Litigation Consortium and did not reach an acceptable bid until "moments" before the Sale Hearing.

At the Sale Hearing, there was no evidence submitted to explain why the Trustee made this decision and there was no evidence to demonstrate that modifying the bidding procedures to sealed bids enabled the Trustee to meet his fiduciary duties. Absent such a showing, the Trustee was obligated to have an open, outcry auction where all bidders were in the same room bidding in rounds against one another. (R. 11 at ¶ 13.) While "finality" has its place, that place only exists when procedures are followed and bidders are treated fairly. When chapter 7 trustees ignore auction procedures, treat bidders unequally, and discriminate against them out of personal animosity or some other unspecified sentiment, that conduct will have a far more negative policy result of chilling bidding and causing parties to have no faith in the bankruptcy system or in chapter 7 trustees. The Pursuit Parties are not to be blamed for seeking to overbid in accordance with the normal practices in this district when a trustee refuses to follow the court's orders regarding conduct of the auction. In essence at the time they made their August 6-

8 Bids (Op. Br., App. Ex. 2.) there were no applicable auction procedures and the

Pursuit Parties acted appropriately to try and bid more for the assets.  The Trustee

inexplicably elected to ignore higher and better bids and made a mockery of

bidding procedures in this district.  As a matter of law it was clear error to have

approved this method of conduct.

## CONCLUSION

The Pursuit Parties submit the Court should grant their appeal for the

reasons stated in the Opening Brief and this Reply Brief.

Dated:  January 21, 2016                    Respectfully submitted,
Wilmington, Delaware


By: */s/ R. Craig Martin*
          R. Craig Martin
          Delaware Bar No. 5032
          craig.martin@dlapiper.com
          **DLA PIPER LLP (US)**
          1201 North Market Street,
          Suite 2100
          Wilmington, DE  19801-1147
          Telephone:302.468.5700
          Facsimile: 302.394.2341

          Attorneys for Appellants, the Pursuit
          Parties Anthony Schepis, Frank
          Canelas, Pursuit Investment
          Management, LLC, Pursuit Opportunity
          Fund I, L.P., and Pursuit Capital
          Management Fund I, L.P.

## CERTIFICATE OF COMPLIANCE WITH
## RULE 8015(A)(7)(B) OR 8016(D)(2)

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because this brief contains 6731 words, excluding those parts of the brief exempted by Rule 8015(a)(7)(B)(iii).

By: */s/ R. Craig Martin*
R. Craig Martin
Delaware Bar No. 5032
craig.martin@dlapiper.com
**DLA PIPER LLP (US)**
1201 North Market Street,
Suite 2100
Wilmington, DE  19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341

Attorneys for Appellants, the Pursuit Parties Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P., and Pursuit Capital Management Fund I, L.P.