**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : | Bankr. Case No. 14-10610-LSS |
| | : | |
| Debtor. | : | |
| | : | |
| —————————————————— | : | Civ. No. 15-801-RGA |
| PURSUIT PARTIES, | : | |
| | : | |
| Appellants, | : | |
| v. | : | |
| | : | |
| JEOFFREY L. BURTCH, CHAPTER 7 TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

Pending before this Court is an appeal by appellants Anthony Schepis, Frank Canelas,

Pursuit Investment Management, LLC, Pursuit Opportunity Fund, I, L.P., and Pursuit Capital

Management Fund I, L.P., from an Order Approving Agreement to Settle, Transfer and Assign

Certain Claims, Rights and Interests (B.D.I. 190)[1] ("Sale Order") entered by the United States

Bankruptcy Court for the District of Delaware. For the reasons set forth below, the appeal is

dismissed as statutorily moot.

1.      **Background.** The Sale Order was entered on August 28, 2015, following a court-

ordered auction and a contested sale hearing. The Sale Order approved an agreement between

the Chapter 7 Trustee and a consortium of bidders ("Purchasers") for the sale of substantially all

of the Debtor's assets, including the transfer of certain causes of action against Appellants.

Appellants did not seek any stay of the Sale Order pending appeal. Appellants filed a timely

---

[1] The docket of the Chapter 7 case, captioned *In re Pursuit Capital Management, LLC,* Case No.
14-10610-LSS (Bankr. D. Del.), is cited herein as "B.D.I. __."

notice of appeal on September 8, 2015. (D.I. 1). On appeal, Appellants assert, *inter alia*, that the Bankruptcy Court erred in entering the Sale Order because the Trustee alone is authorized to prosecute the causes of action arising under the Bankruptcy Code, and the Trustee lacked authority to assign the causes of action to a non-fiduciary third party. (*See* D.I. 12).

2.      This issue was raised by Appellants prior to the entry of the Sale Order. (*See* B.D.I. 67 at 8 (arguing that the proposed transfer of the causes of action would "purport to enable the [Purchasers] to take actions solely for their benefit while using the avoidance powers ... vested by the Bankruptcy Code solely and exclusively with a bankruptcy trustee."); B.D.I. 196 at 46:16-47:8 (arguing that "allowing a non estate fiduciary to prosecute claims is inconsistent with the Bankruptcy Code.")). However, it appears that the parties did not request,[2] and the Bankruptcy Court did not render,[3] any ruling on this issue prior to the entry of the Sale Order. Rather, the Trustee assigned these claims "on an as-is, where-is basis, making no reps and warranties, at all, with respect to these claims, whether they can be brought, where they can be brought, whether there's any merits to any of these claims." (B.D.I. 196 at 51:13-51:19). Indeed, the Sale Order expressly preserved all rights, claims, and defenses that may be raised or asserted by Appellants with respect to the causes of action, including any right to challenge standing or jurisdiction. (*See* B.D.I. 190 at 2). Following entry of the Sale Order, Purchasers initiated an Adversary Proceeding by filing a complaint against Appellants seeking recovery on

---

[2] Counsel stated, "I do note, however, that the agreement preserves all of my client's defenses and so it may very well be that we raise the standing issues as grounds for a motion to dismiss any lawsuits that are filed against us." (B.D.I. 196 at 47:9-12).

[3] The Bankruptcy Court stated, "The Pursuit Parties question the right of the trustee to assign the claims as inconsistent with the Bankruptcy Code. They specifically wish to reserve all defenses to the Pursuit Parties' ability to prosecute the claims on behalf of the estate or otherwise. It is clear that the Pursuit Parties must be able to raise any and all defenses they have to whatever litigation is brought, and the order entered by the Court approving the sale must so provide." (B.D.I. 187 at 14:11-18).

2

the basis of alleged fraudulent transfers pursuant to §§ 544, 548, and 550 of the Bankruptcy Code, in addition to other relief.[4] As promised, Appellants have moved to dismiss the Adversary Proceeding on the basis that, *inter alia*, Purchasers do not own the causes of action asserted in the complaint and are not entitled to prosecute them. [5] In addition to raising this argument in support of their motion to dismiss, however, Appellants have also raised the issue in this appeal, and have further requested that the Bankruptcy Court stay the Adversary Proceeding to allow this Court to rule on the issue.[6] This Court has had regular briefing and oral argument. (D.I. 12, 14, 16, 24).

3.    **Jurisdiction.** Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Sale Order is a final order.

4.    **Discussion.** Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale ... of property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). This section "was created to promote the policy of the finality of bankruptcy court orders, and to prevent harmful effects on the bidding process resulting from the bidders' knowledge that the highest bid may not end up being the final sale price." *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 500 (3d Cir. 1998). The Third Circuit does not adhere to the "*per se* mootness" rule pursuant to which other circuits dismiss as

---

[4] *See Claridge Assocs., LLC, et al. v. Anthony Schepis, et al.*, Adv. Proc. No. 16-50083 (LSS), D.I. 1 (complaint).

[5] *See id.*, D.I. 8 at 8-9 (defendants' opening brief in support of motion to dismiss complaint on jurisdictional grounds).

[6] *See id.* at 9 (requesting a stay of the Adversary Proceeding).

3

moot the appeal of every sale *authorized* under § 363(b) where the sale was not stayed,
regardless of whether the sale was *properly* authorized under § 363(b). In the Third Circuit, an
appeal is moot pursuant to § 363(m) if: (1) the underlying sale was not stayed pending appeal,
and (2) reversing or modifying the bankruptcy court's authorization would affect the validity of
the sale. *See Krebs,* 141 F.3d at 498-99; *In re Alabama Aircraft Indus., Inc.,* 464 B.R. 120, 123
(D. Del. 2012).

5.      With respect to the first factor, it is undisputed that Appellants did not obtain a
stay of the Sale Order. With respect to the second factor, whether reversal or modification of
such order would affect the validity of the sale, the court must "look to the remedies sought and
assess whether these would impact the terms of the bargain struck by the buyer and seller."
*Alabama Aircraft Indus., Inc.,* 2013 WL 791869, at *1 (3d Cir. Mar. 5, 2013). "A challenge to
an authorized transaction will necessarily impact that transaction's validity if it seeks to affect
'the validity of a central element,' such as the sale price." *Id.* (quoting *Pittsburgh Food &
Beverage, Inc. v. Ranallo,* 112 F.3d 645, 649 (3d Cir. 1997)). However, an appeal is not moot
"if a remedy can be fashioned that would not affect the validity of the sale." *Krebs,* 141 F.3d at
499; *see In re ICL Holding Co., Inc.,* 802 F.3d 547, 554 (3d Cir. 2015) ("so long as we can 'grant
effective relief,' § 363(m) doesn't bar appellate review") (citing *Pittsburgh Food,* 112 F.3d at
651).

6.      Appellants' first argument on appeal is that the Trustee lacked authority to assign
the causes of action, which may only be brought by the Trustee under the Bankruptcy Code, and
Purchasers have no authority to prosecute the causes of action. Appellants urge the Court to
enter an order either reversing and remanding the Sale Order[7] or finding that Purchasers cannot

---

[7] Since I later find support for the Bankruptcy Court's determination of good faith, Appellants'
arguments attacking the auction process and discovery decisions are statutorily moot, as they
seek a reversal of the Sale Order.

4

prosecute the causes of action. (*See* D.I. 12 at 51). Appellants argue that the Court may decide this issue in Appellants' favor without affecting the sale's validity because Purchasers will continue to own the causes of action and have received other benefits under the Sale Order, including the dismissal of certain litigation against them. (D.I. 16 at 1; D.I. 24 at 20:1-20:9).

7.      I read the record as showing that the parties were content in the Bankruptcy Court to put off this issue for another day. *See supra* at footnotes 2 & 3. I do not believe that Appellants preserved an objection to the Bankruptcy Court's handling of the issue. Thus, while Appellants have certainly preserved their rights to raise the issue as a defense to future litigation, I do not think they have preserved their rights to raise the issue on direct appeal. I do not think this is an issue that I should be deciding in the first instance. Thus, were this the only issue raised, I would simply affirm the Bankruptcy Court's Order, with the result that the issue would be decided, if necessary, in subsequent litigation. It is not the only issue raised, however. Thus, I will consider whether the appeal would necessarily affect the validity of the sale.

8.      Appellants' challenge that a chapter 7 trustee may not sell such causes of action will necessarily affect the validity of the sale. It is not entirely clear what the relief is that Appellants seek. By the time of Appellants' Reply Brief, the request is that I "decid[e] the [Appellees have] no power to prosecute the [claims in dispute] even though [they] may own them." (D.I. 16, p.1). Among other things,[8] it would seem that this request is essentially that I decide the motion to dismiss that is currently pending in a separate case before the Bankruptcy Court. I do not think that this is procedurally appropriate relief. Nor do I think it is consistent with relevant precedent. The Third Circuit has rejected attempts to circumvent § 363(m) by

---

[8] I say "among other things," because, if Appellants assume that Purchasers "own them," they are assuming that the Trustee could sell them. If the Trustee could sell them, then there is no basis for the appeal. If Purchasers cannot actually prosecute the claims once they own them, that is a different issue. As the Sale Order envisions, that different issue should be decided not by me but by the court handling the case in which they assert the claims.

characterizing appeals as concerning something other than the sale order. *See, e.g., In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 306 (3d Cir. 2000) (dismissing as moot landlord's appeal from lease assumption order excising use restriction because an adverse determination would "affect the validity of the sale"); *Krebs,* 141 F.3d at 500 (dismissing as moot appeal by bidder on franchise agreement from order rejecting prepetition buy/sell agreement because reversal of rejection order would amount to an attack on the sale order); *Pittsburgh Food*, 112 F.3d at 650 (dismissing as moot appeal of sale order, which sought an equitable remedy after a determination that the "sale was flawed," as opposed to reversal of sale order, and questioning what purpose such a determination could have "other than to affect the validity of the sale").

9.     Here, a finding that the Trustee lacked authority to transfer the causes of action "though not nullifying the sale would affect its validity" and demonstrate that the sale was flawed. *See Pittsburgh Food*, 112 F.3d at 650. Such a finding would impact the terms of the bargain struck by the buyer and seller.[9] *See Alabama Aircraft*, 2013 WL 791869, at *1. If the Bankruptcy Court had declined to approve the sale of the causes of action, Purchasers would undoubtedly have valued what they were purchasing at a lower amount. As it was, Purchasers valued the purchase of the causes of action at some positive amount, although recognizing that there was a possibility that the causes of action would be unprosecutable by them. Because the relief sought by Appellants would affect the validity of the sale either directly (a reversal of the Sale Order) or indirectly (finding that the Trustee lacked authority to sell the causes of action), the appeal must be dismissed as moot.

---

[9] While the Sale Order envisioned that Appellants would be able to raise an issue about the transfer of the causes of action, the Sale Order also envisioned that the issue would be decided by a judge in the context of actual litigation, not on an appeal divorced from an actual case. If the Bankruptcy Court later were to decide that the causes of action could be transferred, but cannot be prosecuted by Appellants, it may be presented with additional arguments that would lead it to some resolution other than dismissing the case.

10.    Appellants argue in their reply brief that the protection of § 363(m) should not apply to this sale because "the sale was not conducted in good faith." (D.I. 16 at 3). Section 363(m) of the Bankruptcy Code requires the good faith of the purchaser. "Where the good faith of the purchaser is at issue, the district court is required to review the bankruptcy court's finding of good faith before dismissing any subsequent appeal as moot under § 363(m)." *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996).  A bankruptcy court's finding that the purchaser of a debtor's assets acquired those assets in "good faith" within the meaning of § 363(m) is a factual finding reviewable for clear error. *See Hower v. Molding Sys. Eng'g. Corp.*, 445 F.3d 935, 939 (7th Cir. 2006).

11.    Neither the Bankruptcy Code nor the Bankruptcy Rules define "good faith."  In construing this phrase, courts have borrowed from traditional equitable principles, holding that the phrase encompasses one who purchases in "good faith" and for "value."  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  The concept of good faith speaks to the integrity of a party's conduct in the course of the bankruptcy sale proceedings.  *Id.*  A purchaser's good faith status at a bankruptcy sale would be destroyed by misconduct involving "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.* (citations omitted).

12.    Appellants first argue that the Bankruptcy Court was required to find that the auction was conducted in good faith but only made a finding that the "parties acted in good faith."  (*See* D.I. 16 at 4).  Appellants further argue that the Trustee failed to submit any evidence to carry his burden of proof on good faith.  (*See id.* at 4-5).  Appellants cite *In re M Capital Corp.*, 290 B.R. 743, 749 (9th Cir. B.A.P. 2003), for the holding that an appellate court cannot presume a purchaser's good faith from a silent record.  Appellants also cite *Abbotts Dairies*, 788

7

F.2d at 149-50, for the holding that a bankruptcy court cannot presume good faith merely because an auction was held.

13.     These arguments are without merit. It is clear from the transcript of the sale hearing that the Bankruptcy Court applied the correct test in considering whether to approve a proposed sale of assets outside of the debtor's ordinary course of business.[10] (*See* B.D.I. 187, 8/17/15 Hr'g. Tr. at 11-12). As part of its analysis, the Bankruptcy Court made a specific finding of the Purchasers' good faith, based on arm's length negotiations between the parties and the absence of any evidence of collusion. (*See id.* at 11:22-12:1 ("The fourth factor is whether the parties acted in good faith. I find that they did. [Appellants] raised issues of good faith in their preliminary objection; however, there [is] no evidence of collusion, and nothing to suggest that the bidding on the assets was anything, but at arm's length"). This finding is supported by evidence in the form of proffered testimony of the Trustee, which clearly set forth the parties' discussions. (*See* B.D.I. 196, 8/10/15 Hr'g. Tr. at 17:21-24:15).[11]

---

[10] The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there was a sound business purpose for the sale; (2) the proposed sale price was fair; (3) the trustee had provided adequate and reasonable notice; and (4) the buyer has acted in good faith. *See In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).

[11] The proffered testimony of the Trustee addressed, among other things, the history of negotiations among all parties with respect to the assets, which spanned several months; Appellants' objection to a prior proposed sale agreement, dated February 27, 2015; details of the court approved bid procedures; notice of the auction and bid procedures; commencement of the auction on July 7, 2015 and the adjournment of the auction at Appellants' request; the Trustee's modification of the bid procedures to require final sealed bids by July 30; Appellants' failure to submit a final sealed bid and withdrawal of all previous bids; the continued negotiations between the Trustee and Purchasers following the close of the auction and up to the time of the sale hearing; the informal bid submitted by Appellants over the weekend prior to the sale hearing; and details of the highest and best bid – the only bid, as it turned out – as determined in the Trustee's business judgment, including consideration to the Debtor's estate and the potential for recovery to unsecured creditors. (*See* B.D.I. 196, 8/10/15 Hr'g. Tr. at 17:21-24:15). Appellants cross-examined the Trustee on this proffer but submitted no evidence to contradict his testimony.

14.     Appellants also raise various arguments in their opening brief regarding the integrity of the auction process. Because Appellants did not address § 363(m) in their opening brief, it is not clear which of their arguments bear on the good faith of the Purchaser. However, Appellants' argument that Purchasers did not acquire the assets in good faith appears to be predicated upon allegations that the Trustee: modified the bidding procedures to require final sealed bids without submitting evidence that those modifications were necessary to comply with his fiduciary obligations (D.I. 12 at 19-20); colluded with Purchasers in continuing to negotiate with them following the close of the auction and up to the time of the sale hearing (*id.* at 10, n.4; 19); and prejudicially applied the bid procedures by continuing to negotiate with Purchasers after the close of the auction, while "never provid[ing] a path to the [Appellants] to empower them to submit a winning bid" (*id.* at 19). Appellants further allege that the Bankruptcy Court usurped the Trustee's business judgment in declining to reopen the auction. (*Id.* at 20).

15.     These arguments lack merit, are not supported by any evidence on the record, and do not support a conclusion that Purchasers did not acquire the assets in good faith. The record reflects that the bid procedures were approved by the Bankruptcy Court, that they permitted modifications as the Trustee deemed appropriate to comply with his fiduciary obligations, and that Appellants raised no objection to this provision. (*See* B.D.I. 133, ¶ 13; B.D.I. 149). The Trustee has a duty to "collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704. Appellants do not dispute the Trustee's repeated attempts to schedule a date to reconvene the auction – which commenced on July 7 at 11:11 a.m. and was adjourned shortly thereafter at Appellants' request at 3:42 p.m. (*see* B.D.I. 182) – were unsuccessful. The Bankruptcy Court found that the Trustee's modification of bid procedures on July 24, requiring submission of final sealed bids by July 30, was appropriate "under the circumstances of this case." (*See* B.D.I. 187,

9

8/17/15 Hr'g. Tr. at 14:6-14:10). The record supports this conclusion, and the bid procedures modification is not evidence of a lack of good faith.

16.     Contrary to Appellants' argument that the bid procedures were applied prejudicially, the record reflects that the Trustee had good reason to continue negotiations with Purchasers alone following the close of the auction – Purchasers were the only party to submit a final bid on the assets. It is not disputed that Appellants did not submit a final bid and withdrew all previous bids. As the Bankruptcy Court noted, continued negotiations between a trustee and purchaser, following the close of an auction and prior to the sale hearing, are not uncommon. (*See id.* at 12:2-12:7 ("[Purchasers] made their bids in accordance with the bid procedures, including their last bid, which was delivered on July 30, under seal. Since then, the trustee requested certain revisions, to which the [Purchasers] agreed. Those revisions improved the consideration to the estate. This is not unusual in the context of an auction")). Evidence of the continued negotiations do not undermine the Bankruptcy Court's finding of good faith.

17.     Contrary to Appellants' assertions, the record clearly reflects that the Bankruptcy Court did not err "when it determined to close the auction" (D.I. 12 at 43) – the auction had already closed. The Bankruptcy Court also did not "usurp the Trustee's business judgment" by declining Appellants' request to reopen the auction in the face of a last minute, informal bid, which may have contained a higher cash component but, unlike Purchasers' bid, provided no possibility of recovery to unsecured creditors. Rather, the Trustee requested approval of Purchasers' bid from the outset of the sale hearing, consistent with his business judgment, and the Bankruptcy Court's exercise of its discretion not to reopen the auction was consistent with the well-recognized policy concerns of finality and integrity in the auction process.

18.     **Conclusion.** The Bankruptcy Court made a specific finding of good faith, which is supported by the record, and the Court finds no evidence that the Purchasers did not acquire

the assets in good faith. In absence of any evidence of bad faith, the Court cannot say that it was

clear error for the bankruptcy judge to conclude that the sale occurred in good faith. *See Hower*,

445 F.3d at 939. Appellants failed to obtain a stay of the Sale Order, and the relief sought by

Appellants would affect the validity of the sale either directly (a reversal of the Sale Order) or

indirectly (finding that the Trustee lacked authority to sell the causes of action). For these

reasons, the appeal must be dismissed as moot.

NOW, THEREFORE, it is HEREBY ORDERED that the appeal of the Sale Order is

**DISMISSED** as statutorily moot pursuant to 11 U.S.C. § 363(m). The Clerk is directed to

**CLOSE** the case.

Entered this _26_ day of September, 2016.

United States District Judge

11